1  SEDGWICK LLP
   JAMES J.S. HOLMES, State Bar No. 126779
2  *james.holmes@sedgwicklaw.com*
   801 South Figueroa Street, 19th Floor
3  Los Angeles, CA  90017-5556
   Telephone: 213.426.6900
4  Facsimile: 213.426.6921

5  JASON M. JOYAL, State Bar No. 251168
   *jason.joyal@sedgwicklaw.com*
6  2900 K Street NW
   Harbourside, Suite 500
7  Washington, D.C. 20007-5127
   Telephone: 202.204.1000
8  Facsimile: 202.204.1001

9  Attorneys for Defendants, Drape Creative,
   Inc.; and Papyrus-Recycled Greetings, Inc.
10

11          **UNITED STATES DISTRICT COURT**

12    **CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION**

13

14  CHRISTOPHER GORDON,            | Case No. CV 15-04905 JFW (PLAx)

15          PLAINTIFF,             | *Hon. John F. Walter, presiding*

16          v.                     | **DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS COMPLAINT PURSUANT TO FED. R. CIV. P. 12(b)(6)**
17  DRAPE CREATIVE, INC.;
    PAPYRUS-RECYCLED GREETINGS,
18  INC.; AND DOES 1 TO 10,
    INCLUSIVE,
19
            DEFENDANTS.           | [*Served concurrently with Notice of Motion; Declaration of Aaron Siegel; and [Proposed] Order*]
20
21                                | Date:       February 8, 2016
22                                | Time:       1:30 p.m.
                                  | Location:   Courtroom 16
23

24          Defendants Drape Creative, Inc. ("Drape") and Papyrus-Recycled Greetings, Inc.

25  ("Papyrus") (collectively, "Defendants") submit the following Memorandum of Points

26  and Authorities in support of their Motion to Dismiss Plaintiff Christopher Gordon's

27  ("Plaintiff") Complaint, pursuant to Fed. R. Civ. P. 12(b)(6).

28

# **TABLE OF CONTENTS**

**Page**

I. INTRODUCTION .................................................................................. 1

II. FACTS ................................................................................................. 2

    A. Plaintiff and His "Honey Badger" Video ...................................... 2

    B. Plaintiff's Trademark Registrations ............................................. 2

    C. Defendants' Alleged Infringement and the Greeting Cards At-Issue ............................................................................................. 3

III. LEGAL STANDARD .......................................................................... 4

    A. Fed. R. Civ. P. 12(b)(6) ............................................................... 4

    B. The Court May Consider Defendants' Greeting Cards Because They Are Integral To Plaintiff's Claims ...................................... 4

IV. ARGUMENT ....................................................................................... 5

    A. Defendants' Use Of The HBDGAS Phrase Is Fair Use ............... 5

        1. Defendants Do Not Use the HBDGAS Expression as a Trademark ............................................................................. 7

            (a) The Phrase Itself is Not Used As a Source-Identifying Symbol. ............................................... 8

            (b) Defendants' Readily Identify Themselves As the Card's Source ................................................... 9

        2. Defendants Use "Honey Badger Don't Give a Shit" Descriptively ....................................................................... 11

            (a) Honey Badger Don't Give a Shit is Descriptive .............. 11

            (b) Defendants Use the HBDGAS Phrase in Its Descriptive Sense ............................................... 13

        3. Defendants Use the HBDGAS Phrase in Good Faith ............... 16

    B. Defendants' Use Of The HBDGAS Phrase Is Protected By The First Amendment ....................................................................... 17

        1. Defendants' Greeting Cards Are Artistic, "Expressive Works" .................................................................................. 18

        2. The HBDGAS Expression Has Artistic Relevance ................... 19

        3. Defendants' Use of the HBDGAS Phrase Does Not Explicitly Mislead as to the Source or the Content of

Defendants' Greeting Cards .......................................................20

C.   Plaintiff's Federal Unfair Competition and False Designation of
     Origin Claim Must Be Dismissed ........................................21

     1.   Plaintiff Fails to Allege He is the Senior User of the
          HBDGAS Mark. ..........................................................22

     2.   Plaintiff Fails to Plausibly Allege Any Market Penetration
          of HBDGAS Products.....................................................22

D.   Plaintiff's Second Claim For Trademark Infringement Under Cal.
     Bus. & Prof. Code § 14245 Must Be Dismissed Because He Has
     No California State Trademark Registration .......................24

E.   Plaintiff's California Common Law and Statutory Unfair
     Competition Claim Must Be Dismissed ..............................25

V.   CONCLUSION ..........................................................................25

Sedgwick LLP

# TABLE OF AUTHORITIES

**Page**

## CASES

*Anti-Monopoly, Inc. v. Gen. Mills Fun Group*
   611 F.2d 296 (9th Cir. 1979) ................................................................. 6

*Architectural Mailboxes, LLC v. Epoch Design, LLC*
   2011 WL 1630809 (S.D. Cal. Apr. 28, 2011) ................................... 7, 11

*Arnold v. ABC, Inc.*
   2007 WL 210330 (S.D.N.Y. Jan. 29, 2007) ............................... passim

*Ashcroft v. Iqbal*
   556 U.S. 662 (2009) ............................................................................. 4

*B & L Sales Assoc. v. H. Daroff & Sons, Inc.*
   298 F.Supp. 908 (S.D.N.Y.1969) ....................................................... 12

*B & L Sales Assocs. v. H. Daroff & Sons, Inc.*
   421 F.2d 352 (2d Cir. 1970) ................................................. 10, 14, 16

*Balistreri v. Pacifica Police Dep't*
   901 F.2d 696 (9th Cir. 1990) ............................................................... 4

*Bell Atl. Corp. v. Twombly*
   550 U.S. 544 (2007) ...................................................................... 4, 16

*Bell v. Harley Davidson Motor Co.*
   539 F.Supp.2d 1249 (S.D. Cal. 2008) ................................... 10, 14, 17

*Bhasin v. Pathak*
   2013 WL 1871508 (C.D. Cal. May 3, 2013) ....................................... 3

*Brother Records, Inc. v. Jardine*
   318 F.3d 900 (9th Cir. 2003) ............................................................... 6

*Cardtoons, L.C. v. Major League Baseball Players Ass'n*
   95 F.3d 959 (10th Cir. 1996) ............................................................. 18

*Car-Freshner Corp. v. S.c. Johnson & Son, Inc.*
   70 F.3d 267 (2d Cir. 1995) ................................................................. 14

*Cleary v. News Corp.*
   30 F.3d 1255 (9th Cir. 1994) ............................................................. 25

*Cosmetic Ideas, Inc. v. IAC/Interactivecorp.*
   606 F.3d 612 (9th Cir. 2010) ............................................................. 13

*Cosmetically Sealed Indus., Inc. v. Chesebrough-Pond's USA Co.*
   125 F.3d 28 (2d Cir. 1997) ...................................... 6, 9, 11, 14, 16

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF FED. R. CIV. P. 12(b)(6) MOTION TO DISMISS

*Dessert Beauty, Inc. v. Fox*
568 F. Supp. 2d 416 (S.D.N.Y. 2008).............................................................21

*Dillinger, LLC v. Elec. Arts Inc.*
2011 WL 2457678 (S.D. Ind. June 16, 2011) ...................................................20

*Dream Marriage Group, Inc. v. Anastasia Int'l, Inc.*
2010 WL 4346111 (C.D. Cal. Oct. 27, 2010)...................................................24

*E.S.S. Entm't 2000, Inc. v. Rock Star Videos, Inc.*
547 F.3d 1095 (9th Cir. 2008).................................................................passim

*E.S.S. Entm't 2000, Inc. v. Rock Star Videos, Inc.*
444 F.Supp.2d 1012 (C.D. Cal. 2006)..............................................................19

*Fleischer Studios, Inc. v. A.V.E.L.A., Inc.*
925 F.Supp.2d 1067 (C.D. Cal. 2012)...................................................6, 11, 16

*Fortune Dynamic, Inc. v. Victoria's Secret Stores Brand Mgmt., Inc.*
618 F.3d 1025 (9th Cir. 2010).............................................................7, 9, 11

*Future Domain Corp. v. Trantor Sys. Ltd.*
1993 WL 270522 (N.D. Cal. May 3, 1993) .....................................................22

*Glow Indus., Inc. v. Lopez*
252 F.Supp.2d 962 (C.D. Cal. 2002)..................................................21, 22, 23, 24

*Hensley Mfg. v. ProPride, Inc.*
579 F.3d 603 (6th Cir. 2009) ...........................................................................10

