1   Daniel L. Reback (SBN 239884)
      Email: dreback@kranesmith.com
2   Jeremy Smith (SBN 242430)
      Email: jsmith@kranesmith.com
3   Benjamin J. Smith (SBN 266712)
      Email: bsmith@kranesmith.com
4   KRANE & SMITH, APC
    16255 Ventura Boulevard, Suite 600
5   Encino, CA 91436
    Tel: (818) 382-4000
6   Fax: (818) 382-4001

7   Attorneys for Plaintiff,
    CHRISTOPHER GORDON

8

9              UNITED STATES DISTRICT COURT

10    CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

11

12   CHRISTOPHER GORDON, an        Case No. CV 15-04905 JFW (PLAx)
     individual,
13                                 *Hon. John F. Walter, presiding*
                   Plaintiff,
14                                 **OPPOSITION OF PLAINTIFF
     vs.                           CHRISTOPHER GORDON TO
15                                 DEFENDANTS' MOTION TO
     DRAPE CREATIVE, INC., a       DISMISS FIRST AMENDED
16   Missouri corporation;         COMPLAINT PURSUANT TO FED.
     PAPYRUS-RECYCLED              R. CIV. P. 12(b)(6)**
17   GREETINGS, INC., an Illinois
     corporation; and DOES 1 to 10, Date:      February 8, 2016
18   inclusive,                    Time:      1:30 p.m.
                                   Location: Courtroom 16
19                 Defendants.

20

21

22

23

24

25

26

27

28
                                   1
                 ─────────────────────────────────────
                 PLAINTIFF'S OPPOSITION TO MOTION TO DISMISS

# TABLE OF CONTENTS

**Page**

I.   INTRODUCTION ............................................... 1

II.  FACTS ...................................................... 2

    A.   Plaintiff's Video ........................................ 2

    B.   Plaintiff's Trademark Registrations And Use ................ 3

    C.   Defendants' Infringement ................................ 4

III. LEGAL STANDARD ........................................... 6

IV.  ARGUMENT ................................................ 7

    A.   Defendants' Infringement Is Not Fair Use ................... 8

        1.   Defendants Used Plaintiff's Marks As A Trademark ....... 8

            (a)   The Marks Were Used As Source Identifiers ........ 8

            (b)   Defendants Do Not Prominently Identify
                 Themselves ................................... 12

        2.   Defendants Do Not Use The Mark To Describe
           Their Goods ................................... 14

        3.   Defendants Used The Mark In Bad Faith .............. 16

        4.   Analysis Of The Fair Use Defense Is Premature .......... 17

    B.   Defendants Infringement Is Not Protected
       by the First Amendment ................................. 18

        1.   The First Amendment Is Not Implicated ............... 18

        2.   Even If The *Rogers* Test Applied, It Is Not Satisfied ...... 20

            (a)   Plaintiff's HBDGS Mark Is Not Artistically
                 Relevant To Defendants' Cards .................. 20

            (b)   Defendants' Use Of The HBDGS Mark Explicitly
                 Misleads As To The Source Or Content Of The
                 Cards ....................................... 21

        3.   At Minimum The First Amendment Defense Is Premature .. 23

E:\GORDON, CHRISTOPHER\1:wb> Carla DCI Studis (CRATE)\PLEADIn12\TOC.wp1

i

C.   Plaintiff's Claims For Federal Unfair Competition And False Designation Of Origin Are Pled Sufficiently .................. 24

D.   Plaintiff's California Common Law And Statutory Unfair Competition Claims Are Pled Sufficiently ..................... 25

IV.   CONCLUSION .......................................... 25

E:\SPADON, CHRISTOPHER-Tomato Cats DOI Studio (DRAFT)\PLEADINGS\TOC.wpd

# TABLE OF AUTHORITIES

**Page**

## CASES

*Aliya Medcare Fin., LLC v. Nickell*
  2015 WL 4163088 (C.D. Cal. 2015) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

*AMF Inc. v. Sleekcraft Boats*
  599 F.2d 341 (9th Cir. 1979) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11,16,23

*Architectural Mailboxes, LLC v. Epoch Design, LLC*
  2011 WL 1630809 (S.D. Cal. 2011) . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Arnold v. ABC, Inc.,*
  2007 WL 210330 (S.D.N.Y. 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*A. T. Cross Co. v. Jonathan Bradley Pens, Inc.*
  470 F.2d 689 (2d Cir. 1972) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Ashcroft v. Iqbal*
  556 U.S. 662 (2009) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Au-Tomotive Gold, Inc. v. Volkswagen of Am., Inc.*
  457 F.3d 1062 (9th Cir. 2006) . . . . . . . . . . . . . . . . . . . . . . 7,10,14,17

*Autodesk, Inc. v. Dassault Systemes SolidWorks Corp.*
  2008 WL 6742224 (N.D. Cal. 2008) . . . . . . . . . . . . . . . . . . . . . . 18,25

*Bank of the West v. Sup.Ct.*
  2 Cal.4th 1254 (1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

*Beer Nuts, Inc. v. Clover Club Foods Co.*
  805 F.2d 920 (10th Cir.1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Bell Atl. Corp. v. Twombly*
  550 U.S. 544 (2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Bell v. Harley Davidson Motor Co.*
  539 F.Supp.2d 1249 (S.D. Cal. 2008) . . . . . . . . . . . . . . . . . . . . . . . 15

*B & L Sales Associates v. H. Daroff & Sons, Inc.*
  421 F.2d 352 (2d Cir. 1970) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Brother Records, Inc. v. Jardine*
  318 F.3d 900 (9th Cir. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Brown v. Entm't Merchants Ass'n*
  131 S. Ct. 2729 (2011) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

*Brookfield Communications, Inc. v. West Coast Entertainment Corp.*
  174 F.3d 1036 (9th Cir. 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

K:\JOHCON, CHRISTOPHER\Tomato Carts DCI Studios (DRAFT)\PLEADINGS\TOC.wpd

iii

*Cardtoons, L.C. v. Major League Baseball Players Ass'n*
   95 F.3d 959 (10th Cir. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

*Central Hudson Gas & Elec. Corp. v. Public Serv. Comm'n of N.Y.*
   447 U.S. 557 (1980) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

*Champions Golf Club v. Champions Golf Club*
   78 F.3d 1111 (6th Cir. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

*Choice Hotels Int'l, Inc. v. Kusum Vali, Inc.*
   2012 WL 2838183 (S.D. Cal. 2012) . . . . . . . . . . . . . . . . . . . . . . . . . 24

*Church & Dwight Co. v. Mayer Labs., Inc.*
   2012 WL 1745592 (N.D. Cal. 2012) . . . . . . . . . . . . . . . . . . . . . . . 9,24

*Clamp Mfg. Co. v. Enco Mfg. Co.*
   870 F.2d 512 (9th Cir. 1989) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9,14

*Cosmetically Sealed Indus., Inc. v. Chesebrough-Pond's USA Co.*
   125 F.3d 28 (2d Cir. 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Dita, Inc. v. Mendez*
   2010 WL 5140855 (C.D. Cal. 2010) . . . . . . . . . . . . . 18,19,20,21,22,25

*Dr. Seuss Ents., L.P. v. Penguin Books USA, Inc.*
   109 F.3d 1394 (9th Cir. 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

*Dual–Deck Video Cassette Recorder Antitrust Litig.*
   11 F.3d 1460 (9th Cir.1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*Elec. Arts, Inc. v. Textron Inc.,*
   2012 WL 3042668 (N.D. Cal. 2012) . . . . . . . . . . . . . . . . . . . . . . . . 7,22

*Eminence Capital, LLC v. Aspeon, Inc.*
   316 F.3d 1048 (9th Cir. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

*E.S.S. Entm't 2000, Inc. v. Rock Star Videos, Inc.*
   547 F.3d 1095 (9th Cir. 2008) . . . . . . . . . . . . . . . . . . . . . . . . 18,21,22,23

*Facenda v. N.F.L. Films, Inc.*
   542 F.3d 1007 (3d Cir. 2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

*Fortune Dynamic, Inc. v. Victoria's Secret Stores Brand Mgmt., Inc.,*
   618 F.3d 1025 (9th Cir. 2010) . . . . . . . . . . 2,7,8,10,11,12,13,14,15,16,17

*Films of Distinction, Inc. v. Allegro Film Prods., Inc.*
   12 F.Supp.2d 1068 (C.D. Cal. 1998) . . . . . . . . . . . . . . . . . . . 8,9,10,17,18