*In re Dual-Deck Video Cassette Recorder Antitrust Litig.*
11 F.3d 1460 (9th Cir. 1993)..............................................................................7

*In re Dual-Deck Video Cassette Recorder Antitrust Litig. v. Matsushita Elec.
Indus. Co.*
1991 WL 425379 (D. Ariz. Jan. 7, 1991)..........................................................16

*In re Ubiquiti Networks, Inc. Sec. Litig.*
33 F. Supp. 3d 1107 (N.D. Cal. 2014) ...............................................................5

*Interactive Prods. Corp. v. a2z Mobile Office Solutions, Inc.*
326 F.3d 687 (6th Cir. 2003)............................................................................11

*JA Apparel Corp. v. Abboud*
568 F.3d 390 (2d Cir. 2009) ..............................................................................7

*JA Apparel Corp. v. Abboud*
682 F.Supp.2d 294 (S.D.N.Y. 2010).................................................................8

*Knievel v. ESPN*
393 F.3d 1068 (9th Cir. 2005)............................................................................5

*KP Permanent Make–Up, Inc. v. Lasting Impression I, Inc.*
543 U.S. 1114 (2004) ...................................................................................6, 16

Sedgwick LLP

*M. B. H. Enterprises, Inc. v. WOKY, Inc.*
  633 F.2d 50 (7th Cir. 1980) ................................................................. 12

*Marketquest Group, Inc. v. BIC Corp.*
  2015 WL 1757766 (S.D. Cal. Apr. 17, 2015) .......................... 10, 13, 15, 17

*Mattel, Inc. v. MCA Records, Inc.*
  296 F.3d 894 (9th Cir. 2002) ................................................................ 17

*Mut. Pharm. Co. v. Watson Pharm., Inc.*
  2009 WL 3401117 (C.D. Cal. Oct. 19, 2009) .......................................... 25

*Naked Cowboy v. CBS*
  844 F.Supp.2d 510 (S.D.N.Y.2012) ......................................... 7, 10, 15

*Novalogic, Inc. v. Activision Blizzard*
  41 F. Supp. 3d 885 (C.D. Cal. 2013) ...................................................... 17

*Optimal Pets v. Nutri-Vet, LLC*
  877 F.Supp.2d 953 (C.D. Cal. 2012) ........................... 21, 22, 23, 24

*Packman v. Chicago Tribune Co.*
  267 F.3d 628 (7th Cir. 2001) ..................................................... 7, 9, 15

*Quiksilver, Inc. v. Kymsta Corp.*
  466 F.3d 749 (9th Cir. 2006) ................................................................ 21

*Reyn's Pasta Bella, LLC v. Visa USA, Inc.*
  442 F.3d 741 (9th Cir.2006) ................................................................... 2

*Rogers v. Grimaldi*
  875 F.2d 994 (2nd Cir. 1989) ....................................................... 17, 20

*Roth Greeting Cards v. United Card Co.*
  429 F.2d 1106 (9th Cir. 1970) .............................................................. 13

*Roulo v. Russ Berrie & Co., Inc.*
  886 F.2d 931 (2d Cir. 1989) ................................................................. 13

*Roxbury Entm't v. Penthouse Media Grp.*
  669 F.Supp.2d 1170 (C.D. Cal. 2009) ................................................... 20

*Scandaglia v. Transunion Inter. Inc.*
  2010 WL 3526653 (N.D. Ill. Sept. 1, 2010) ........................................... 15

*Schmid Labs. v. Youngs Drug Products Corp.*
  482 F. Supp. 14 (D.N.J. 1979) ................................................................ 8

*Seltzer v. Green Day, Inc.*
  725 F.3d 1170 (9th Cir.  2013) .............................................................. 22

*Sengoku Works Ltd. v. RMC Int'l, Ltd.*
  96 F.3d 1217 (9th Cir. 1996) ................................................................ 21

*Stewart Surfboards, Inc. v. Disney Book Grp., LLC*
  2011 WL 12877019 (C.D. Cal. May 11, 2011) .......................... 18, 19, 20, 21

*U.S. v. Ritchie*
  342 F.3d 903 (9th Cir. 2003) ................................................................. 5

*Volkswagen AG v. Dorling Kindersly Publ'g, Inc.*
  614 F.Supp.2d 793 (E.D. Mich. 2009) .................................................. 6

*Wonder Labs, Inc. v. Proctor & Gamble Co.*
  728 F. Supp. 1058 (S.D.N.Y. 1990) ...................................................... 8

*Yankee Pub. Inc. v. News Am. Pub. Inc.*
  809 F. Supp. 267 (S.D.N.Y. 1992) ....................................................... 19


**STATUTES**

15 U.S.C. § 1115(b)(4) ........................................................................... 6

15 U.S.C. § 1125 ..................................................................................... 6

15 U.S.C. § 1125(a) ................................................................................ 5

15 U.S.C. § 1127 ................................................................................... 10


**OTHER AUTHORITIES**

Cal. Bus. & Prof. Code § 14200 .......................................................... 25

Cal. Bus. & Prof. Code § 14245 .......................................................... 24

Cal. Bus. & Prof. Code §§ 14202 ........................................................ 24

Cal. Bus. & Prof. Code § 17200 .......................................................... 25

Oxford Dictionary (http://www.oxforddictionaries.com .......................... 12

Restatement (Third) of Unfair Competition § 28 cmt. c (1995) ............... 7

The Free Dictionary (http://idioms.thefreedictionary.com ...................... 11

E. Skold, *Title Match: Jesse Ventura and the Right of Publicity vs. The Public
  and the First Amendment*, 1 Minn. Intell. Prop. Rev. 117, 139-140
  (2000) .............................................................................................. 13, 18

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.   INTRODUCTION

Plaintiff managed to persuade the United States Patent and Trademark Office to grant him a trademark registration for the phrase, "Honey Badger Don't Care" ("HBDC"), for use on t-shirts, Christmas ornaments, talking dolls, mugs, audio books and video games. In what has become another chapter in a wave of litigation, Plaintiff now seeks to expand the scope of his limited rights (if any) to the HBDC phrase by claiming that consumers are likely to be confused by Defendants' descriptive and fair use within a greeting card of a *different* phrase:  "honey badger don't give a shit" ("HBDGAS").  Despite not owning a registered trademark to the HBDGAS phrase, or even competing in the greeting card market, Plaintiff asserts the same boilerplate allegations in this matter as he does in countless others.  But contrary to what he requests of this Court, Plaintiff has not become the *de facto* gatekeeper for all use of the HBDC phrase, or its unregistered variant, HBDGAS.  To the extent Plaintiff owns a valid trademark to *any* phrase referencing the Honey Badger, he has no right, as a matter of law, to preclude others from using such phrases in their descriptive sense as long as the phrase is not used as a trademark.  Defendants' use in their greeting cards of the HBDGAS phrase is objectively fair, and the Complaint should be dismissed on that basis alone.

Plaintiff's claims should also be dismissed because Defendants' use of the HBDGAS phrase is protected by the First Amendment.  Greeting cards are quintessential "expressive works" and under the Ninth Circuit's extremely low threshold, use of the HBDGAS phrase as editorial content is artistically relevant to the greeting card's message and is not explicitly misleading.

To the extent Defendants' use is neither fair nor protected expression, Plaintiff's claim for False Designation of Origin and Federal Unfair Competition fails because Plaintiff does not plead any facts to support senior use or relevant market penetration of his unregistered HBDGAS mark.

Finally, Plaintiff's California Trademark Infringement claim fails as a matter of law because Plaintiff does not plead ownership of any California trademark registration. His California common law and unfair competition claim, moreover, are substantially congruent to their deficient Federal counterparts and should be dismissed accordingly.

## II.   FACTS

### A.   Plaintiff and His "Honey Badger" Video

Plaintiff is a self-described comedic narrator who in January 2011 recorded a voiceover of a *National Geographic* documentary about a honey badger. (Complaint ("Compl."), at p.1.) Plaintiff published the video on YouTube under the title, *The Crazy Nastyass Honey Badger (original narration by Randall)*. (Compl., ¶ 10.) Since its initial publication, Plaintiff alleges the video has gone "viral", generating millions of views to date. (*Id.* at ¶ 4.)