*Gilligan v. Jamco Development Corp.*
   108 F.3d 246 (9th Cir. 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Golden Door, Inc. v. Odisho*
  437 F.Supp. 956 (N.D. Cal. 1977) . . . . . . . . . . . . . . . . . . . . . . . . . 24

*Int'l Kennel Club of Chicago, Inc. v. Mighty Star, Inc.*
  846 F.2d 1079 (7th Cir.1988) . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Jordache Enterprises, Inc. v. Hogg Wyld, Ltd.*
  828 F.2d 1482 (10th Cir. 1987) . . . . . . . . . . . . . . . . . . . . . . . 11,16

*Kelley Blue Book v. Car-Smarts, Inc.*
  802 F.Supp.278 (C.D. Cal. 1992) . . . . . . . . . . . . . . . . . . . . . . . 22

*Kendall-Jackson Winery, Ltd. v. E. & J. Gallo Winery*
  150 F.3d 1042 (9th Cir. 1998) . . . . . . . . . . . . . . . . . . . . . 9,10,11

*KP Permanent Make-Up, Inc. v. Lasting Impression I, Inc.*
  408 F.3d 596 (9th Cir. 2005) . . . . . . . . . . . . . . . . . . . . . 8,9,10,14

*Lindy Pen Co. v. Bic Pen Corp.*
  725 F.2d 1240 (9th Cir. 1984) . . . . . . . . . . . . . . . . . . . . . . . . . 15

*Marketquest Grp., Inc. v. BIC Corp.*
  2015 WL 1757766 (S.D. Cal. 2015) . . . . . . . . . . . . . . . . . . . . . 13

*Mattel, Inc. v. MCA Records, Inc.*
  296 F.3d 894 (9th Cir. 2002) . . . . . . . . . . . . . . . . . . . . . 18,19,21

*Mattel Inc. v. Walking Mountain Prod.*
  353 F.3d 792 (9th Cir. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . 20

*Mut. of Omaha Ins. Co. v. Novak*
  836 F.2d 397(8th Cir. 1987) . . . . . . . . . . . . . . . . . . . . . . . . . 18

*Naked Cowboy v. CBS*
  844 F.Supp.2d 510 (S.D.N.Y. 2012) . . . . . . . . . . . . . . . . . . . . . 15

*Novalogic, Inc. v. Activision Blizzard*
  41 F.Supp.3d 885 (C.D. Cal. 2013) . . . . . . . . . . . . . . . . . . . 19,22,23

*Parks v. LaFace Records*
  329 F.3d 437 (6th Cir. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . 23

*Playboy Enterprises, Inc. v. Netscape Communications Corp.*
  354 F.3d 1020 (9th Cir. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . 17

*powerlineman.com, LLC v. Kackson*
  2007 WL 3479562 (E.D. Cal. 2007) . . . . . . . . . . . . . . . . . . . . . 18

*Rebelution, LLC v. Perez*
  732 F.Supp.2d 883 (N.D. Cal. 2010) . . . . . . . . . . . . . . . . . . . . . 20

PLAINTIFFS OPPOSITION TO MOTION TO DISMISS

*Red Bull GmbH v. Matador Concepts, Inc.,*
    2006 WL 4749923 (C.D. Cal. 2006) . . . . . . . . . . . . . . . . . . . . . . . 2,10,11,16

*Rogers v. Grimaldi*
    875 F.2d 994 (2d Cir. 1989) . . . . . . . . . . . . . . . . . . . . . 18,19,20,21,22,23

*Roth Greeting Cards v. United Card Co.*
    429 F.2d 1106 (9th Cir. 1970) . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Sierra On-Line, Inc. v. Phoenix Software, Inc.*
    739 F.2d 1415 (9th Cir. 1984) . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*Solid 21, Inc. v. Breitling USA inc.*
    2011 WL 2938209 (C.D. Cal. 2011) . . . . . . . . . . . . . . . . . . . . . . . . 18

*SMC Promotions, Inc. v. SMC Promotions*
    355 F.Supp.2d 1127 (C.D. Cal. 2005) . . . . . . . . . . . . . . . . . . . 11,14,24

*Stewart Surfboards, Inc v. Disney Book Grp., LLC*
    2011 WL 12877019 (C.D. Cal. 2011) . . . . . . . . . . . . . . . . . . . . . . . 23

*Sunmark, Inc. v. Ocean Spray Cranberries, Inc.*
    64 F.3d 1055 (7th Cir. 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*Transgo, Inc. v. Ajac Transmission Parts Corp.*
    911 F.2d 363(9th Cir. 1990) . . . . . . . . . . . . . . . . . . . . . . . . . 11,22

*UGG Holdings, Inc. v. Severn,*
    2005 WL 5887187 (C.D. Cal. 2005) . . . . . . . . . . . . . . . . . . . . . . 16,17

*Value House v. Phillips Mercantile Co.*
    523 F.2d 424 (10th Cir. 1975) . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

*White v. Samsung Elecs. Am., Inc.*
    971 F.2d 1395 (9th Cir. 1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

*Wood v. Apodaca*
    375 F.Supp.2d 942 (N.D. Cal. 2005) . . . . . . . . . . . . . . . . . . . . . . . 25

*Yeager v. Cingular Wireless LLC*
    627 F.Supp.2d 1170 (E.D. Cal. 2008) . . . . . . . . . . . . . . . . . 6,14,18,23

*Zobmondo Entm't, LLC v. Falls Media, LLC,*
    602 F.3d 1108 (9th Cir. 2010) . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

## **STATUTES**

15 U.S.C. § 1115(b)(4) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

E:\GORDON, CHRISTOPHER\Tomato Cuisine DCG Studios\DRAFT\PLEADINGS\TOC.wpd

PLAINTIFFS OPPOSITION TO MOTION TO DISMISS

1

## OTHER AUTHORITIES

2

J. Thomas McCarthy, *McCarthy on Trademarks and Unfair Competition*
3§ 23:50 (4th ed.2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

K:\BURDEN, CHRISTOPHER\Timoto Carla DCI Studios \DRAKE\PLEADING12\TOC.wpd

28

PLAINTIFFS OPPOSITION TO MOTION TO DISMISS

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.    INTRODUCTION

Plaintiff Christopher Gordon is a comedic narrator who coined the popular phrases "Honey Badger Don't Care" ("HBDC Mark") and "Honey Badger Don't Give a Shit" ("HBDGS Mark") in his original video narration in which he humorously described the traits of a honey badger.  Plaintiff published his video on YouTube, it went "viral," and has since generated more than 76 million views.   Soon after publishing the video, Plaintiff began selling various goods bearing his HBDC Mark and HBDGS Mark, including greeting cards which bear Plaintiff's well known mark. Plaintiff owns four separate federal trademark registrations for the HBDC Mark, which, along with the HBDGS Mark, have gained a tremendous amount of notoriety and been referred to in commercials, television shows, magazines, and throughout the internet, and by numerous celebrities.

Defendants, knowing they could generate substantial profit by playing off Plaintiff's popular video and marks, produced and sold greeting cards that bore verbatim Plaintiff's HBDGS Mark and also constituted a confusingly similar use of Plaintiff's federally registered HBDC Mark.   Defendants' business decision to infringe Plaintiff's marks was nothing more than a clear attempt to steer customers their way and generate profit while creating consumer confusion as to the source and sponsorship of the greeting cards. In fact, although discovery has not been conducted yet, Plaintiff already has evidence of actual consumer confusion and alleges as much in the First Amended Complaint ("FAC"). Defendants' highly successful monetization off of Plaintiff's goodwill and intellectual property rights is actionable, and the motion to dismiss should be denied.

Defendants' infringement finds no protection under the fair use defense, and certainly not at the pleading stage. Defendants made a trademark use, not a fair one, of Plaintiff's marks; such use was not even descriptive of Defendants' birthday and holiday cards; and Defendants' use of Plaintiff's marks constitutes bad faith.

1    Defendants' cards are also not protected by the First Amendment, which does
2    not apply. Even if it applied, any protection is unavailable because Defendants' use
3    of Plaintiff's marks was both artistically irrelevant to the cards and also explicitly
4    misleading as to its source.