The video itself, which Plaintiff incorporates by reference, features phrases such as, "honey badger don't care" and "oh, that's so nasty," as the honey badger is filmed exhibiting a variety of traits, including searching for food, battling larger predators, and even being bitten by a cobra. (Compl., ¶ 10, fn. 1.) Of the 641 words that comprise Plaintiff's narration, Plaintiff utters the HBDGAS phrase only once. (*Id.*)

### B.   Plaintiff's Trademark Registrations

Several months after the video's publication, Plaintiff applied for four trademark registrations to the HBDC phrase in connection with mugs, Christmas ornaments, t-shirts, and audio books. (Compl., ¶ 12; Exh. A.) The United States Patent and Trademark Office ("USPTO") initially rejected Plaintiff's applications on the grounds that Plaintiff's usage of the phrase on the specified goods was ornamental and not capable of serving a source-identifying function.[1] Plaintiff ultimately managed to

---

[1] See, USPTO February 9, 2012 Office Actions for Registration Nos. 4281472, 4419079, 4419081, and 4505781. "A court may take judicial notice of court filings and other matters of public record." *See Reyn's Pasta Bella, LLC v. Visa USA, Inc.*, 442 F.3d 741, 746 n. 6 (9th Cir.2006). In particular, a court may take judicial notice of

persuade the USPTO into approving his applications, and he currently owns four federally registered trademarks on the USPTO principal register for the HBDC phrase in connection with the goods identified above.  (Compl., ¶ 12; Exh. A.)

Notably, Plaintiff fails to allege any trademark registration with respect to the HBDGAS phrase, or any registration (of any phrase) for use in connection with greeting cards.  (*Id.*)  Despite this, Plaintiff nevertheless alleges that he has used and continues to produce and sell greeting cards and postcards that display his "HBDC" and "HBDGAS" expressions.  (*Id*. at ¶ 14.)  Tellingly, Plaintiff does not attach to his complaint any exemplars of how he uses his marks—on greeting cards or otherwise.

### C.     Defendants' Alleged Infringement and the Greeting Cards At-Issue

Drape is an independent design company that furnishes content for a line of Papyrus' greeting cards.  At issue in this matter are five (5) separate greeting cards Defendants designed and sold at various retail locations.  All of the cards—each one depicting a different theme or occasion—use the HBDGAS phrase[2] as part of the card's editorial content and "greeting."  The cards, as sold at retail, are attached to the declaration of Aaron Siegel ("Siegel Decl.").  Regardless of the version, all cards are expressly identified on the back with Defendants' trademarks, affiliate marks, and product line names, with the "®" symbol as appropriate.  Viewed as a whole, the cards set forth the following messages:

- "The Election's Coming.  Me and Honey Badger don't give a $#%@!" Happy Birthday.

- "Halloween is Here.  Honey Badger don't give a $#*@!"

- "Halloween is Here.  Honey Badger don't give a shit."

- "IT'S YOUR BIRTHDAY! HONEY BADGER DON'T GIVE A SHI*T.

- "HONEY BADGER HEARD IT'S YOUR BIRTHDAY.   HONEY

---

trademark records on file with the USPTO.  *Bhasin v. Pathak*, 2013 WL 1871508, at *2 (C.D. Cal. May 3, 2013).

[2] With one exception, the cards do not recite "shit" explicitly; rather, Defendants edit the phrase so as to read, for example, "sh*t" or "$#%@!."  (Siegel Decl., Exhs. 1-6.)

BADGER DON'T GIVE A SH*T."

(Siegel Decl., Exhs. 1-3, 5-6.)

Another card, which uses Drape's "#Critter" product line name as a clear parody of the famous Twitter interface, concerns the "Honey Badger" using "HoneyBadger@don'tgiveash*t" as a mock twitter handle in tweets to describe what it did that day (for example, "killed a cobra", "ate a scorpion").  The final tweet reads: "Your Birthday's here . . . I give a sh*t."  (Siegel Decl., Exh. 4.)

### III.   LEGAL STANDARD

#### A.   Fed. R. Civ. P. 12(b)(6)

A complaint may be dismissed under Fed. R. Civ. P. 12(b)(6) "based on the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990). "Factual allegations must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  Mere "labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id*.  Rather, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' . . . A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 556, 570).

#### B.   The Court May Consider Defendants' Greeting Cards Because They Are Integral To Plaintiff's Claims

Plaintiff's claims depend upon his allegations that Defendants' use of the HBDGAS phrase on greeting cards infringes upon Plaintiff's registered and unregistered marks.  As Defendants' greeting cards are integral to Plaintiff's claims, they are incorporated by reference into Plaintiff's complaint and are appropriately considered on this Motion to Dismiss. *U.S. v. Ritchie*, 342 F.3d 903, 907–08 (9th Cir.

2003) ("A court may ... consider certain materials—documents attached to the complaint, documents incorporated by reference in the complaint, or matters of judicial notice—without converting [a] motion to dismiss into a motion for summary judgment."). The incorporation by reference doctrine permits the Court to "take into account documents whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the [plaintiff's] pleading." *Knievel v. ESPN*, 393 F.3d 1068, 1076 (9th Cir. 2005) (quotations omitted); *Arnold v. ABC, Inc.*, 2007 WL 210330, at *1 n.2 (S.D.N.Y. Jan. 29, 2007) (finding that materials alleged to infringe mark may be considered on motion to dismiss even if not part of the complaint as they are "integral" to the complaint); *In re Ubiquiti Networks, Inc. Sec. Litig.*, 33 F. Supp. 3d 1107, 1119 (N.D. Cal. 2014) ("[W]here a document is incorporated by reference, it becomes part of the complaint and the court accordingly assumes the truth of its contents for the purposes of ruling on motion to dismiss pursuant to Rule 12(b)(6).").

## IV.   ARGUMENT

Defendants submit that Plaintiff does not have legitimate trademark rights to the unregistered expression, HBDGAS, or even to the registered HBDC phrase. But even assuming he does, Defendants' descriptive use of HBDGAS as communicative content and expression in a greeting card—i.e. Defendants' non-trademark, "fair" use—does not violate any trademark rights Plaintiff purports to own. That Defendants' cards are also expressive works protected by the First Amendment further dooms Plaintiff's claims. Defendants address these issues first followed by a brief discussion as to Plaintiff's failure to otherwise state a claim upon which relief can be granted for Federal Unfair Competition and False Designation of Origin, 15 U.S.C. § 1125(a) (Claim 3), California Statutory and Common Law Trademark Infringement (Claim 2), and California Unfair Competition (Claim 4).

### A.   Defendants' Use Of The HBDGAS Phrase Is Fair Use

Courts uniformly recognize that not every unauthorized use of a trademark is

Sedgwick LLP

actionable. Rather, the Lanham Act is concerned only where a defendant has employed a plaintiff's mark as a designation of the source of defendant's own goods or services. As the Ninth Circuit observes, "[i]t is the source-denoting function which trademark laws protect, and nothing more." *Anti-Monopoly, Inc. v. Gen. Mills Fun Group*, 611 F.2d 296, 301 (9th Cir. 1979). "If a defendant uses a trademark in a non-trademark way, the laws of trademark infringement and false designation are not implicated." *Volkswagen AG v. Dorling Kindersly Publ'g, Inc.*, 614 F.Supp.2d 793, 808-09 (E.D. Mich. 2009); *Fleischer Studios, Inc. v. A.V.E.L.A., Inc.*, 925 F.Supp.2d 1067, 1077 (C.D. Cal. 2012) ("A non-trademark use cannot be infringing, so Plaintiff's claims fail."). Thus, the Lanham Act "permits others to use protected marks in descriptive ways, but not as marks identifying their own products." *Cosmetically Sealed Indus., Inc. v. Chesebrough-Pond's USA Co.*, 125 F.3d 28, 30 (2d Cir. 1997).

The fair use defense exists precisely for the purpose of prohibiting trademark claimants from stretching trademark law beyond its intended bounds. No party has the right to monopolize the English language, and a company may use a trademark term in its descriptive sense regardless of how the mark itself is classified. *Brother Records, Inc. v. Jardine*, 318 F.3d 900, 907 (9th Cir. 2003), *abrogated on other grounds*.

To invoke the fair use defense, Defendants must show they are (1) not using the term as a trademark, (2) use the term only to describe their own goods and services, and (3) use the term fairly and in good faith. 15 U.S.C. § 1115(b)(4).[3] Courts make this determination by looking at a defendant's product as whole, *Fleischer Studios, Inc.*, 925 F.Supp.2d at 1077, and "the defendant has no independent burden to negate the likelihood of any confusion in raising the affirmative defense" of fair use. *KP Permanent Make–Up, Inc. v. Lasting Impression I, Inc.*, 543 U.S. 111, 124 (2004).