5    The Ninth Circuit has observed it "is axiomatic in trademark law that
6    'side-by-side' comparison is not the test" (*Fortune Dynamic, Inc. v. Victoria's Secret*
7    *Stores Brand Mgmt., Inc.*, 618 F.3d 1025, 1037 (9th Cir. 2010)), yet Defendants'
8    motion seeks to do just that, at the pleading stage no less. As this Court has observed,
9    trademark uses "must be compared in the light of what occurs in the marketplace, not
10   in the courtroom." *Red Bull GmbH v. Matador Concepts, Inc.*, 2006 WL 4749923,
11   at *7 (C.D. Cal. 2006). Plaintiff should be allowed to prove the likelihood of
12   confusion which occurred in the marketplace. Accordingly, the motion to dismiss
13   should be denied.

14   **II.   FACTS**

15   **A.   Plaintiff's Video**

16   Plaintiff is a comedian, narrator, writer, and actor, and is commonly known by
17   his alias, "Randall." (FAC, ¶9.) On January 18, 2011, Plaintiff published a video (the
18   "Video") on YouTube that consisted of his original narration humorously describing
19   the traits of a honey badger. The Video, titled *The Crazy Nastyass Honey Badger*
20   *(original narration by Randall)*, became an instant hit, went "viral" and is one of the
21   most popular videos ever uploaded onto YouTube. To date, the Video has generated
22   more than *76 million* views on YouTube. The Video and subsequent phenomenon
23   have been covered by internet blogs such as the *Huffington Post* (which proclaimed
24   "Honey Badger Don't Care [as] the best nature video of all time") as well as by
25   entertainment and news outlets from *Forbes* to the *New York Observer* to *TMZ*. (*Id.*
26   at ¶10.) In the Video, among Plaintiff's original expressions and jokes are that the
27   "Honey Badger Don't Care" and the "Honey Badger Don't Give a Shit." Specifically
28   regarding the latter phrase, Plaintiff recites it verbatim or similarly four different

2

times in the Video. (*Id.* at ¶11.)  Plaintiff's original expressions have gained a tremendous amount of notoriety and have been referred to in commercials, television shows, magazines, and throughout the internet. (*Id.*)

## B. Plaintiff's Trademark Registrations And Use

Plaintiff owns four federal trademark registrations of the HBDC Mark for various classes of goods including t-shirts, Christmas ornaments, talking dolls, mugs, audio books and video games. (*Id.* at ¶12; Ex. A [trademark registrations].) Initially the United States Patent and Trademark Office ("USPTO") rejected Plaintiff's trademark application on ornamental grounds, but after Plaintiff provided a detailed response, which included specimens of various goods he sold bearing the mark to demonstrate it was indeed a source identifier (*see* Ex. B to FAC [Plaintiff's Response to Office Action]), the USPTO reversed its initial decision and issued Plaintiff the trademark registrations. (FAC, ¶13.)

After the Video was published, Plaintiff produced and sold goods, including, *inter alia*, t-shirts, sweatshirts, bumper stickers, hats, mugs and plush dolls that displayed his marks and expressions.  Plaintiff has also selectively licensed his intellectual property rights to third parties in order to monetize the profitability of his marks. (*Id.* at ¶14.)

Specifically regarding the HBDGS Mark, in about February 2011, Plaintiff began using the mark as a source identifier on numerous products, including: men's t-shirts; women's t-shirts; women's tank tops; baby bodysuits; infant t-shirts; hats; coffee mugs; keychains; magnets; stickers; mugs; plates; aprons; buttons; mouse pads; and posters. (*Id.* at ¶15; Ex. C [certain authorized HBDGS products].)

Greeting cards and postcards are among the products that Plaintiff sells which display his HBDC Mark and HBDGS Mark. (*Id.* at ¶16; Ex. D [example of an authorized postcard bearing HBDGS Mark]; Ex. E [examples of authorized greeting cards bearing the HBDC Mark].) For instance, some of Plaintiff's authorized greeting

3

cards state, "Honey Badger Don't Care!!! About Christmas" and "Honey badger don't care about St. Patrick's Day." (Ex. E.)

Plaintiff's trademarks are distinctive and have acquired secondary meaning; they are instantly recognizable as being associated with Plaintiff (Randall). (FAC, ¶18.) The marks appeared in Plaintiff's viral Video, and have since been displayed on numerous advertisements and goods that Plaintiff promotes. Plaintiff even authored a book titled *Honey Badger Don't Care: Randall's Guide to Crazy Nastyass Animals*, and launched a mobile "app" titled *The Honey Badger Don't Care*. (*Id.*) Plaintiff and his marks have appeared or been alluded to in a *Wonderful Pistachios* commercial during *Dancing with the Stars*, in an episode of the popular television show *America's Got Talent*, in an episode of the hit television series *Glee* by the show's famous cheerleading coach Sue Sylvester (Jane Lynch), in a *Vogue* profile of celebrity recording artist Taylor Swift, and on the Howard Stern radio show. (*Id.* at ¶20.)

Additionally, Plaintiff has expended a significant amount of time and effort in making his marks well-known to the public, and has promoted the marks by, *inter alia*, advertising them in connection with his products, making guest appearances in media outlets, and publicizing the marks through social media platforms. (*Id.* at ¶19.) Plaintiff also advertises his goods on the internet, and sales of Plaintiff's merchandise have been substantial. (*Id.* at ¶17.) Based on the foregoing, including, but not limited to, the extensive advertisements, promotions, sales, and enormous popularity of the marks, the public has come to exclusively identify the marks with Plaintiff. (*Id.* at ¶20.)

## C.   Defendants' Infringement

Defendants are competitors of Plaintiff, as they also produce and sell greeting cards. (*Id.* at ¶21.) Defendants produced and sold greeting cards that bore Plaintiff's HBDGS Mark verbatim, derivations thereof, and marks confusingly similar to Plaintiff's HBDC Mark. For instance, Defendants sold multiple variations of greeting cards that stated "Honey Badger don't give a shit" and "HONEY BADGER DON'T

GIVE A SH*T" in clear reference to, and improper trading off of, Plaintiff's marks. (*Id.* at ¶22; Ex. F [some of Defendants' infringing greeting cards].) Defendants' usage of the HBDGS Mark was on the inside of the cards, the significant place every consumer looks when purchasing a greeting card, and, the HBDGS Mark was prominently displayed, generally in large, bold and capitalized letters, and not accompanied by any disclaimer whatsoever. (*See* Exs. 1-6 to Declaration of Aaron Siegel.) Instead, Defendants' marks were hidden on the back of the cards where consumers rarely, if ever, look. (*See id.*)

Defendants' greeting cards are confusingly similar to Plaintiff's authorized cards. For instance, some of Defendants' greeting cards state, "Halloween is Here. Honey Badger don't give a shit." and "It's Your Birthday! Honey Badger Don't Give A Sh*T." (*see* Ex. F to FAC), nearly identical to Plaintiff's authorized greeting cards. (Ex. E.)   Thus, Defendants created a likelihood of consumer confusion in the marketplace. (FAC, ¶¶22, 24.)

In fact, actual consumer confusion occurred, as Plaintiff received inquiries from his admirers who believed Defendants' cards were affiliated with Plaintiff. (FAC, ¶24.) Some examples of actual consumer confusion include one of Plaintiff's admirers "tweeting" he saw a line of Defendants' greeting cards and stating Defendants were "riding off your name", and another admirer who sent Plaintiff photocopies of Defendants' cards and said, "I hope you're getting royalties from this stuff." (*Id.*)   Further, another consumer purchased Defendants' cards, tweeted to Plaintiff a photo of Defendants' cards and stated, "@Randallsanimals look what we found" in belief the consumer had bought one of Plaintiff's authorized greeting cards. (*Id.*; Ex. G [tweet received by Plaintiff concerning Defendants' cards].)   However, Defendants' cards were not authorized by Plaintiff, though they misleadingly appeared to be. (FAC, ¶¶24-25.) Defendants' intentional and deceitful acts of unfair competition and use of Plaintiff's marks caused confusion and deception as to the

affiliation of Defendants with Plaintiff, and as to the origin, sponsorship, or approval of Defendants' goods by Plaintiff. (*Id.* at ¶25.)

Defendants' infringement was purposeful. Defendants began selling the infringing cards only after Plaintiff used his marks in commerce and the Video became popular, intending to capitalize off Plaintiff's marks, trample upon his intellectual property rights, and cause customer confusion in the process. (*Id.* at ¶¶22, 24.) Defendants' purpose in utilizing Plaintiff's marks was an attempt to benefit unfairly from the valuable goodwill and extreme popularity of the marks which were established at great expense and effort by Plaintiff. (*Id.* at ¶26.) Defendants' use of Plaintiff's marks was a purposeful endeavor to steer customers their way and confuse them as to the source of the cards, for commercial gain. (*Id.*) Worse yet, despite Plaintiff's written demand that Defendants cease and desist from selling the infringing cards, Defendants continued to sell the infringing cards in intentional disregard of Plaintiff's rights. (*Id.* at ¶27.)