Where fair use is apparent in light of Plaintiff's allegations and a review of the

---

[3] "[C]ourts have extended [the fair use defense] to claims under 15 U.S.C. § 1125 as well." *Arnold,* 2007 WL 210330, at *2 n.5 (citing cases).

1   documents properly incorporated by reference, a motion to dismiss should be granted.

2   *In re Dual-Deck Video Cassette Recorder Antitrust Litig.*, 11 F.3d 1460, 1467 (9th Cir.

3   1993) (dismissing on a Rule 12(b)(6) motion trademark infringement claims on fair use

4   grounds); *Architectural Mailboxes, LLC v. Epoch Design, LLC*, 2011 WL 1630809, at

5   *4 (S.D. Cal. Apr. 28, 2011) ("[T]he *Dual–Deck* case indicates that courts may resolve

6   these issues [of fair use] at the pleading stage."); *Naked Cowboy v. CBS*, 844 F.Supp.2d

7   510, 515–16 (S.D.N.Y.2012); *Arnold*, 2007 WL 210330, at *3.  Plaintiff's complaint,

8   including the documents incorporated by reference, establishes that Defendants have a

9   complete fair use defense to all claims.

10         1.      **Defendants Do Not Use the HBDGAS Expression as a**

11                 **Trademark**

12         To determine whether a term is being used as a mark, courts look for indications

13   that the term is being used to indicate the source of defendant's goods.  *Fortune*

14   *Dynamic, Inc. v. Victoria's Secret Stores Brand Mgmt., Inc.*, 618 F.3d 1025, 1040 (9th

15   Cir. 2010).  Indications of trademark use include whether the term is used as a "symbol

16   to attract public attention," *JA Apparel Corp. v. Abboud*, 568 F.3d 390, 400 (2d Cir.

17   2009), which is typically demonstrated by "the lettering, type style, size and visual

18   placement and prominence of the challenged words," *Fortune Dynamic, Inc.*, 618 F.3d

19   at 1040.  Another indication of trademark use is whether the defendant undertook

20   "precautionary measures such as labeling or other devices designed to minimize the risk

21   that the term will be understood in its trademark sense." *Id.* (quoting Restatement

22   (Third) of Unfair Competition § 28 cmt. c (1995); *Packman v. Chicago Tribune Co.*,

23   267 F.3d 628, 639 (7th Cir. 2001) (noting, in finding fair use, that the newspaper's "joy

24   of six" t-shirt "plainly indicat[ed] the Tribune as the source")).

25         Defendants do not use the HBDGAS phrase as a trademark; that is, the phrase is

26   not used for the purpose of identifying or distinguishing Defendants' brand from others

27   or to otherwise identify the greeting card's source.

28

Sedgwick LLP

1
2

**(a)    The Phrase Itself is Not Used As a Source-Identifying Symbol.**

3   As indicated above, there are a variety of ways to show use "otherwise than as a
4   mark." "Unless attention is drawn to the particular word or term as being indicative of
5   source of origin of that product, the term is not being used as a trademark." *Schmid*
6   *Labs. v. Youngs Drug Products Corp.*, 482 F. Supp. 14, 21 (D.N.J. 1979); *see, Wonder*
7   *Labs, Inc. v. Proctor & Gamble Co.*, 728 F. Supp. 1058, 1063 (S.D.N.Y. 1990) (finding
8   fair use and holding that simply drawing attention to the phrase was not enough—
9   attention had to be drawn to the words *as a source of the product*).

10   In this instance, Defendants do not use the HBDGAS in any manner that courts
11   consider to be attention-getting.  For example, the HBDGAS phrase is used on the
12   inside portion of the card, and is part of the card's overall editorial content and message.
13   (Siegel Decl., Exhs. 1-6.)  The typeface and the font-size of the phrase, moreover, are
14   not distinct from the card's other content.  The content is remarkably consistent and
15   entirely contrary to what one would expect of typical trademark usage.  Where all-caps
16   are used on the card's cover, the remainder of the message is all-caps as well. (*Id.* at
17   Exhs. 3, 6.)  Nor does the disputed phrase itself ever appear in a suggestive way, such
18   as by having the initial letter of each word set forth in a capital letter.  That is, the
19   phrase is not, "Honey Badger Don't Give A Shit."  Instead, it reads (in proper
20   grammar), "Honey Badger don't give a shit," with capital letters used only to identify
21   the proper noun.  (*Id.* at Exhs. 1-2, 5.)

22   And unlike Papyrus's prominent use of its own marks on the card, the HBDGAS
23   phrase is not "branded" with any ® or ™ symbol.  (Siegel Decl., Exhs. 1-6.)  The lack
24   of any trademark notice on the HBDGAS phrase itself is confirmation to a consumer
25   that the phrase is *not* being used as a source designator for Defendants' greeting cards.
26   *JA Apparel Corp. v. Abboud*, 682 F.Supp.2d 294, 310 (S.D.N.Y. 2010) ("When use of
27   the challenged words or phrase is accompanied by a defendant's own, conspicuously
28   visible mark, this generally does not constitute trademark use.").  As a result, the

HBDGAS phrase is no more the visual focal point of the greeting card than the card's image of a honey badger, or the card's other phrases, such as "Halloween is here", or "Happy Birthday!"  That the phrase itself is on the *inside* of the card, further establishes that it is not positioned in such a way as to attract significant public attention—the consumer is instead first exposed to the card's front cover, which features a picture of a honey badger and the preamble to the card's overall message. (Siegel Decl., Exhs. 1-6.)

In sum, nothing about the HBDGAS' lettering, type style, size, visual placement or prominence are used in a way that can be said to attract public attention.

### (b) Defendants' Readily Identify Themselves As the Card's Source

Non-trademark use of a phrase is also evident where, as here, "the source of the defendants' product is clearly identified by the prominent display of the defendant' own trademarks." *Cosmetically Sealed Industries, Inc.,* 125 F.3d at 30-31.  Use of this "precautionary measure" counsels against finding a trademark use.  *Id.; Fortune Dynamic, Inc.*, 618 F.3d at 1040.

Defendants use the intended precautionary measures here, as they expressly identify themselves as the cards' source.  All of Defendants' cards prominently and distinctly display on the back of the card—i.e. where the card's price and barcode are located—Defendants' own registered marks, brand names, product-line names, and website address, including with appropriate "®" notifications. (Siegel Decl., Exhs. 1-6.)  Under these circumstances, several courts have found an absence of any trademark use:

- *Arnold*, 2007 WL 210330 (finding, on a Rule 12(b)(6) motion to dismiss, defendants did not make a trademark use of the phrase "what's your problem?" when the "identity of the show" was "clearly evidenced by the prominent display of the show's title, ABC's own famous and recognizable trademark, and large photos of the show's three stars.");

- *Packman*, 267 F.3d at 639 ("the Tribune's distinctive masthead, which appears prominently on the front page ... identifies the source of the product.");

Sedgwick LLP

- *Marketquest Group, Inc. v. BIC Corp.*, 2015 WL 1757766, *6 (S.D. Cal. Apr. 17, 2015) (finding no trademark usage where BIC's prominently displayed its own registered marks next to a descriptive use of plaintiff's "write choice" slogan);

- *Naked Cowboy,* 844 F. Supp. 2d at 515 (finding on a Rule 12(b)(6) motion to dismiss that defendant did not make a trademark use of plaintiff's "naked cowboy" mark where defendants prominently displayed the series' title and CBS's own recognizable "Eye" logo);

- *B & L Sales Assocs. v. H. Daroff & Sons, Inc.*, 421 F.2d 352, 353 (2d Cir. 1970) (holding that the trademark phrase "Come on Strong" was not used as a source identifier in the advertisement "Come on Strong with Botany 500," because given "defendant's reputation as a well-known manufacturer of [Botany 500] men's suits, it is inconceivable that these [advertising] materials were intended to attribute the source of the goods to anyone other than defendant.").