In the end, Defendants' unlawful use of Plaintiff's marks and unfair competition enabled them to reap financial success, as Defendants produced and sold greeting cards in various formats, all with derivations of Plaintiff's marks. Defendants' sales of the infringing cards were substantial, as the cards were sold in numerous retail stores throughout the country, resulting in an unlawful monetization off Plaintiff's goodwill and intellectual property rights. (*Id.* at ¶¶23, 26.)

## III.  LEGAL STANDARD

On a motion to dismiss, the complaint's allegations must be accepted as true. *Yeager v. Cingular Wireless LLC*, 627 F.Supp.2d 1170, 1174 (E.D. Cal. 2008). Because the court is "bound to give plaintiff the benefit of every reasonable inference to be drawn from the 'well-pleaded' allegations of the complaint" the plaintiff "need not necessarily plead a particular fact if that fact is a reasonable inference from facts properly alleged." *Id.* at 1174 (citation omitted). The issue on a motion to dismiss is not whether the claimant will ultimately prevail but whether he is entitled to offer

evidence to support the claims asserted. *Gilligan v. Jamco Development Corp.*, 108 F.3d 246, 249 (9th Cir. 1997). A complaint must meet a standard of "plausibility" (*Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 564 (2007)) which is satisfied when "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (plausibility is not akin to probability but instead requires "more than a sheer possibility that a defendant has acted unlawfully"). The plausibility standard is met here.[1]

## IV.  ARGUMENT

The main role of trademark law is to ensure that consumers are able to identify the source of goods. *Au-Tomotive Gold, Inc. v. Volkswagen of Am., Inc.*, 457 F.3d 1062, 1067 (9th Cir. 2006). Protecting the source-identifying role assures consumers, quickly and easily, that "*this* item—the item with the mark—is made by the same producer as other similarly marked products." *Id.* (emphasis in original). Additionally, "the law helps assure a producer that it (and not an imitating competitor) will reap the financial, reputation-related rewards associated with a desirable product." *Id.*; *see also Fortune Dynamic*, 618 F.3d at 1030. Here, consumers were likely to believe and actually believed that Defendants' greeting cards were affiliated with Plaintiff, and Defendants reaped profits by using Plaintiff's marks. Allowing Defendants to escape liability would run afoul of the purpose of trademark law. Plaintiff's claims are well pled, and Defendants' defenses are without merit, or premature at best.

---

[1] While the Court may consider Defendants' greeting cards on the motion to dismiss, Plaintiff objects to any consideration of the content from the Declaration of Aaron Siegel. *See Elec. Arts, Inc. v. Textron Inc.*, 2012 WL 3042668, at *3 (N.D. Cal. 2012) (court considers on motion to dismiss defendant's allegedly infringing game packaging, but refuses to consider contents of declaration).

### A.   Defendants' Infringement Is Not Fair Use

The Lanham Act provides a defense to trademark infringement where the defendant uses the term "otherwise than as a mark" and "fairly and in good faith only to describe the goods or services of the defendant." *Films of Distinction, Inc. v. Allegro Film Prods., Inc.*, 12 F.Supp.2d 1068, 1075 (C.D. Cal. 1998) (citing 15 U.S.C. § 1115(b)(4)) (denying motion to dismiss on fair use grounds).  To establish a classic fair use defense, a defendant must prove: (1) its use of the term is not as a trademark; (2) it uses the term only to describe its goods or services; and (3) it uses the term fairly and in good faith.  *See Fortune Dynamic*, 618 F.3d at 1039-1043 (finding genuine issue of fact existed on fair use defense).  The fair use defense is not without limitation, and the extent of any customer confusion is relevant to the determination of the fairness of the use. *See KP Permanent Make-Up, Inc. v. Lasting Impression I, Inc.*, 408 F.3d 596, 607-09 (9th Cir. 2005).  Additionally, the fair use defense only applies "where the use of the trademark does not attempt to capitalize on consumer confusion or to appropriate the cachet of one product for a different one." *Films of Distinction*, 12 F.Supp.2d at 1076 (quotation and citation omitted).

### 1.   Defendants Used Plaintiff's Marks As A Trademark

To determine if a term was being used as a trademark, courts look for indications whether (a) the term was used as a source identifier, including whether it was used to attract public attention which may be demonstrated by the lettering, type style, size and visual placement and prominence of the challenged words, and (b) the infringing user undertook precautionary measures such as labeling to minimize the risk that the term will be understood in its trademark sense. *Fortune Dynamic*, 618 F.3d at 1040.

### (a)   The Marks Were Used As Source Identifiers

The critical point, which is alleged sufficiently in the FAC and will be proven at trial upon consideration of the evidence, is that Plaintiff's marks serve a source identifying function, and consumers were likely to be confused as to the source and

sponsorship of Defendants' greeting cards.  Given the high degree of consumer confusion here, the fair use defense is negated.

To begin with, Plaintiff's federal registration of his HBDC Mark "provides prima facie evidence of the mark's validity and entitles [Plaintiff] to a strong presumption that the mark is a protectable mark." *Zobmondo Entm't, LLC v. Falls Media, LLC*, 602 F.3d 1108, 1113-14 (9th Cir. 2010) (citations omitted).  In addition, because the USPTO initially denied Plaintiff's federal registration but then approved it after he established the HBDC Mark had secondary meaning (*see* FAC at ¶13 and Ex. B), Plaintiff is entitled to a *presumption* of secondary meaning.  *See Zobmondo Entm't*, 602 F.3d at 1114 n. 7, 1120; *accord, Church & Dwight Co. v. Mayer Labs., Inc.*, 2012 WL 1745592, at *1 (N.D. Cal. 2012) (holding a "specific presumption of secondary meaning" arose where the USPTO initially refused trademark application on descriptive grounds but then issued a registration after considering applicant's supplemental evidence of secondary meaning).[2]

Defendants' greeting cards not only infringe the unregistered HBDGS Mark, but also infringe the HBDC Mark.  The law is clear that a registered mark may be infringed even if it is not exactly imitated.  *See KP Permanent*, 408 F.3d at 606.  "Confusing similarity may exist if the two terms convey the same idea or meaning." *Clamp Mfg. Co. v. Enco Mfg. Co.*, 870 F.2d 512, 518 (9th Cir. 1989) (holding plaintiff's registered mark "kant-twist" was infringed by defendant's use of the term "no-twist"); *see also Beer Nuts, Inc. v. Clover Club Foods Co.*, 805 F.2d 920, 925 (10th Cir. 1986) ("beer nuts" infringed by "brew nuts").  Defendants in effect concede that confusing similarity exists as they argue the HBDGS Mark conveys the same idea

---

[2]  The HBDGS Mark is protectable because it has acquired distinctiveness through secondary meaning (*Kendall-Jackson Winery, Ltd. v. E. & J. Gallo Winery*, 150 F.3d 1042, 1047 & n.7 (9th Cir. 1998)), which is a factual issue that should not be resolved on a motion to dismiss.  *Films of Distinction*, 12 F.Supp.2d at 1075.

as the HBDC Mark. (Motion, 12:15-21 [arguing the phrase "don't give a shit" is derived from "don't care"]).[3]

Defendants' use of Plaintiff's marks was unlawful and not fair use because a high degree of consumer confusion is alleged, and will be proven. While the Supreme Court in *KP Permanent Make-Up, Inc. v. Lasting Impression I, Inc.*, 543 U.S. 111 (2004) held a defendant asserting the fair use defense need not entirely negate likelihood of confusion, the Court noted its holding did not "foreclose the relevance of the extent of any likely consumer confusion in assessing whether a defendant's use is objectively fair." *Id.* at 123. On remand, the Ninth Circuit confronted that issue and concluded the "fair use defense only comes into play once the party alleging infringement has shown by a preponderance of the evidence that confusion is likely" and held "the degree of customer confusion remains a factor in evaluating fair use." *KP Permanent*, 408 F.3d at 608-09 (citations omitted).