Further, not only does Papyrus use its stylized Recycled Paper Greetings® mark on the back of Defendants' cards, but it also uses other affiliated marks such as "Tomato Cards®" and "Detour-Find the Unexpected®" to additionally establish the cards' source. (Siegel Decl., Exhs. 1-6.) One would expect that if the HBDGAS phrase was, in fact, being used by Defendants as a trademark, then it, too, would have been included as such on the back of the card. Indeed, such is the nature of a trademark: it is used to identify the product's source. *See, e.g., Bell v. Harley Davidson Motor Co.,* 539 F.Supp.2d 1249, 1258 (S.D. Cal. 2008) (finding no trademark usage where the defendant did not use plaintiff's mark "where one would expect to find the source-identifiers of a product."). Because the greeting cards here do not use the HBDGAS expression as a source indicator, Defendants have not made a trademark use of the phrase.[4]

_____

[4] Some courts further hold that before there can even be a claim of trademark infringement, the phrase at issue must be used in commerce by the defendant as a trademark—that is, to distinguish its goods "from those sold by others and to indicate the source of the goods." 15 U.S.C. § 1127. Under this view, non-trademark use, standing alone, is sufficient to defeat a plaintiff's infringement claims—even on a motion to dismiss, as failure to use any purported mark as a source-identifier precludes a plaintiff's ability to state a claim for infringement. *See Hensley Mfg. v. ProPride, Inc.*, 579 F.3d 603, 610 (6th Cir. 2009) ("If [defendants] are not [using the challenged

Sedgwick LLP

### 2. Defendants Use "Honey Badger Don't Give a Shit" Descriptively

Fair use is also facially evident here because Defendants use the HBDGAS phrase editorially to describe and convey a message and sentiment.  The universe of words or phrases that can be used "to describe the goods" is not "narrowly confined to words that describe a characteristic of the goods, such as size or quality." *Cosmetically Sealed Indus., Inc.,* 125 F.3d at 30.  The Ninth Circuit recognizes this explicitly, and has determined that to satisfy this prong of the fair use test, a word or phrase need only be used in a "descriptive sense." *Fortune Dynamic, Inc.*, 618 F.3d at 1042 ("We have no quarrel with the general proposition that the fair use defense may include use of a term or phrase in its "descriptive sense," which in some instances will describe more than just a characteristic of the [defendant's] goods.") (citations and quotations omitted).  Thus, words or phrases that do not necessarily describe anything about an alleged infringer's goods might still be used in a "descriptive sense" for purposes of the "fair use" defense. *Cosmetically Sealed Indus., Inc.*, 125 F.3d at 30.

### (a) Honey Badger Don't Give a Shit is Descriptive

As a preliminary matter, the HBDGAS phrase is itself capable of a common descriptive meaning.  The phrase, "don't give a shit," is colloquially derived from the common English phrase "don't care", and is an idiom that means "to not be interested in or worried about something or someone" or to "not care at all."  (The Free Dictionary (http://idioms.thefreedictionary.com/give+a+shit (last visited Nov. 30, 2015); Oxford

---

mark in a way that identifies the source of their goods], then the mark is being used in a 'non-trademark' way and trademark infringement laws, along with the [likelihood of confusion analysis], do not even apply.") (citing *Interactive Prods. Corp. v. a2z Mobile Office Solutions, Inc.*, 326 F.3d 687, 694-95 (6th Cir. 2003)); *Architectural Mailboxes, LLC*, WL 1630809, at *4 (relying upon *Hensley* and dismissing claims on a Rule 12(b)(6) motion); *Fleischer Studios, Inc.*, 925 F.Supp.2d at 1077 ("Defendants' use does not indicate a source or origin of the products, and is therefore not a trademark use.  A non-trademark use cannot be infringing, so Plaintiff's claims fail.").

Dictionary  (http://www.oxforddictionaries.com/us/definition/american_english/not-give-a-shit?q=give+a+shit (last visited Nov. 30, 2015).

Even Plaintiff's own video uses the phrase to describe and convey the honey badger's fearlessness.  In Plaintiff's video, the phrase "doesn't [or don't] give a shit" is used four times,[5] and in the following context:

- The honey badger's been referred to by the Guinness Book of World Records as the most fearless animal in all the animal kingdom. **It really doesn't give a shit**. (Compl., ¶10, fn. 1 at 0:18.)

- Now watch this, look, a snake's up in a tree. Honey badger don't care. **Honey badger don't give a shit**, it just takes what it wants.  (Compl., ¶10, fn. 1 at 0:31.)

- Now look, here's a house full of bees. You think the honey badger cares? **It doesn't give a shit**. It goes right in to the house to bees to get some larvae.  How disgusting is that? It eats larvae. Ew, that's so nasty. But look, the honey badger doesn't care, it's getting stung like a thousand times. **It doesn't give a shit**, it just, it's hungry. It doesn't care about being stung by bees. Nothing can stop the honey badger when it's hungry.  (Compl., ¶10, fn. 1 at 1:14.)

Plaintiff himself uses the phrase to describe the honey badger's own actions, traits and fearlessness, and in doing so confirms that the HBDGAS phrase is capable of a primary descriptive meaning:  that the honey badger is fearless and does not care about a variety of potential injuries or calamities.  Regardless of any trademark rights he may otherwise enjoy in the HBDGAS phrase (the extent of which are disputed), Plaintiff cannot prevent others from using such phrases in their primary, descriptive sense.  *B & L Sales Assoc. v. H. Daroff & Sons, Inc.*, 298 F.Supp. 908, 911 (S.D.N.Y.1969), aff'd, 421 F.2d 352, 354 (2d Cir.); *M. B. H. Enterprises, Inc. v. WOKY, Inc.*, 633 F.2d 50, 55 (7th Cir. 1980) (The owner of a registered mark "may not appropriate to itself common English slang terms and thus prevent others from using such phrases in their descriptive sense.").  That some confusion may result is the risk Plaintiff took in attempting to trademark a phrase capable of a primarily descriptive

---

[5] The actual phrase in dispute here, "honey badger don't give a shit," is used by Plaintiff only *once* in the video.  (Compl., ¶ 10, fn. 1 at 0:35.)

Sedgwick LLP

1   meaning. *Marketquest Group, Inc.*, 2015 WL 1757766, at \*4.

2        **(b)**     **Defendants Use the HBDGAS Phrase in Its Descriptive**

3                     **Sense**

4       Defendants use of the HBDGAS phrase is descriptive not only of the card's

5   purpose, which is to set forth a message and sentiment, but of the message itself.  This

6   is particularly evident because of the very purpose greeting cards serve; indeed, the

7   function of a greeting card is for one person to convey a message to another, and part of

8   that message often consists of observations regarding situations or individuals in which

9   the recipient is likely to be interested.  It is therefore no surprise that the Ninth Circuit

10   recognizes greeting cards as a vehicle of expression, holding that they are "the

11   embodiment of humor, praise, regret or some other message in a pictorial and literary

12   arrangement." *Roth Greeting Cards v. United Card Co.*, 429 F.2d 1106, 1110 (9th Cir.

13   1970) (superseded on other grounds, as recog. by *Cosmetic Ideas, Inc. v.

14   IAC/Interactivecorp.*, 606 F.3d 612, 616 (9th Cir. 2010)); se*e also Roulo v. Russ Berrie*

15   *& Co., Inc.*, 886 F.2d 931, 940 (2d Cir. 1989) (same); E. Skold, *Title Match: Jesse*

16   *Ventura and the Right of Publicity vs. The Public and the First Amendment*, 1 Minn.

17   Intell. Prop. Rev. 117, 139-140 (2000) ("[G]reeting cards are traditionally designed not

18   only to convey a message from producer to purchaser, but also from the purchaser to

19   the recipient.").

20       Defendants use the HBDGAS phrase in this precise (and permissibly) descriptive

21   manner.  When read in their entirety—i.e., from front to back—the cards' front cover

22   combines with the inside portion to describe, and place in context, the entire message.

23   Modifiers such as, "*Honey Badger* heard it's your birthday," or "The Election's

24   Coming," set-up the descriptive usage of "Honey Badger don't give a sh\*t" and "*Me*

25   *and Honey Badger* don't give a $#%@!", respectively (italics added).  Viewed as a

26   whole, then, the cards' editorial content objectively uses the HBDGAS phrase to

27   describe and convey a message.

28       The phrase's descriptiveness is also exemplified by the distinct images both on

Sedgwick LLP

the card's front cover and inside jacket.  For example, HBDGAS is displayed, in some instances, inside the card and right above an image of a honey badger destroying the very symbol associated with the specified occasion:  a patriotic top-hat for an election, a pumpkin for Halloween, and a birthday cake and party-hat for one's birthday.  (Siegel Decl., Exhs. 1-3, 5-6.)  To the extent the card's purchaser and recipient did not already get the "gist" of the sarcasm or joke, these images leave little doubt that the phrase is being used descriptively.

A greeting card naturally marries art and editorial—a card's message is communicated through both the design and the sentiment contained in the card.  So when the designer creates (and a purchaser buys) a card that says, for example, "Honey Badger heard it's your birthday.  Honey badger don't give a shit," the phrase—and accompanying contextual artwork—itself is part of the overall, "happy birthday" message.  Like all greeting cards, the art and content describe and state the message.  The HBDGAS phrase within the greeting cards at issue here help convey that message or sentiment—perhaps jokingly or sarcastically—to be passed along on the proper occasion, and is fair use.