As summarized above, the FAC alleges sufficient facts to demonstrate a high likelihood of confusion, including how Defendants' use of the HBDGS Mark was a verbatim copy of the phrase Plaintiff uses both in his viral Video and as a mark on numerous products, and also confusingly similar to the federally registered HBDC Mark. A likelihood of confusion is alleged and will be proven because customers viewing the HBDGS Mark on Defendants' greeting cards would "probably assume" that it was associated with Plaintiff. *Au-Tomotive Gold*, 457 F.3d at 1075-76; *see also Red Bull GmbH*, 2006 WL 4749923, at *6. Accordingly, Defendants' motion to dismiss on fair use grounds should be denied. *Films of Distinction*, 12 F.Supp.2d at 1076 (denying motion to dismiss on fair use grounds and noting it "applies only where the defendants' use 'does not lead to customer confusion as to the source of the

---

[3] While the classification of Plaintiff's marks is not pertinent in the fair use defense analysis (*Fortune Dynamic*, 618 F.3d at 1039), the HBDC Mark and HBDGS Mark are not descriptive because they do not "define qualities or characteristics *of a product* in a straightforward way that requires no exercise of the imagination to be understood." *Kendall-Jackson Winery*, 150 F.3d at 1047 n.8 (emphasis added).

goods or services'") (quoting *Transgo, Inc. v. Ajac Transmission Parts Corp.*, 911 F.2d 363, 366 n.2 (9th Cir. 1990).

Plaintiff also alleges that actual confusion in the marketplace existed.  (*See* FAC, ¶24; Ex. G.)  Actual confusion is probative as to whether a defendant has used a term descriptively or as a trademark.  *See Fortune Dynamic*, 618 F.3d at 1032 (observing possibility of post-purchase confusion may establish likelihood of confusion, holding it was "at least plausible" that knowledgeable consumers who saw defendant-Victoria's Secret "Delicious" tank tops outside its stores could be confused as to who produced the tank top).

In addition, it is also significant that (1) Defendants *intentionally copied* Plaintiff's HBDGS Mark because such evidence is "entitled to great weight" as a defendant is "presumed able to accomplish this purpose" (*Kendall-Jackson Winery*, 150 F.3d at 1048), and (2) Defendants' greeting cards compete with, and are nearly identical to, Plaintiff's cards because where "the goods produced by the alleged infringer compete for sales with those of the trademark owner, infringement usually will be found if the marks are sufficiently similar that confusion can be expected." *Red Bull GmbH*, 2006 WL 4749923, at *7 (quoting *AMF Inc. v. Sleekcraft Boats*, 599 F.2d 341, 348 (9th Cir. 1979)).

Contrary to Defendants' argument, they cannot avoid liability even if descriptive matter was added to their cards.  "A subsequent user may not avoid likely confusion by appropriating another's entire mark and adding descriptive or non-distinctive matter to it."  *SMC Promotions, Inc. v. SMC Promotions*, 355 F.Supp.2d 1127, 1135-36 (C.D. Cal. 2005) (quoting 3 J. Thomas McCarthy, *McCarthy on Trademarks and Unfair Competition* § 23:50 (4th ed.2004)).  Despite Defendants' purported attempt to add descriptive matter to the cards, the cards are too similar to Plaintiff's.  *See Red Bull GmbH*, 2006 WL 4749923, at *9 (finding defendant's use of plaintiff's mark was not "different enough" to produce its desired effect); *Jordache Enterprises, Inc. v. Hogg Wyld, Ltd.*, 828 F.2d 1482, 1486 (10th Cir.

1987) ("where two marks are confusingly similar, or where there is evidence of actual confusion, a likelihood of confusion can exist despite the intent to create a parody"); *cf. Roth Greeting Cards v. United Card Co.*, 429 F.2d 1106, 1110 (9th Cir. 1970) (finding copyright infringement where "in total concept and feel the cards of [defendant] are the same as the copyrighted cards of [plaintiff]").

Defendants' use of the HBDGS Mark was indeed attention-getting.  The HBDGS Mark was prominently displayed, in large, bold and capitalized letters. (*See* Exs. 1-6 to Siegel Decl.)  Defendants also did not place any disclaimer next to the prominent HBDGS Mark. (*Id.*)  Defendants' argument that their use of the HBDGS Mark was not positioned to attract attention because it was on the *inside* of the card is disingenuous; *nobody* buys greeting cards without reading the *inside* of the card. The inside of the card is the significant place every consumer looks when purchasing a greeting card.  It should be left for a reasonable jury to conclude whether Defendants used the mark to attract public attention. *See Fortune Dynamic*, 618 F.3d at 1040 (holding reasonable jury could conclude Victoria's Secret was using plaintiff's "Delicious" mark as a trademark where it was written in large letters with a capital "D").

### (b)   Defendants Do Not Prominently Identify Themselves

Defendants do not prominently identify themselves solely by placing their marks on the *back* of the greeting cards. A consumer rarely, if ever, looks on the back of the greeting card. While the store clerk may do so when scanning the bar code, the reasonable consumer does not care about the ten digit bar code hidden on the back of the card. Also, Defendants' marks on the back of the cards are in much smaller font size than the HBDGS Mark, which, unlike Defendants' marks, grabs the consumer's attention. The only mark consumers come face-to-face with is the HBDGS Mark, not Defendants' marks buried on the back of the card.  If Defendants' marks were prominent, Plaintiff would not have received inquiries from his fans believing the cards were his own. Here, as in *Fortune Dynamic* where Victoria's Secret included

its marks on the *back* of tank tops and on the *back* collars, a jury could reasonably conclude that Defendants failed to take sufficient precautionary measures and their "hard-to-find words" on the back of the cards "did not detract from the overall message broadcast loudly" in the cards that bore the HBDGS Mark. *Fortune Dynamic*, 618 F.3d at 1040, 1042.

*Fortune Dynamic* distinguished Defendants' authorities, *Cosmetically Sealed Indus., Inc. v. Chesebrough-Pond's USA Co.*, 125 F.3d 28 (2d Cir. 1997) and *B & L Sales Associates v. H. Daroff & Sons, Inc.*, 421 F.2d 352 (2d Cir. 1970), cases where defendants' trademarks were prominently displayed. *Cosmetically Sealed*, 125 F.3d at 29-30 (defendant's mark appeared in the center of the display in red block letters, at least twice the size of the lettering for plaintiff's mark); *B & L Sales Associates*, 421 F.2d at 353 (directly below plaintiff's mark was defendant's mark which was readily visible in block-type print).   In *Fortune Dynamic*, by contrast, plaintiff's mark "Delicious" appeared all by itself on Victoria's Secret tank top, and thus the Court held a jury could reasonably conclude Victoria's Secret "should have been more careful about indicating [it] as the source." *Fortune Dynamic*, 618 F.3d at 1042. Here too, on most of Defendants' cards Plaintiff's HBDGS Mark appears all by itself, and Defendants should have been more careful.

Defendants' other authorities actually highlight the lack of prominent labeling here.  In *Arnold v. ABC, Inc.*, 2007 WL 210330, at *3 (S.D.N.Y. 2007), defendant ABC prominently displayed, on both its advertisements and website, the identity of its *Boston Legal* show, that ABC was the show's source, its famous trademark, and large photos of the show's three stars.  In *Architectural Mailboxes, LLC v. Epoch Design, LLC*, 2011 WL 1630809, at *3 (S.D. Cal. 2011), defendant drew a "clear distinction" between its products and those of plaintiff where defendant's website clearly identified plaintiff as the manufacturer of its *Oasis Jr.* mailbox and went so far to state the *Oasis* mark was registered by plaintiff.  In *Marketquest Grp., Inc. v. BIC Corp.*, 2015 WL 1757766, at *5 (S.D. Cal. 2015), the defendant "did everything

possible, short of an explicit disclaimer, to mitigate the risk of confusion" by both prominently printing its registered mark in every location including next to plaintiff's phrase and also explaining the phrase's context.  Defendants did none of that here. The only thing Defendants did was bury their mark on the back of the card.

In addition, because Defendants copied verbatim the HBDGS Mark, their precautionary measure argument is discredited.  *See Au-Tomotive Gold*, 457 F.3d at 1077 (observing courts have been "justifiably skeptical" of alleged disclaimers on packaging "particularly when exact copying is involved") (citing, *inter alia, Int'l Kennel Club of Chicago, Inc. v. Mighty Star, Inc.*, 846 F.2d 1079, 1093 (7th Cir.1988) ["[W]here the infringement in issue is a verbatim copying...plaintiff's reputation and goodwill should not be rendered forever dependent on the effectiveness of fineprint disclaimers often ignored by consumers."]); *Clamp Mfg. Co.*, 870 F.2d at 518 (holding although defendant put its trade name on the product that confusion existed in light of exact copying); *cf. SMC Promotions*, 355 F.Supp.2d at 1136 (holding defendant's use of such confusingly similar marks to plaintiffs' created initial interest confusion, regardless of disclaimer that defendant was not endorsed by plaintiffs).[4]

Because Defendants' use of the HBDGS Mark had a source-identifying or reputation-related function their use was indeed a trademark use.  At minimum, the question of trademark use is factual and should not be resolved on a motion to dismiss. *See Yeager*, 627 F.Supp.2d at 1178; *Fortune Dynamic*, 618 F.3d at 1040-41.