Courts have found descriptive, non-infringing fair use for less direct descriptions than at issue in this case.  For example:

- *Cosmetically Sealed,* 125 F.3d at 30:  There, the court held that although the defendants' use of the phrase "Seal it With a Kiss" "d[id] not describe a characteristic of the defendants' product," it was used in its "'descriptive sense'—to describe an action that the sellers hope consumers will take, using their product.";

- *Car-Freshner Corp*. v. *S.c. Johnson & Son, Inc.,* 70 F.3d 267, 270 (2d Cir. 1995) (defendant established fair use because its "pine-tree shape" air freshener "describes … the pine scent" and "refers to the Christmas season, during which Johnson sells th[e] item");

- *B & L Sales Assocs*., 421 F.2d at 353 (affirming fair use of the phrase "Come on Strong" because it "describe[d] the manner in which [the] clothing would assist the purchaser in projecting a commanding, confident, 'strong' image to his friends and admirers");

- *Bell*, 539 F.Supp.2d at 1258 (Harley-Davidson's use of "Ride Hard" was descriptive as the phrase was used to describe the prospective consumer's response to riding a Harley-Davidson or wearing apparel

with the trademarked Harley-Davidson logo);

- *Arnold,* 2007 WL 210330, at *3 (finding, on a motion to dismiss, the phrase "what's your problem?" to be descriptive when used in an advertisement for a fictional television show about a law firm;

- *Packman*, 267 F.3d at 639 (editorial use of the phrase, "the joy of six" found to be descriptive of a newsworthy event and the feeling associated with the Chicago Bulls' sixth NBA championship);

- *Marketquest Group, Inc.*, 2015 WL 1757766, at *6 (finding BIC's use of the trite pun, "the write pen choice", in connection with BIC's 40th anniversary advertising to be descriptive of BIC's pen product);

- *Scandaglia v. Transunion Inter. Inc.*, 2010 WL 3526653, at *3-*6 (N.D. Ill. Sept. 1, 2010) (finding fair use of the phrase, "Always Know Where You Stand" when used in advertisement for credit-reporting company, where "nothing about [the] use of [the phrase] sets it apart from many other phrases [used] within the advertisement," and was descriptive in that it described a benefit of using defendant's services).

Courts have even found fair, descriptive uses of marks that have "gone viral." In *Naked Cowboy*, 844 F. Supp. 2d at 515, the court found, on a motion to dismiss, that CBS's use of a phrase in a YouTube video clip to refer to the contents of the video was a descriptive, non-infringing fair use. The trademark at issue there was "Naked Cowboy", which referred to the "enormously successful and popular" Times Square street performer who "dresses as a cowboy-only a virtually Naked one. *Id.* at 512. CBS had aired an episode of its day-time soap opera, *The Bold and the Beautiful,* which featured in one scene a "naked cowboy" singing and playing a guitar. *Id.* at 513. Though the episode itself did not refer to the mark, CBS's YouTube channel posted the video with the title, "The Bold and the Beautiful—Naked Cowboy," and "began selling advertising with that video immediately." *Id.* at 513-14. In dismissing plaintiff's claims on fair use grounds, the court noted, "[i]t is clear that CBS used the phrase in an effort to describe the contents of the video clip, not as a mark to identify the source of the video clips." *Id.* at 515. That CBS had also displayed its own logos and titles beneath the clip further cemented the court's conclusion that the use of the otherwise "popular" phrase was a fair use. *Id.* at 515-16.

Much like *Naked Cowboy*, Defendants used the HBDGAS phrase in a similarly descriptive manner, as part of a message and editorial content and not as a mark to

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF FED. R. CIV. P. 12(b)(6) MOTION TO DISMISS

identify the source of its greeting cards.  That the phrase itself is alleged to have originated from Plaintiff's "viral" internet video is of no consequence, and certainly does not preclude others from using it in a primary, descriptive manner.  *See, B & L Sales Assocs.*, 421 F.2d at 353 ("'Come on Strong' ... is a common slang term, the general use of which plaintiff cannot prevent by registering it in connection with certain goods.").  Plaintiff does not control every descriptive reference to a honey badger solely by virtue of thrusting the animal into our public consciousness.

### 3.    Defendants Use the HBDGAS Phrase in Good Faith

The overall analysis here focuses on whether defendant's use of the phrase was objectively fair.  *KP Permanent*, 543 U.S. at 123.  Indeed, courts generally determine whether a mark was used in "good faith" by evaluating the use itself, not the user's general state of mind.  *In re Dual-Deck Video Cassette Recorder Antitrust Litig. v. Matsushita Elec. Indus*. Co., 1991 WL 425379, at *13 (D. Ariz. Jan. 7, 1991) aff'd 11 F.3d 1460 (9th Cir. 1993).  Moreover, where, as is the case here, a defendant does not use the alleged mark as a source-identifier and in fact identifies itself as the source of the goods, the mark is deemed not to have been used in bad faith or for purposes of capitalizing on Plaintiff's good will.  *Fleischer Studios, Inc.*, 925 F.Supp.2d at 1076. The display of defendant's own name or mark in conjunction with the mark it allegedly infringes is evidence of good faith. *Cosmetically Sealed Indus., Inc.*, 125 F.3d at 30-31. Plaintiff's complaint fails to set forth any non-conclusory or plausible allegations of bad faith capable of defeating Defendants' fair use.  Bald allegations that Defendants "intended to capitalize on Plaintiff's Mark," (Compl., ¶ 22), or that "Defendants' purpose in utilizing the Mark is an attempt to benefit unfairly from the valuable goodwill and extreme popularity of the Mark. . . , (Compl., ¶ 24), are conclusions without a factual basis. *Twombly*, 550 U.S. at 555 (mere "labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do.").  As already set forth at length, Defendants do not use the HBDGAS phrase as a source identifier and readily identify themselves as the greeting cards' source.  That alone negates bad faith.

Sedgwick LLP

1   *See, Marketquest Group, Inc.*, 2015 WL 1757766, *6 (finding no "bad faith" where
2   defendant prominently labeled products with its own mark and did not use any
3   distinctive font or styling when reciting the phrase at issue); *Bell*, 539 F.Supp.2d at
4   1258 (including the Harley-Davidson name or bar-&-shield logo on every
5   advertisement and piece of merchandise indicated good faith).

6       For all these reasons, Defendants' fair use of the HBDGAS phrase warrants
7   dismissal of Plaintiff's claims.  Defendants used the phrase otherwise than as a mark,
8   and in a descriptive sense.  Plaintiff's conclusory allegations of bad faith do not suffice
9   and, in any event, are readily rebutted by a review of Defendants' cards as a whole.

10       **B.**    **Defendants' Use Of The HBDGAS Phrase Is Protected By The First**
11             **Amendment.**

12       In addition to fair use, Defendants' use of the HBDGAS phrase is protected
13   expression under the First Amendment.  "[W]hen unauthorized use of another's mark is
14   part of a communicative message and not a source identifier, the First Amendment is
15   implicated in opposition to the trademark right." *See Mattel, Inc. v. MCA Records, Inc.*,
16   296 F.3d 894, 901 (9th Cir. 2002).

17       To reconcile a defendant's First Amendment interests with a plaintiff's Lanham
18   Act claim, the Ninth Circuit has expressly adopted the influential *Rogers* test,
19   developed by the Second Circuit in *Rogers v. Grimaldi*, 875 F.2d 994 (2nd Cir. 1989).
20   *See, Mattel, Inc.*, 296 F.3d at 902; *Novalogic, Inc. v. Activision Blizzard*, 41 F. Supp. 3d
21   885, 898 (C.D. Cal. 2013).  The test contains two prongs.  An artistic work's use of a
22   trademark is not actionable "'unless the [use of the mark] has no artistic relevance to
23   the underlying work whatsoever, or, if it has some artistic relevance, unless [it]
24   explicitly misleads as to the source or the content of the work.'" *Mattel, Inc.*, 296 F.3d
25   at 902 (quoting *Rogers*, 875 F.2d at 999).  The Ninth Circuit expressly extends the
26   doctrine to the use of a trademark in the body of the work.  *E.S.S. Entm't 2000, Inc. v.*
27   *Rock Star Videos, Inc.*, 547 F.3d 1095, 1099 (9th Cir. 2008).  Courts in this district,
28   moreover, are entitled to consider the test on a motion to dismiss.  *Stewart Surfboards,*

Sedgwick LLP

1   *Inc. v. Disney Book Grp., LLC*, 2011 WL 12877019, at *7 (C.D. Cal. May 11, 2011)

2   (finding nothing precludes application of the *Rogers* test on a motion to dismiss and

3   dismissing *with prejudice* Plaintiff's claims).