### 2.    Defendants Do Not Use The Mark To Describe Their Goods

The fair use defense is also inapplicable because Defendants do not use the HBDGS Mark to describe the attributes of their greeting cards.  The use of a mark is descriptive when it refers to a characteristic of the product itself.  *See Brother Records, Inc. v. Jardine*, 318 F.3d 900, 906 n.2 (9th Cir. 2003) (noting case example

---

[4] Even with Defendants' marks on the back of the cards, consumers could think, incorrectly, the cards were authorized or licensed by Plaintiff, thus aggravating consumer confusion. *See, e.g., A. T. Cross Co. v. Jonathan Bradley Pens, Inc.*, 470 F.2d 689, 692 (2d Cir. 1972).

in which candy manufacturer was free to use "Sweet" mark to advertise its candies even though car manufacturer had rights to mark for cars); *Sunmark, Inc. v. Ocean Spray Cranberries, Inc.*, 64 F.3d 1055, 1058-59 (7th Cir. 1995) (cranberry juice maker could use "sweet-tart" to describe its juice over objection of owner of "sweetarts" candy). Defendants must establish they used the HBDGS Mark in its "primary, descriptive sense or primary descriptive meaning." *Fortune Dynamic*, 618 F.3d at 1041.

Here, however, Defendants do not use the HBDGS Mark to describe a quality of the greeting cards. For instance, if Defendants used the mark "funny" on their cards, such use would be descriptive even if the mark was owned by a company that produced eyeglasses. But here, the HBDGS Mark neither describes a feature of a greeting card nor does it even describe the topic of Defendants' cards, i.e., the mark does not describe attributes of a birthday or holiday. Because the phrase "Honey Badger Don't Give a Shit" has nothing to do with product features of Defendants' greeting cards the fair use defense is inapplicable, or at least unresolvable at this stage of the litigation. *See Fortune Dynamic*, 618 F.3d at 1041-43 (finding genuine factual issue whether Victoria's Secret used the word "Delicious" only to describe its flavorful lip gloss); *Lindy Pen Co. v. Bic Pen Corp.*, 725 F.2d 1240, 1248 (9th Cir. 1984) (defendant Bic did not make mere descriptive use of mark "Auditor's fine point" because it did not describe size of Bic's pen).[5]

Moreover, Defendants did not use the HBDGS Mark descriptively because there were many other words available to do the purported describing. The scope of

---

[5] Because Defendants do not use the HBDGS Mark to describe an attribute of their greeting cards, Defendants' authorities are inapposite. *See In re Dual–Deck Video Cassette Recorder Antitrust Litig.*, 11 F.3d 1460, 1462, 1467 (9th Cir.1993) (defendant used "VCR–2" mark to describe its own products to which a second VCR could be attached); *Bell v. Harley Davidson Motor Co.*, 539 F.Supp.2d 1249, 1258 (S.D. Cal. 2008) (defendant used "Ride Hard" mark to describe its motorcycle); *Naked Cowboy v. CBS*, 844 F.Supp.2d 510, 515-16 (S.D.N.Y. 2012) (defendant used "Naked Cowboy" mark in title of video to describe its topic).

the fair use defense varies with the "descriptive purity" of defendant's use and "whether there are other words available to do the describing." *Fortune Dynamic*, 618 F.3d at 1041. There, the Court reasoned there was "little doubt that Victoria's Secret had at its disposal a number of alternative words that could adequately capture its goal of providing a 'playful self-descriptor' on the front of its tank top" which suggests its use was "more suggestive than descriptive." *Id.* at 1042. The abundance of alternative words meant that "restricting Victoria's Secret's use of 'Delicious' does not implicate the same concerns regarding the monopolization of the lexicon that lie at the heart of the fair use defense." *Id.* at 1042-43. The same reasoning applies here. Defendants had at their disposal a number of alternative words that could have captured its goal, i.e., "Halloween is Here. Who cares," but instead Defendants chose to use the HBDGS Mark made famous and used by Plaintiff. Defendants used the HBDGS Mark to generate profit off Plaintiff's famous marks and Video. Defendants' use does not have any "descriptive purity" as there was an abundance of other available words to do the describing.

### 3. Defendants Used The Mark In Bad Faith

Defendants' bad faith use of the HBDGS Mark is alleged sufficiently to justify denial of the motion to dismiss. Defendants used the HBDGS Mark with full knowledge that Plaintiff: first used it in his viral Video; coined the phrase; made it popular; and used it on goods. Defendants sought to conflate their greeting cards with Plaintiff's well known marks and Video, which generated millions of views, and *knowingly* used Plaintiff's HBDGS Mark to monetize off Plaintiff's creativity and marks. Courts have held that such knowledge may eviscerate purported good faith use. *See, e.g., Red Bull GmbH*, 2006 WL 4749923, at *9 ("When the alleged infringer knowingly adopts a mark similar to another's, reviewing courts presume that the defendant can accomplish his purpose: that is, that the public will be deceived.") (quoting *Sleekcraft*, 599 F.2d at 354); *UGG Holdings, Inc. v. Severn*, 2005 WL 5887187, at *8 (C.D. Cal. 2005) (same); *see also Jordache Enterprises*, 828 F.2d at

1486 ("Given the unlimited number of possible names and symbols that could serve as a trademark, it is understandable that a court generally presumes one who chooses a mark similar to an existing mark intends to confuse the public."). Accordingly, the motion to dismiss should be denied on these grounds alone. *See Films of Distinction*, 12 F.Supp.2d at 1076 ("Plaintiff's allegation that defendants' use intentionally creates a likelihood of confusion...precludes resolution on a motion to dismiss....[because] if defendants intentionally used plaintiff's mark to create confusion, the good faith requirement for fair use is not satisfied").

Further, Defendants' continued sales of the infringing cards even after receiving a cease and desist demand (FAC, ¶27) constitutes bad faith. *See UGG Holdings, Inc.*, 2005 WL 5887187, at *8.

At minimum, Defendants' purported "good faith is in issue" because their decision to use Plaintiff's HBDGS Mark "when other phrases were available could indicate an intent to trade on [Plaintiff's] good will" and reputation. *Sierra On-Line, Inc. v. Phoenix Software, Inc.*, 739 F.2d 1415, 1423 (9th Cir. 1984).

### 4.   Analysis Of The Fair Use Defense Is Premature

Based on the alleged facts in the FAC, and without an evidentiary record, the fair use defense is premature at best.   Indeed, the Ninth Circuit has observed frequently that the issue of likelihood of confusion is "often a fact-intensive inquiry" and courts are "generally reluctant" to decide the issue even at the summary judgment stage. *Au-Tomotive Gold*, 457 F.3d at 1075.   Analysis of the fair use defense is particularly premature at this stage of the litigation given its factual nature. *See Fortune Dynamic*, 618 F.3d at 1031; *KP Permanent*, 408 F.3d at 609; *Playboy Enterprises, Inc. v. Netscape Communications Corp.*, 354 F.3d 1020, 1029 (9th Cir. 2000) (reversing summary judgment because a jury was better positioned to make fair use determination).   Accordingly, the motion to dismiss on fair use grounds should

be denied. *See Yeager*, 627 F.Supp.2d at 1177-78 (denying motion to dismiss because application of fair use defense was premature).[6]

## B.   Defendants' Infringement Is Not Protected by the First Amendment

The First Amendment does not automatically insulate all artistic works from liability under the Lanham Act. *Dita, Inc. v. Mendez*, 2010 WL 5140855, at *2 (C.D. Cal. 2010). The Ninth Circuit observes the First Amendment offers little protection for a competitor who uses a confusingly similar mark on its commercial goods. *Mattel, Inc. v. MCA Records, Inc.*, 296 F.3d 894, 900 (9th Cir. 2002). In other words, the First Amendment does not give Defendants "license to infringe" Plaintiff's trademark rights. *Mut. of Omaha Ins. Co. v. Novak*, 836 F.2d 397, 402 (8th Cir. 1987).