4          Plaintiff's allegations and a review of the greeting cards incorporated by

5   reference, standing alone, establish that Defendants' use of the HBDGAS phrase is

6   artistically relevant to the card's message and does not explicitly mislead as to the

7   source or content of the work.

8          **1.     Defendants' Greeting Cards Are Artistic, "Expressive Works"**

9          As set forth above in Section IV(A)(2)(b), greeting cards are unquestionably

10  expressive works.  Greeting cards help people express what they are unable to say face-

11  to-face, or what they cannot find the words to say.  They help reach across generational,

12  gender and cultural communication gaps and speak to many different occasions,

13  sentiments, ages, and groups.

14         The very function of a greeting card is for one person to convey a message to

15  another, and part of that message often consists of observations regarding situations or

16  individuals in which the recipient is likely to be interested.  Thus, the greeting card

17  writer's words speak to the person who selects the card and from that same person to

18  someone else when the card is sent.  Greeting cards, therefore are no less expressive

19  than literary works, video games, or baseball cards, and are fully protected under the

20  First Amendment. *See, E.S.S. Entm't 2000, Inc.*, 547 F.3d at 1099 (adopting parties'

21  concession that video games are artistic expression); *Cardtoons, L.C. v. Major League

22  Baseball Players Ass'n*, 95 F.3d 959, 969 (10th Cir. 1996) (finding parody baseball

23  cards were fully protected under the First Amendment, regardless whether the cards

24  could be considered a "traditional medium of expression."); *see also* Skold, *supra*, 1

25  Minn. Intell. Prop. Rev. at 139-140 ("Trading cards seem particularly analogous to

26  greeting cards, and it is easy to imagine that greeting cards would also fall in the realm

27  of forms of expression deserving of First Amendment protection").

28

Sedgwick LLP

## 2.    The HBDGAS Expression Has Artistic Relevance

The *Rogers* test sets forth a purposefully low inquiry as to whether use of a mark is artistically relevant to the underlying work.  Where the use of the trademark in an expressive work has "*no* artistic relevance to the underlying work *whatsoever*," *E.S.S. Entm't 2000, Inc.*, 547 F.3d at 1100 (emphasis in original), it is effectively not a true expressive use of the trademark, but rather (presumably) a use that simply seeks to capitalize on the mark's fame and goodwill to grab more attention.  In other words, as long as there is "above zero" relevance, this prong of the test is satisfied.  *Id.* at 1100 ("[T]he level of relevance merely must be above zero."); *Stewart Surfboards, Inc.*, 2011 WL 12877019, at *5 ("Where, however, the use of a trademark has some "above zero" level of relevance, its use is truly expressive.").

Defendants' use of the HBDGAS phrase readily satisfies the above-zero relevance standard.  The phrase is not only literally relevant to describe the artwork and photographs set forth in the greeting cards, but is also artistically relevant to the greeting card's message; indeed, the phrase conveys the context and sarcasm of the message itself.  Courts routinely find the requisite minimal relevance in analogous situations where use of a mark speaks to the theme or message of the underlying work. *E.S.S. Entm't 2000, Inc. v. Rock Star Videos, Inc*., 444 F. Supp. 2d 1012, 1041 (C.D. Cal. 2006) aff'd, 547 F.3d 1095 (9th Cir. 2008) (finding that use of plaintiff's strip club trademark and trade dress in defendant's video game to be artistically relevant to defendants' twisted, irreverent image of urban Los Angeles); *Yankee Pub. Inc. v. News Am. Pub. Inc*., 809 F. Supp. 267, 278 (S.D.N.Y. 1992)  (finding that use of the Old Farmer's Almanac cover design in New York's Christmas gift issue was relevant to defendants' "thrift" theme); *id.* at 277-80 (also recognizing that use of elements of the Almanac cover design had artistic relevance to New York's joking reference); *Stewart Surfboards, Inc.*, 2011 WL 12877019, at *4-5 (finding Disney's use of the Stewart Surfboards trademark on the back of a *Hannah Montana* book jacket about "Hanna Montana's" summer vacation clearly meets this "low threshold;" that the mark had

Sedgwick LLP

some relevance to the book's theme: "Plainly, Disney used the mark to refer to the surfing-related meaning of the Stewart Surfboards mark.").

In view of this line of authority, Defendants' use of HBDGAS phrase certainly has the minimal requisite artistic relevance to their greeting cards so as to be protected under the First Amendment as a matter of law.

### 3.   Defendants' Use of the HBDGAS Phrase Does Not Explicitly Mislead as to the Source or the Content of Defendants' Greeting Cards

Plaintiff's allegations also fail to satisfy the second prong of the *Rogers* test. "To be 'explicitly misleading,' a defendant's work must make some affirmative statement of the plaintiff's sponsorship or endorsement, beyond the mere use of the plaintiff's name or other characteristic." *Dillinger, LLC v. Elec. Arts Inc.*, 2011 WL 2457678, *6 (S.D. Ind. June 16, 2011) (citing *Rogers*, 875 F.2d at 1001).  Without such an affirmative statement, the second prong of the *Rogers* test is not satisfied because the "mere use [of a mark], without more, is insufficient to make the use explicitly misleading." *Roxbury Entm't v. Penthouse Media Grp.*, 669 F.Supp.2d 1170, 1176 (C.D. Cal. 2009); *E.S.S. Entm't 2000, Inc.*, 547 F.3d at 1100 ("mere use of a trademark alone cannot suffice to make such use explicitly misleading"); *Dillinger*, 2011 WL 2457678, at *8 ("Plaintiff points to no explicit misrepresentation—that fact alone is dispositive of this issue.").

A work is "explicitly misleading" if it contains an "explicit indication," "overt claim," or "explicit misstatement." *Stewart Surfboards, Inc.,* 2011 WL 12877019, at *7. Allowing trademark law to restrict artistic uses of trademarks that do not explicitly mislead in this way would unnecessarily impair First Amendment rights." *Id*.

As previously detailed, Defendants' greeting cards make no such explicit misstatement or overt claim capable of removing the First Amendment protections afforded to their works.  The cards themselves are all branded with Defendants' own registered marks, logos and source-identifiers, (Siegel Decl., Exhs. 1-6), so as to properly alert customers that Defendants are the source of the cards.  Indeed, such use

Sedgwick LLP

of Defendants' own marks, coupled with the otherwise non-descript manner in which the HBDGAS phrase itself is used, further ensures that Defendants' use of the phrase is not deemed to serve any trademark function. *See, e.g., Dessert Beauty, Inc. v. Fox*, 568 F. Supp. 2d 416, 424 (S.D.N.Y. 2008) ("Words on a product's packaging generally do not serve as a trademark where there is also a conspicuously visible trademark that clearly serves that function"); *Stewart Surfboards, Inc*., 2011 WL 12877019, at *7 (finding no express misleading where, for example, the underlying work "does not say anything like "Brought To You By Stewart Surfboards" or "Presented By Stewart Surfboards.").   Plaintiff fails to otherwise allege any such overt claim or express misstatement, and his claims should therefore be dismissed.

## C.   Plaintiff's Federal Unfair Competition and False Designation of Origin Claim Must Be Dismissed

Plaintiff alleges that he enjoys common law trademark rights to the unregistered mark, "honey badger don't give a shit."  To the extent Plaintiff's False Designation of Origin and Federal Unfair Competition Claim (Claim 3) alleges infringement of this unregistered mark, Plaintiff fails to state a claim upon which relief can be granted.