In *Rogers v. Grimaldi*, 875 F.2d 994 (2d Cir. 1989), the Second Circuit stated the Lanham Act "[s]hould be construed to apply to artistic works only where the public interest in avoiding consumer confusion outweighs the public interest in free expression." *Id.* at 999. Under the two part *Rogers* test, which has been adopted by the Ninth Circuit in certain limited circumstances, an artistic work's use of a trademark is not actionable unless (1) the use of the mark has no artistic relevance to the underlying work or (2) it has some artistic relevance, but explicitly misleads as to the source or the content of the work. *E.S.S. Entm't 2000, Inc. v. Rock Star Videos, Inc.*, 547 F.3d 1095, 1100 (9th Cir. 2008). Here, the First Amendment is not even implicated, and even if it was, the *Rogers* test is not satisfied.

### 1.   The First Amendment Is Not Implicated

Defendants' greeting cards are not protected by the First Amendment and thus the *Rogers* test is not implicated for the following independent reasons.

---

[6] Courts routinely hold the fair use defense is premature on a motion to dismiss. *See Films of Distinction*, 12 F.Supp.2d at 1077; *Autodesk, Inc. v. Dassault Systemes SolidWorks Corp.*, 2008 WL 6742224, at *5 (N.D. Cal. 2008); *powerlineman.com, LLC v. Kackson*, 2007 WL 3479562, at *4 (E.D. Cal. 2007); *cf. Solid 21, Inc. v. Breitling USA inc.*, 2011 WL 2938209, at *7 (C.D. Cal. 2011).

First, because Defendants' greeting cards are not expressive speech on par with plays, films, and books the *Rogers* test is inapplicable. The Ninth Circuit adopted the *Rogers* test for deciding whether the First Amendment protects expressive works against Lanham Act claims. *See MCA Records, Inc.*, 296 F.3d at 900. Unlike protected books, plays, movies or video games, Defendants' cards do not communicate ideas or social messages through familiar literary devices such as characters, dialogue, plot, and music. *See Brown v. Entm't Merchants Ass'n*, 131 S. Ct. 2729, 2733, (2011); *Novalogic, Inc. v. Activision Blizzard*, 41 F.Supp.3d 885, 898 (C.D. Cal. 2013). Instead, the greeting cards are commercial speech that merely propose a transaction, so the *Rogers* test is not implicated. *See Facenda v. N.F.L. Films, Inc.*, 542 F.3d 1007, 1017-18 (3d Cir. 2008).[7]

Second, because commercial speech that misleads consumers is unprotected by the First Amendment (*see Central Hudson Gas & Elec. Corp. v. Public Serv. Comm'n of N.Y.*, 447 U.S. 557, 566 (1980)), the First Amendment does not apply. (*See* FAC, ¶¶22-27 [Defendants' greeting cards misled consumers and were designed to create consumer confusion, which occurred].)

Third, because Defendants did *not* use the HBDGS Mark to describe or comment upon *Plaintiff's* mark or products, but instead used the mark merely to promote *Defendants'* own greeting cards, the First Amendment is not implicated. *Dita, Inc.*, 2010 WL 5140855, at *2 (denying motion to dismiss brought on First

---

[7] Defendants' greeting cards are unlike the "parody trading [baseball] cards" at issue in *Cardtoons, L.C. v. Major League Baseball Players Ass'n*, 95 F.3d 959 (10th Cir. 1996), where the court found the First Amendment applied because the cards "provide social commentary on public figures, major league baseball players" and thus held "this type of commentary on an important social institution constitutes protected expression." *Id.* at 969. Defendants' greeting cards are not providing social commentary on public figures and do not qualify as protected speech. *See White v. Samsung Elecs. Am., Inc.*, 971 F.2d 1395, 1401 (9th Cir. 1992) (finding defendants' advertisement spoof of Vanna White and Wheel of Fortune was only tangentially related to the ad's primary message to buy defendants' product).

Amendment grounds, summarizing applicable decisions including Ninth Circuit law in which courts held First Amendment barred trademark liability only where "defendant used a trademarked term to describe or comment upon the *plaintiff's* mark or product—not merely to promote its own product," holding the First Amendment did not apply because "nothing in the Complaint indicates that Defendant is using [plaintiff's] 'DITA' mark so as to comment on either Plaintiff's use of the mark or upon any of Plaintiff's products") (emphasis in original); *see also Dr. Seuss Ents., L.P. v. Penguin Books USA, Inc.*, 109 F.3d 1394, 1400-01 (9th Cir. 1997).

Fourth, because there is no evidentiary proof that Plaintiff's HBDGS Mark is of "such cultural significance that it has become an integral part of the public's vocabulary" the *Rogers* test is inapplicable. *Rebelution, LLC v. Perez*, 732 F.Supp.2d 883, 887 (N.D. Cal. 2010); *see also MCA Records, Inc.*, 296 F.3d at 900 (First Amendment issue arises when trademarks "transcend their identifying purpose" and "enter our public discourse and become an integral part of our vocabulary"); *Mattel Inc. v. Walking Mountain Prod.*, 353 F.3d 792, 807 (9th Cir. 2003) ("As we recently recognized in *MCA*, however, when marks 'transcend their identifying purpose' and 'enter public discourse and become an integral part of our vocabulary,' they 'assume a role outside the bounds of trademark law.' Where a mark assumes such cultural significance, First Amendment protections come into play."); *accord*, *Dita, Inc.*, 2010 WL 5140855, at *2.

For the above reasons, neither the First Amendment nor the *Rogers* test apply.

## 2. **Even If The *Rogers* Test Applied, It Is Not Satisfied**

### (a) **Plaintiff's HBDGS Mark Is Not Artistically Relevant To Defendants' Cards**

Defendants' use of Plaintiff's HBDGS Mark has no artistic relevance to their greeting cards. Under the artistic relevance prong, a defendant must not have arbitrarily chosen to use another's trademark just to exploit its publicity value.

PLAINTIFF'S OPPOSITION TO MOTION TO DISMISS

*Rogers*, 875 F.2d at 1001.  Rather, the use of the trademark must "have genuine relevance" to the work.  *Id.*

Plaintiff alleges that Defendants' use of the HBDGS Mark was not an expressive use, but instead a use that simply sought to capitalize on the fame and goodwill of Plaintiff's Video, persona, HBDC Mark and HBDGS Mark.  That allegation must be accepted as true, and indeed it will be proven.  As stated above, Defendants had an abundance of phrases to use in their greeting cards but chose to use the HBDGS Mark just to grab attention and sell lots of cards.  In other words, Defendants chose to use Plaintiff's marks to exploit its publicity value, and such use lacks genuine relevance to the greeting cards.[8]

> **(b)  Defendants' Use Of The HBDGS Mark Explicitly Misleads As To The Source Or Content Of The Cards**

The explicitly misleading prong of the test "points directly at the purpose of trademark law, namely to avoid confusion in the marketplace by allowing a trademark owner to prevent others from duping consumers into buying a product they mistakenly believe is sponsored by the trademark owner."  *E.S.S. Entm't 2000, Inc.*, 547 F.3d at 1100 (quotation and citation omitted).  The "relevant question" is whether Defendants' greeting cards would confuse customers into thinking Plaintiff was affiliated with, or sponsored, Defendants' cards.  *Id.*

---

[8] This case is completely dissimilar from those in which artistic relevance was found.  *See E.S.S. Entm't 2000, Inc.*, 547 F.3d at 1100 (finding defendant-video game creator's use of plaintiff-strip club owner's mark was artistically relevant to defendant's goal to develop a cartoon-style parody of East Los Angeles, noting "[p]ossibly the only way...to do that is to recreate a critical mass of the businesses and buildings that constitute it"); *MCA Records, Inc.*, 296 F.3d at 902 (holding defendant's use of *Barbie* in song title was relevant to the song itself because it was about *Barbie* and the values she represents).  Here by contrast, Defendants' greeting cards are designed for holidays and birthdays, and the HBDGS Mark was not relevant to a holiday and birthday message.  Defendants could have used an abundance of phrases to create holiday and birthday messages, but chose to copy Plaintiff's HBDGS Mark instead to boost sales.