To establish trademark rights in the absence of federal registration, a plaintiff must plead and prove that it is the senior user of the mark with sufficient market penetration to preclude the defendant from using the mark in a specific geographic market. *See Sengoku Works Ltd. v. RMC Int'l, Ltd.*, 96 F.3d 1217, 1219 (9th Cir. 1996) ("To acquire ownership of a trademark it is not enough to have invented the mark first or even to have registered it first; the party claiming ownership must have been the first to actually use the mark in the sale of goods or services."); *Quiksilver, Inc. v. Kymsta Corp.*, 466 F.3d 749, 761–62 (9th Cir. 2006) (stating that use equated to sales in a specified area); *Glow Indus., Inc. v. Lopez*, 252 F.Supp.2d 962, 983 (C.D. Cal. 2002) ("Generally, the senior user of a mark is entitled to assert trademark rights in all areas in which it has legally sufficient market penetration."); *Optimal Pets v. Nutri-Vet, LLC*, 877 F.Supp.2d 953, 958 (C.D. Cal. 2012) (same).  Senior use and market penetration

Sedgwick LLP

are independent analyses.  *Id.*

### 1.    Plaintiff Fails to Allege He is the Senior User of the HBDGAS Mark.

Seniority of use can only be established by commercial usage; "it is not enough to have invented the mark first or even to have registered it first." *Glow Indus., Inc*, 252 F. Supp. 2d at 980-81.  Not just any use is sufficient; courts look to the totality of a party's actions to determine whether the use is sufficient to establish priority. *Future Domain Corp. v. Trantor Sys. Ltd.*, 1993 WL 270522, at *6 (N.D. Cal. May 3, 1993).

Plaintiff fails to set forth any allegations that it began using the HBDGAS phrase on greeting cards prior to Defendants.[6]  Tellingly, Plaintiff fails to allege any specific date of first use with respect to greeting cards, and does not otherwise allege that any such first use was concurrent with the first use dates set forth in Plaintiff's HBDC registrations.  Bare allegations that Plaintiff produced and sold merchandise, "including greeting cards," "since soon after the video was published" (Compl., p.2 at lns. 14-17; ¶ 14), provides no indication that either of these activities were (a) prior to Defendants' use on greeting cards, or (b) even resulted in public awareness of the mark, much less that "an appropriate segment of the public mind" came to identify the unregistered mark with Plaintiff's goods or services. *Seltzer v. Green Day, Inc.*, 725 F.3d 1170, 1180 (9th Cir. 2013).  Plaintiff's allegations  fail to plausibly allege seniority of use.

### 2.    Plaintiff Fails to Plausibly Allege Any Market Penetration of HBDGAS Products.

"[I]n the absence of federal registration, both a senior and junior user would have the right to expand into unoccupied territory and establish customer recognition in that territory." *Optimal Pets*, 877 F. Supp. 2d at 958-59.  Because Plaintiff does not have a registered trademark to the HBDGAS phrase and has no registered rights at all in the

---

[6] Defendants continue to assert that it has not made a trademark use of the HBDGAS phrase.  Nevertheless, for purposes of this motion only, even if they did, Plaintiff's False Designation of Origin and Unfair Competition claims still fail.

Sedgwick LLP

field of greeting cards, he must demonstrate that he acquired common law rights through legally sufficient market penetration in a geographical area in the greeting card field before Defendants (or any other third party) first sold their greeting cards.

Market penetration is determined by examining information such as the trademark user's "volume of sales and growth trends, the number of persons buying the trademarked product in relation to the number of potential purchasers, and the amount of advertising." *Glow*, 252 F. Supp. 2d at 983. The market penetration standard is not easily satisfied. *See, e.g., Optimal Pets*, 877 F. Supp. 2d at 962-64 (a company that sold a total of $35,000 in pet supplies to pet professionals in 16 states, maintained a website, and spent more than $100,000 in advertising, including national magazine advertising, failed to establish sufficient market penetration nationwide).

Plaintiff fails to allege market penetration of his alleged use of the HBDGAS mark (on greeting cards or otherwise) in any geographic location, let alone nationwide. The only allegations in the Complaint relating to Plaintiff's alleged use of the HBDGAS mark in connection with greeting cards are general conclusions that Plaintiff has sold, and continues to sell, greeting cards utilizing the phrase. (Compl., p. 2 at lns. 14-18, ¶ 14.) Plaintiff, however, pleads no specific facts regarding his sales volume, growth trends, the number of persons buying his greeting cards in relation to the number of potential purchasers, or the amount of his advertising at any point for greeting card sales. See *Glow*, 252 F. Supp. 2d at 984-85 (denying preliminary injunction where plaintiff provided "little information that would assist the court in quantifying market penetration, sales levels, growth trends, or the number of people who purchased the company's products in relation to the number of potential customers").

On the other hand, Plaintiff alleges that Defendants have made substantial sales, selling the cards in numerous retail stores throughout the country, including in California.[7] (Compl., ¶¶ 20-21.) This is significant because without factual allegations

---

[7] Plaintiff's additional allegation that the majority of his products, including greeting

regarding Plaintiff's use of the HBDGAS mark, Defendants' nationwide presence may very well preclude Plaintiff from claiming common law rights to the phrase. By asserting his claim, though, Plaintiff simply presumes he has the requisite market penetration to be able to prevent any other third party from using the HBDGAS phrase. *Glow*, 252 F. Supp. 2d at 986 ("Because [the plaintiff] has not adequately demonstrated the extent of its current market penetration, a zone of expansion that encompasses the entire nation is about as large a 'leap' as it is possible to imagine."). Without the facts to prove as much, Plaintiff fails to state a claim for false designation of origin and unfair competition with respect to the unregistered HBDGAS mark.

### D. Plaintiff's Second Claim For Trademark Infringement Under Cal. Bus. & Prof. Code § 14245 Must Be Dismissed Because He Has No California State Trademark Registration

Plaintiff's second claim alleges that in addition to California common law rights,[8] Defendants' use of the HBDGAS phrase infringes upon Plaintiff's California trademark rights under Cal. Bus. & Prof. Code § 14245. (Compl., ¶¶ 33-34.) However, Plaintiff must own a California trademark registration in order to proceed with a claim under California's trademark statute. *See, e.g.,* Cal. Bus. & Prof. Code §§ 14202 and 14245; *Dream Marriage Group, Inc. v. Anastasia Int'l, Inc.*, 2010 WL 4346111, *1 (C.D. Cal. Oct. 27, 2010). Plaintiff does not plead any facts affirming that he owns a California

---

cards, are sold via the internet does not save his claim—it only highlights the reason why insufficient facts are pleaded. Indeed, sales made online do not establish any requisite market penetration; rather, online sales merely support use in geographic markets in which the online customer is located. *Optimal Pets, Inc.*, 877 F. Supp. 2d at 962. Without pleading any facts as to his "substantial" online sales, Plaintiff fails to allege market penetration sufficient to establish common law rights anywhere.

[8] Plaintiff's Second Cause of Action also alleges infringement under California Common Law. This appears to be duplicitous of Plaintiff's Fourth Claim, which also alleges infringement under California Common Law. Under either enumeration, Plaintiff's California Common Law claim fails because it is substantially congruent to their federal counterparts, as more fully set forth herein.

Sedgwick ᴸᴸᴾ

1 registered trademark to either HBDC or HBDGAS, or to any similar variant.  Without a

2 trademark registration under Cal. Bus. & Prof. Code § 14200 *et seq*., Plaintiff's

3 California statutory claim fails and must be dismissed.  *Id.* at *1 (dismissing *with*

4 *prejudice* Plaintiff's California statutory infringement claim where plaintiff failed to

5 allege ownership of a California registered trademark).

### E.   Plaintiff's California Common Law and Statutory Unfair Competition Claim Must Be Dismissed

8     Plaintiff's California common law and statutory claims are "substantially

9 congruent" to his Lanham Act claims and, therefore, should be dismissed on the same

10 grounds noted above.  *See Cleary v. News Corp.*, 30 F.3d 1255, 1262–63 (9th Cir.

11 1994) ("[S]tate common law claims of unfair competition and actions pursuant to

12 California Business and Professions Code § 17200 are 'substantially congruent' to

13 claims made under the Lanham Act."); *Mut. Pharm. Co. v. Watson Pharm., Inc.*, 2009

14 WL 3401117, at *6 (C.D. Cal. Oct. 19, 2009); *See E.S.S. Entm't*, 547 F.3d at 1098,

15 1101 (applying *Rogers* test to Lanham Act § 1125(a) claim and to section 17200 claim).

## V.   <u>CONCLUSION</u>

17     To give Plaintiff the protection he seeks would be the first step in bestowing

18 upon him a virtual monopoly of any phrase or message that includes within it the

19 sarcastic, yet true, message that a honey badger doesn't give a shit.  For the foregoing

20 reason, Plaintiff's claims should be dismissed.

21 DATED:  December 4, 2015          Respectfully submitted,

23                                    SEDGWICK LLP

25                              By:       */s/ Jason M. Joyal*

26                              JAMES J.S. HOLMES

27                              JASON M. JOYAL

                             Attorneys for Defendants, Drape Creative,

28                              Inc.; and Papyrus-Recycled Greetings, Inc.