Here, the second prong of the *Rogers* test is negated because Plaintiff alleges that Defendants' use of his marks was likely to cause consumer confusion, that Defendants actually intended to mislead the public as to the source of the cards, and actual confusion occurred as consumers were misled by Defendants into believing that Plaintiff was the source of, or affiliated with, the greeting cards. Defendants did not merely use Plaintiff's marks, but the main selling point of the cards was the HBDGS Mark. Plaintiff's allegations are sufficient to negate the second prong of the *Rogers* test. *See Dita, Inc.*, 2010 WL 5140855, at *3 (denying motion to dismiss, holding second prong of *Rogers* test was expressly negated by plaintiff's allegations that defendant's use of the mark was likely to cause consumer confusion and defendant intended to mislead public as to source of the work); *Elec. Arts, Inc.*, 2012 WL 3042668, at *3-5 (finding second prong of *Rogers* test negated on motion to dismiss because likelihood of confusion was alleged and consumers could "plausibly think" plaintiff sponsored defendant's video game); *see also Transgo, Inc.*, 768 F.2d at 1022 (concluding First Amendment defense lacked merit where defendant's use of terms was misleading); *Kelley Blue Book v. Car-Smarts, Inc.*, 802 F.Supp.278, 291 (C.D. Cal. 1992) (First Amendment defense lacked merit where defendants' use was misleading and likely to cause confusion).

Further, the fact that Plaintiff and Defendants are competitors in the greeting card market and sell similar cards (*see* Exs. E and F) indicates Defendants' use of the HBDGS Mark was explicitly misleading. *See E.S.S. Entm't 2000, Inc.*, 547 F.3d at 1100-01 (use not explicitly misleading where parties' businesses were completely unrelated). In addition, as discussed above Defendants did not prominently display their marks and thus did not alleviate consumer confusion. Defendants' failure to do so suggests their use of Plaintiff's marks was explicitly misleading. *See Novalogic, Inc.*, 41 F.Supp.3d at 901-02 (use of mark not explicitly misleading where defendant's packaging was "very clear" and defendant "prominently displays" its own

1  marks as the product's source).  Accordingly, the *Rogers* test is not satisfied and the

2  motion to dismiss should be denied.[9]

3       **3.**   **At Minimum The First Amendment Defense Is Premature**

4       At this beginning stage of litigation, Plaintiff does not yet have a complete

5  evidentiary record of Defendants' advertising practices, which may be relevant to

6  show their use of the mark was explicitly misleading.  *See Novalogic, Inc.*, 41

7  F.Supp.3d at 901.  Additionally, in determining whether Defendants' use was

8  explicitly misleading the Court should look beyond the face of the work itself.  *See*

9  *E.S.S. Entm't*, 547 F.3d at 1100–01 (considering several *Sleekcraft* factors such as

10  relatedness of goods and likelihood of actual confusion); *Parks v. LaFace Records*,

11  329 F.3d 437, 458 (6th Cir. 2003) (reversing summary judgment on First Amendment

12  grounds because whether defendant's use of Rosa Parks' name on song title was

13  artistically related to the content of the song or was nothing more than a misleading

14  advertisement was disputed factual issue).  In light of the procedural posture of this

15  motion and Plaintiff's allegations, the Court should not find the First Amendment

16  bars liability as a matter of law.  *Yeager*, 627 F.Supp.2d at 1175.

17

18

19  _____

20     [9] *Stewart Surfboards, Inc v. Disney Book Grp., LLC*, 2011 WL 12877019 (C.D.
Cal. 2011) is distinguishable, where Disney used plaintiff's surfboard trademark on

21  a surfboard depiction which appeared on the back cover of a *Hannah Montana* book.
The court applied the *Rogers* test because the surfboard depiction was artistic (*id*. at

22  *3 and n. 1), and held it was not misleading because multiple famous Disney logos

23  were prominently displayed on the book jacket and spine, and the back and inside
flaps of the jacket described the book as a story about a girl's summer vacation.  *Id*.

24  at *7.  Further, the court pointed out the plaintiff's mark appeared only on the back

25  cover, underneath the dust jacket.  *Id*.  Here by contrast: Defendants' use of Plaintiff's
mark was not a small part of an artistic design, but instead was the main part of a

26  greeting card; Defendants simply copied verbatim Plaintiff's mark and placed it in the

27  middle, and focal point, of the cards, without any disclaimer; Defendants' use of
Plaintiff's mark was prominent, in bold-type letters; and Defendants' logos were not

28  prominently displayed but rather hidden on the back of the cards near the bar code.

## C.   Plaintiff's Claims For Federal Unfair Competition And False Designation Of Origin Are Pled Sufficiently

Defendants are liable for federal unfair competition and false designation of origin because, *inter alia*, their use of the HBDGS Mark was confusingly similar to Plaintiff's HBDC Mark, which is federally registered.   The federal registration "affords protection which is *nationwide* and not confined to areas of actual use of the mark." *Value House v. Phillips Mercantile Co.*, 523 F.2d 424, 429 (10th Cir. 1975) (emphasis added); *Church & Dwight Co.*, 2012 WL 1745592, at *2 (same).   Thus, contrary to Defendants' argument, market penetration in a geographical area need not be alleged.

Even putting aside the federal registration, a plaintiff does not have to allege sufficient market penetration with detailed sales information in order to state claims for federal unfair competition and false designation of origin as to unregistered marks.   None of Defendants' cited cases (*see* Motion, 22:13-23) held as much, and in fact none involved the pleading stage.   Instead, a false designation of origin claim embodies the same standard as trademark infringement. *Brookfield Communications, Inc. v. West Coast Entertainment Corp.*, 174 F.3d 1036, 1046 n. 6 (9th Cir. 1999); *SMC Promotions*, 355 F.Supp.2d at 1133 (false designation of origin claim regarding unregistered mark is "the equivalent of a claim for trademark infringement"). Plaintiff's claims are sufficiently alleged. *Aliya Medcare Fin., LLC v. Nickell*, 2015 WL 4163088, at *16 (C.D. Cal. 2015); *Choice Hotels Int'l, Inc. v. Kusum Vali, Inc.*, 2012 WL 2838183, at *2-3 (S.D. Cal. 2012).

In any event, Plaintiff need not prove market penetration but rather may establish he has a national reputation associated with the marks. *See, e.g., Champions Golf Club v. Champions Golf Club*, 78 F.3d 1111, 1124 (6th Cir. 1996); *Golden Door, Inc. v. Odisho*, 437 F.Supp. 956, 962 (N.D. Cal. 1977).

**D.** **Plaintiff's California Common Law And Statutory Unfair Competition Claims Are Pled Sufficiently**

Under California law, like the Lanham Act, the ultimate test is whether the public is likely to be deceived or confused by the similarity of the marks. *Solid 21, Inc.*, 2015 WL 3756490, *7. To state a claim of trademark infringement under California common law, a plaintiff need allege only his prior use of the trademark and the likelihood of confusion. *Wood v. Apodaca*, 375 F.Supp.2d 942, 947-48 (N.D. Cal. 2005). To state a claim for violation of California Business and Professions Code section 17200, a plaintiff need only show that members of the public are likely to be deceived by the defendant's business practice. *Bank of the West v. Sup.Ct.*, 2 Cal.4th 1254, 1267 (1992). Plaintiff sufficiently pled both his prior use of the marks and the likelihood of confusion that consumers would be deceived by Defendants' business practice. (FAC, ¶¶10, 15, 22-26, 35-38, 46-48.) Accordingly, the motion to dismiss should be denied. *E.g., Dita, Inc.,* 2010 WL 5140855, at *6.

## IV. CONCLUSION

Defendants cannot escape liability for their use of Plaintiff's trademarks and unlawful monetization off of his goodwill, reputation and creativity. Plaintiff alleges, and will prove, the likelihood of confusion as to the source and sponsorship of Defendants' cards. Accordingly, the motion to dismiss should be denied in its entirety. If for some reason the Court deems the FAC insufficient, it is respectfully requested that Plaintiff be given leave to amend to include additional factual allegations if necessary. *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir. 2003).

DATED: January 15, 2016          Respectfully submitted,

KRANE & SMITH, APC


By: _____
     DANIEL L. REBACK
Attorneys for Plaintiff,
CHRISTOPHER GORDON

# CERTIFICATE OF FILING/SERVICE

I hereby certify that on January 15, 2016, counsel for Plaintiff Christopher Gordon electronically filed the foregoing document with the Clerk of the Court by using the Court's CM/ECF system. The electronic case filing system will be sending a "Notice of Electronic Filing" to all attorneys of record who have consented to accept service by electronic means.

Dated: January 15, 2016

/s/
_____
Daniel L. Reback

PLAINTIFF'S OPPOSITION TO MOTION TO DISMISS