SEDGWICK LLP
JAMES J.S. HOLMES, State Bar No. 126779
*james.holmes@sedgwicklaw.com*
KANIKA D. CORLEY, State Bar No. 223607
*kanika.corley@sedgwicklaw.com*
JASON N. ARGOS, State Bar No. 275914
*jason.argos@sedgwicklaw.com*
801 South Figueroa Street, 19th Floor
Los Angeles, CA 90017-5556
Telephone: 213.426.6900
Facsimile: 877.547.6580

Attorneys for Defendants and
Counterclaimants, Drape Creative, Inc.;
and Papyrus-Recycled Greetings, Inc.

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| CHRISTOPHER GORDON,<br>Plaintiff,<br>v.<br>DRAPE CREATIVE, INC., et al.,<br>Defendants. | Case No. CV 15-04905 JFW (PLAx)<br><br>**NOTICE OF MOTION AND MOTION OF DEFENDANTS DRAPE CREATIVE, INC. AND PAPYRUS-RECYCLED GREETINGS, INC. FOR SUMMARY JUDGMENT OR IN THE ALTERNATIVE PARTIAL SUMMARY JUDGMENT PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 56**<br><br>Hearing Date: October 17, 2016<br>Time: 1:30 p.m.<br>Crtrm: 16<br><br>L.R. 7-3 Conf. -1: August 12, 2016<br>L.R. 7-3 Conf. -2: August 30, 2016<br>Discovery Cut-Off: October 11, 2016<br>Pre-trial Conference: November 18, 2016<br>Trial: December 13. 2016 |
| AND RELATED COUNTERCLAIM. | |

**PLEASE TAKE NOTICE** that on October 17, 2016, at 1:30 p.m., or as soon thereafter as this matter may be heard, in Courtroom 16 of the United States District Court, Central District of California, located at 312 N. Spring Street, Los Angeles, CA 90012, the Honorable John F. Walter presiding, Defendants and Counterclaimants,

Sedgwick LLP

Drape Creative, Inc. and Papyrus-Recycled Greetings, Inc. (collectively, "Defendants"), will move this Court for an Order of Summary Judgment, or in the alternative, Partial Summary Judgment as to the following matters at issue:

1. Defendants are entitled to judgment as a matter of law because Christopher Gordon lacks standing to pursue claims for trademark infringement.

2. Defendants are entitled to judgment as a matter of law because the First Amendment precludes claims for trademark infringement and unfair competition, where, as here, there is no trademark use.

3. Defendants are entitled to judgment as a matter of law because Christopher holds no registered trademark and has no common law trademark rights in any phrase used by Defendants.

4. Defendants are entitled to judgment as a matter of law because Defendants did not take Plaintiff's physical goods and repackage those unaltered goods with Defendants' names.

5. Defendants are entitled to judgment as a matter of law because Christopher Gordon abandoned his purported trademark rights.

6. Defendants are entitled to judgment as a matter of law because Christopher Gordon is not entitled to damages under the claims for relief alleged.

7. In their capacity as Counterclaimants, Drape Creative, Inc. and Papyrus-Recycled Greetings, Inc. are entitled to judgment on Count One of the Counterclaim that there has been no infringement.

This Motion will be based on this Notice of Motion, the Memorandum of Points and Authorities filed in support thereof, the concurrently filed Statement of Uncontroverted Facts and Conclusions of Law, the Declaration of Thomas Drape, the Declaration of Aaron Siegel and supporting exhibits, the Declaration of Kanika D. Corley and supporting exhibits, the Declaration of Jason N. Argos, the entire Court file in this action, as well as such oral and other evidence that may be introduced at the hearing.

Sedgwick LLP

This Motion follows two Local Rule 7-3 conferences of counsel that occurred on August 12, 2016 and August 30, 2016. [*See,* Declaration of Kanika D. Corley ("Corley Decl."), ¶ 33; *See* Declaration of Jason N. Argos ("Argos Decl."), ¶¶ 4-6; Court Document Number 53.]

Dated: September 19, 2016 SEDGWICK LLP

By: */s/ Kanika D. Corley*
James J.S. Holmes
Kanika D. Corley
Jason N. Argos
Attorneys for Defendants and Counterclaimants Drape Creative, Inc. and Papyrus Recycled Greetings, Inc.

Sedgwick LLP

# TABLE OF CONTENTS

**Page**


I. INTRODUCTION AND SUMMARY OF ARGUMENT ..... 1

II. FACTUAL BACKGROUND ..... 1

A. Procedural Posture ..... 1

B. Plaintiff's YouTube Video and Subsequent Trademark Registrations ..... 2

C. Defendants' Greeting Cards ..... 3

D. Pertinent Fact Discovery ..... 4

1. Zazzle, Inc. ..... 4

2. TISELLE letterpress + design ..... 4

3. Duck Company ..... 5

4. National Geographic ..... 5

5. Christopher Gordon ..... 6

E. Expert Discovery ..... 6

III. ARGUMENT ..... 7

A. Plaintiff Lacks Standing to Pursue Trademark Claims and Cannot Defeat Declaratory Relief Claim for Non-Infringement ..... 7

B. The First Amendment Precludes Lanham Act and Related Claims ..... 8

1. Defendants' Greeting Cards are Expressive Works Entitled to First Amendment Protection ..... 8

a. Artistic Relevance ..... 9

b. Explicitly Misleading ..... 10

C. Plaintiff Cannot Prevail on the Trademark Infringement and Related Unfair Competition Claims ..... 11

1. Plaintiff cannot establish ownership of a protectable mark ..... 11

a. Plaintiff cannot establish priority of use ..... 11

b. Plaintiff cannot establish registration ..... 12


Sedgwick LLP

2. Plaintiff cannot establish likelihood of confusion as a matter of law ... 13

a. The HBDC Mark is Not Strong ... 14

b. The HBDC Mark Is Not Closely Related to Defendants' Greeting Cards ... 15

c. Plaintiff's Use of the HBDC Mark Is Not Similar to Defendants' Use of HBDGAS Phrase ... 16

d. Plaintiff's Evidence of Supposed Confusion is Legally Insufficient ... 17

e. The Parties' Marketing Channels are Distinct ... 19

f. Degree of Consumer Care ... 19

g. Defendants Proceeded In Good Faith at All Times ... 20

h. Plaintiff Has No Evidence of Its Supposed Plans to Expand ... 20

D. Plaintiff's Claim of "Passing Off" Fails ... 21

E. Plaintiff's Claims Fail Because He Did Not Exercise Adequate Control Over the Purported Trademark ... 23

F. Plaintiff Cannot Recover Damages Because He Cannot Establish Actual Notice of a Registered Trademark ... 24

IV. CONCLUSION ... 25


Sedgwick LLP

# TABLE OF AUTHORITIES

**PAGE**

## Cases

*Am. Petrofina v. Petrofina of Cal., Inc.*,
596 F.2d 896 (9th Cir. 1979) ........ 8, 12

*AMF Inc. v. Sleekcraft Boats*,
599 F.2d 341 (9th Cir.1979) ........ 13, 19

*Anti-Monopoly, Inc. v. Gen. Mills Fun Group*,
611 F.2d 296 (9th Cir. 1979) ........ 11

*Barcamerica Intern. USA v. Tyfield Importers, Inc.*,
289 F.3d 589 (9th Cir. 2002) ........ 23, 24

*Brookfield Commc'ns, Inc. v. W. Coast Entm't Corp.*,
174 F.3d 1036 (9th Cir. 1999) ........ 11, 12, 14

*Brown v. Electronic Arts, Inc.*,
724 F.3d 1235 (9th Cir. 2013) ........ 10

*Cairns v. Franklin Mint Co.*,
24 F. Supp. 2d 1013 (C.D. Cal. 1998) ........ 17, 18, 19

*Celotex Corp. v. Catrett*,
477 U.S. 317 (1986) ........ 1, 7

*Century 21 Real Estate Corp. v. Sandlin*,
846 F.2d 1175 (9th Cir. 1998) ........ 13

Sedgwick LLP

*Cleary v. News Corp.*,
30 F.3d 1255 (9th Cir.1994) .......... 13

*Coach, Inc. v. Asia Pac. Trading Co.*,
676 F. Supp. 2d 914 (C.D. Cal. 2009) .......... 25

*Dan Tana v. Dantana's*,
611 F.3d 767 (11th Cir. 2010) .......... 19, 22

*Dastar Corp. v. Twentieth Century Fox Film Corp.*,
539 U.S. 23 (2003) .......... 23

*Dep't of Parks & Recreation v. Bazaar Del Mundo Inc.*,
448 F.3d 1118 (9th Cir. 2006) .......... 11

*Dreamwerks Prod. Group, Inc. v. SKG Studio*,
142 F.3d 1127 (9th Cir. 1998) .......... 14

*E. & J. Gallo Winery v. Gallo Cattle Co.*,
967 F.2d 1280 (9th Cir. 1992) .......... 13

*E.S.S. Entm't 2000, Inc. d/b/a Playpen v. Rock Star Videos, Inc.*,
547 F.3d 1095 (9th Cir. 2008) .......... 10

*Echo Drain v. Newsted*,
307 F. Supp.2d 1116 (C.D. Cal. 2003) .......... 16, 19

*FreecycleSunnyvale v. Freecycle Network*,
626 F.3d 509 (9th Cir. 2010) .......... 24

*Gaia Techs. v. Reconversion Techs.*,
93 F.3d 774 (Fed. Cir. 1996) .......... 7, 8

Sedgwick LLP

*Glow Indus., Inc. v. Lopez*,
252 F. Supp. 2d 962 (C.D. Cal. 2002) .......... 15, 17

*Hilton v. Hallmark Cards*,
599 F.3d 894 (2010) .......... 9

*Jackson v. Universal Int'l Pictures*,
36 Cal. 2d 116 (1950) .......... 12

*KP Permanent Make-Up, Inc. v. Lasting Impression I, Inc.*,
543 U.S. 111 (2004) .......... 23

*M2 Software, Inc. v. Madacy Entm't*,
421 F.3d 1073, (9th Cir. 2005), 421 F.3d .......... 21, 22

*Mallard Creek Indus., Inc. v. Morgan*,
56 Cal. App. 4th 426 (Cal Ct. App. 1997) .......... 12

*Matrix Motor Co. v. Toyota Jidosha Kabushiki Kaisha*,
290 F. Supp. 2d 1083 (C.D. Cal. 2003) .......... 14, 21

*Mattel, Inc. v. MCA Records, Inc.*,
296 F.3d 894 (9th Cir. 2002) .......... 8, 9, 10, 11

*Network Automation, Inc. v. Advanced Sys. Concepts*,
638 F.3d 1137 (9th Cir. 2011) .......... 11

*New Kids on the Block v. News America Publishing, Inc.*,
971 F.2d 302 (9th Cir.1992) .......... 9

*Nutri/System, Inc. v. Con-Stan Indus., Inc.*,
809 F.2d 601 (9th Cir. 1987) .......... 19

Sedgwick LLP

*Official Airline Guides v. Goss*,
6 F.3d 1385 (9th Cir. 1993) .......... 16, 21

*Pac. Sunwear of California, Inc. v. Olaes Enters., Inc.*,
167 Cal. App. 4th 466 (Cal. Ct. App. 2008) .......... 12

*Pizzeria Uno Corp. v. Temple*,
747 F.2d 1522 (4th Cir. 1984) .......... 20

*Proctor & Gamble Co. v. Paragon Trade Brands, Inc.*,
917 F.Supp. 305 (D. Del. 1995) .......... 8

*Rogers v. Grimaldi*,
875 F.2d 994 (2d Cir. 1989) .......... 8, 9, 10

*Sengoku Works Ltd. v. RMC Int'l, Ltd.*,
96 F.3d 1217 (9th Cir. 1996) .......... 8, 12

*Spence v. Washington*,
418 U.S. 405 (1974) .......... 9

*Surfvivor Media, Inc., et al, v. Survivor*,
406 F.3d 625 (9th Cir. 2005) .......... 17, 19, 21, 22

*U-Haul Int'l, Inc. v. Jartran, Inc.*,
681 F.2d 1159 (9th Cir. 1982) .......... 22

*Whitehead v. CBS/Viacom, Inc.*,
315 F. Supp. 2d 1 (D.D.C. 2004) .......... 9

*Wood v. Apodaca*,
375 F. Supp. 2d 942 (N.D. Cal. 2005) .......... 8, 12


Sedgwick LLP

## Statutes and Rules

15 U.S.C. § 1057(b) .......... 13

15 U.S.C. § 1111 .......... 25

15 U.S.C. § 1114 .......... 11

15 U.S.C. § 1115(a) .......... 13

15 U.S.C. § 1115(b) (4) .......... 23

15 U.S.C. § 1125(a) .......... 11, 23

Fed. Rule Civ. P. 56(c) .......... 1, 7

## Other Authorities

*2 J. McCarthy, Trademarks and Unfair Competition* §§ 27:2-27:4, at 344-68 (2d ed. 1984) .......... 22

*3 J. Thomas McCarthy, McCarthy on Trademarks* § 18:48, Fourth Ed. (rev. 6/2016) .......... 23

*McCarthy on Trademarks*, § 23:14 .......... 18

Sedgwick LLP

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION AND SUMMARY OF ARGUMENT

Since June of 2012, Defendants' greeting cards have communicated sentiments to card recipients spoken through the voice of a honey badger character. Each card uses the phrase, "Honey badger don't give a shit" ("HBDGAS") and, on the back cover, identifies Defendants by name. Defendants' greeting cards constitute speech; they serve no source-identifying function.

Plaintiff, a trademark holder in the phrase, "Honey badger don't care" ("HBDC") never registered the mark for use on greeting cards and now only offers one card – a Christmas card first made available to the public in October 2012. Notably, Plaintiff never registered nor did he use on greeting cards, the HBDGAS phrase.

On these facts, Plaintiff cannot establish liability for trademark infringement and related claims. As such, Defendants are entitled to summary judgment as a matter of law. *See Fed. Rule Civ. P.* 56(c); *and, see, Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986).

## II. FACTUAL BACKGROUND

### A. Procedural Posture

On June 30, 2015, Plaintiff filed a Complaint against Drape Creative, Inc. ("DCI") and Papyrus-Recycled Greetings, Inc. ("PRG") alleging four causes of action. At issue are Defendants' greeting cards, which Plaintiff alleges contain two phrases: "Honey Badger Don't Care" and "Honey Badger Don't Give a Shit." [Court Docket ("Document") 1] On December 22, 2015, after Defendants filed a Motion to Dismiss, Plaintiff filed a First Amended Complaint. [Documents 24 and 32] On January 5, 2016, Defendants filed a second Motion to Dismiss, which this Court denied. [Documents 36 and 44]

On February 25, 2016, Defendants filed an Answer to Plaintiff's First Amended Complaint and a Counterclaim. [Documents 45-46] Within the Answer, Defendants allege certain affirmative defenses, including: lack of standing, lack of trademark, lack



Sedgwick LLP

of infringement, failure to state a claim, no likelihood of confusion, First Amendment, among other affirmative defenses. [Document 45 at Affirmative Defense ¶¶ 4, 6, 14, 15, 20, 21-24, 26, 38] The Counterclaim requests a ruling of lack of infringement and cancellation of registered trademark. [Document 46, Count One]

On January 25, 2016, Plaintiff served Rule 26 Initial Disclosures. On March 2, 2016, Plaintiff served Supplemental Rule 26 Disclosures. On March 30, 2016, Defendants served a first set of Interrogatories and Requests for Production of Documents, each of which specifically requested identification of evidence Plaintiff contends establishes liability. On May 25, 2016, Plaintiff served untimely and incomplete responses to Defendants' written discovery. [Undisputed Fact ("UF") Nos. 1-4]

On July 13 and 14, 2016, Defendants transmitted multi-page letters demanding, among others, identification of the evidence on which Plaintiff will rely to establish liability. [UF No. 5] Throughout July, August and September 2016, Plaintiff served 18 sets of supplemented document productions. [UF No. 6] Near the close of discovery, in August and September 2016, Plaintiff served 5 sets of supplemental Rule 26 Disclosures. [UF No. 1] Notably, Plaintiff never supplemented his verified interrogatory responses. [UF No. 6]

**B. Plaintiff's YouTube Video and Subsequent Trademark Registrations**

In January 2011, Plaintiff uploaded a YouTube video entitled, "The Crazy Nastyass Honey Badger (original narration by Randall)" ("YouTube video"); the YouTube video uses National Geographic's content. [UF No. 7] After publishing his YouTube video, Plaintiff obtained trademark registrations for the phrase, "Honey Badger Don't Care," ("HBDC phrase"), for the Classes of goods including clothing, Christmas decorations, audio books and mugs, but not greeting cards. [UF No. 8] Since then, Plaintiff has filed 20 lawsuits against those allegedly selling goods for which he has a registered trademark, on which the HBDC phrase appears. [UF No. 9]

Sedgwick LLP

Plaintiff has no registered trademark for the phrase, "Honey Badger Don't Give a Shit" ("HBDGAS phrase"), for any class of goods. [UF No. 8]

**C. Defendants' Greeting Cards**

DCI is an independent greeting card design studio. [UF No. 10] DCI creates thousands of cards annually, working exclusively with American Greetings and some of its subsidiaries, including PRG. [UF No. 10] DCI regularly uses animals within his greeting card designs. [UF No. 11]

PRG is a greeting card manufacturer and distributor. [UF No. 12] Pursuant to contract, third-party retailers sell the greeting cards PRG manufactures and distributes. [UF No. 13]

Consistent with their custom and practice, in response to correspondence from PRG referred to as "art targets," DCI designs greeting cards. [UF No. 14] In response to an art target, DCI designed a birthday-themed card, which incorporates a hand-drawn image of a honey badger on its front, and then submitted that card's design to PRG. [UF No. 15] The first birthday-themed card containing the HBDGAS phrase was introduced to retail in June 2012. [UF No. 16] In addition to the card with the hand-drawn honey badger, in response to other art targets, DCI created a Halloween-themed greeting card, additional birthday-themed cards and an election-themed greeting card, each of which utilize the HBDGAS phrase. [UF No. 17]

According to PRG, upon receipt of DCI's designs, PRG determines whether DCI's designs qualify for best fit for the line including undergoing a legal assessment; those designs that qualify are either sent to test or out for production. [UF No. 18] PRG distributed to retail only those greeting cards containing the HBDGAS phrase; cards were available to consumers between June 2012 and March 2016. [UF No. 19]

As is standard for Defendants' greeting cards, prominently featured on the back cover of the cards at issue, above the price, are the names, "Recycled Paper Greetings," www.prgreetings.com, and "DCIStudios.com;" Plaintiff's name does not appear. [UF No. 21]

Two years after DCI designed the greeting cards and PRG distributed them to retailers, Plaintiff transmitted a letter to DCI threatening legal action. [UF No. 23] DCI responded by denying any unlawful conduct, identifying applicable law and eventually began negotiating resolution. [UF No. 23]

**D. Pertinent Fact Discovery**

1. Zazzle, Inc.

In May 2016, Defendants attempted to depose Zazzle, Inc., which is one of the companies Plaintiff identified as having knowledge of Plaintiff's greeting card sales. On July 14, 2016, Jeanne Kim, Licensing Account Manager, Business Development at Zazzle executed a Declaration. [UF No. 24] The Declaration identifies a license agreement between Plaintiff and Zazzle that was in place between May 2012 and May 2015. [UF No. 24] In her July 14, 2016 Declaration, Ms. Kim identifies the only honey badger related greeting card sales as those where the phrases "Honey Badger Don't Care," "Honey Badger Just Takes What She Wants," and "Honey Badger Wins." [UF No. 25.] Through his license agreement with Zazzle, Plaintiff sold only 4 greeting cards, the first of which sold on December 7, 2012. [UF No. 26.] Zazzle generated approximately $12.60 in revenue for Plaintiff, with a royalty due of approximately $2.13. [UF No. 27.] Plaintiff did not design the greeting cards Zazzle sold. [UF No. 51]

On August 26, 2016, Ms. Kim executed another Declaration. In her August 26, 2016 Declaration, Ms. Kim explains that a division within Zazzle's company offered an option to its consumers permitting consumers to create their own products on which they could affix any phrase Plaintiff reportedly owned. [UF No. 52]

2. TISELLE letterpress + design

On June 17, 2016, Defendants deposed the representative for TISELLE letterpress + design, which is an entity that sold greeting cards bearing the HBDGAS phrase. [UF Nos. 29] According to the corporate witness, since June 2012, TISELLE has sold more than 22,000 greeting cards bearing the HBDGAS phrase, with estimated gross revenue of more than $52,000.00. [UF No. 30] TISELLE's greeting cards are still

publicly available. [UF Nos. 30] According to TISELLE, the company began selling the HBDGAS greeting cards following a trademark search revealing no registered mark. [UF Nos. 31]

As of the date of TISELLE's corporate deposition in this action, TISELLE had received no contact from Plaintiff demanding any course of conduct. [UF Nos. 32] Three days later, on June 20, 2016, Plaintiff sent TISELLE a "cease and desist" letter and then attempted to obtain an agreement that TISELLE would work with Plaintiff in his case against DCI and PRG. [UF Nos. 33]

3. Duck Company

On July 29, 2016, Defendants traveled to Colorado to depose Janna Levitina, of The Duck Company, Inc. ("Duck"). Plaintiff identified Ms. Levitina as having knowledge of Plaintiff's greeting card sales. [UF Nos. 34, 1] During deposition, Plaintiff's Rule 26 witness affirmed that the only greeting card offered on Plaintiff's behalf is a Christmas card that uses the HBDC phrase. [UF No. 35] Ms. Levitina affirmed that the greeting card did not begin selling any earlier than October 2012. [UF No. 37.] In addition, Ms. Levitina testified that Duck designed the greeting card, there are no plans to create additional greeting cards, and the cards are only available between October and December each year. [UF No.35] Duck's representative could not identify the number of greeting cards sold, nor could she identify whether the greeting cards had actually sold throughout the entire United States. [UF No. 38]

4. National Geographic

In July 2016, Defendants subpoenaed the person most knowledgeable at National Geographic for deposition. In lieu of appearing, on August 4, 2016, Associate Director, Business & Legal Affairs for National Geographic Partners, LLC, Laura Layton, executed a declaration stating that there are no documents reflecting any agreements or communications with Plaintiff relative to creation of or licenses for the YouTube video. [UF Nos. 39, 40] In addition, there have been no communications between National Geographic and Plaintiff relating to his YouTube video or this lawsuit. [UF No. 41]

5. Christopher Gordon

On August 15, 2016, Defendants deposed Plaintiff. During deposition, Plaintiff admitted National Geographic never gave him permission to use its video content. [UF No. 42] Plaintiff confirmed that he does not own the "honey badger" theme. [UF No. 43] Notably, Plaintiff conceded that the use of the HBDC and HBDGAS phrases identify the YouTube video, not greeting cards. [UF No. 43]

During deposition Plaintiff also confirmed that he has no information to contradict Ms. Kim's July 14, 2016 testimony. [UF No. 28] Plaintiff also confirmed an email exchange with Zazzle representative, Sofya Elperin acknowledging that Plaintiff only registered the HBDC phrase, and not the HBDGAS phrase. [UF No. 8, Exh. 9, 49-50:5-16] Plaintiff also confirmed that he does not know how many greeting cards Duck sold and does not know when the company first sold greeting cards. [UF No. 44.] Importantly, Plaintiff testified that he did not design the greeting cards Zazzle and Duck sold. [UF No. 51]

Plaintiff further testified that although he has been aware of others who sell greeting cards bearing the HBDGAS phrase, including TISELLE and someecards, before this lawsuit he made no efforts to stop those sales. [UF No. 46] Among others, during deposition, Plaintiff confirmed that Defendants neither use the HBDC phrase nor Plaintiff's name on their greeting cards. [UF No. 47]

**E. Expert Discovery**

On August 16, 2016, Defendants timely designated expert witnesses. During July 2016, Defendants' expert, Hal Poret, completed a consumer confusion survey, the results of which conclude that the "HONEY BADGER DON'T GIVE A SH*T" phrase used within Defendants' greeting cards does not cause a likelihood of confusion with respect to Plaintiff. [UF No. 49] Poret's survey yielded a confusion rate of 1%. [UF No. 49]

Plaintiff did not designate a survey expert. Instead, Plaintiff identified a rebuttal expert who opined that Plaintiff lacks fame; greeting card consumers do not connect the

phrases used within the YouTube video to any particular good or service; Defendants and Plaintiff use different marketing channels for the sale of their greeting cards; and, among others, it is "unlikely that greeting card consumers will have been exposed to [Plaintiff's YouTube] video and products frequently enough to create a strong memory for the brand." [UF No. 54]

## III. <u>ARGUMENT</u>

"Summary judgment should be granted if there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law." *See Fed. Rule Civ. P.* 56(c); *and, see, Celotex Corp. v. Catrett* 477 U.S. 317, 323 (1986). A defendant is entitled to summary judgment when "the plaintiff fails to make a showing sufficient to establish the existence of an element essential to the party's case, and on which that party will bear the burden of proof at trial." *Id.* at 322.

### A. <u>Plaintiff Lacks Standing to Pursue Trademark Claims and Cannot Defeat Declaratory Relief Claim for Non-Infringement</u>

Plaintiff cannot bring an action for trademark infringement because he does not own the trademark at issue. *Gaia Techs. v. Reconversion Techs*., 93 F.3d 774, 777 (Fed. Cir. 1996). There must be ownership at the time the suit was filed. *Id.* Mark holders demonstrate ownership interest by showing priority of use. *See Wood v. Apodaca*, 375 F. Supp. 2d 942, 948 (N.D. Cal. 2005) (*citing Am. Petrofina v. Petrofina of Cal., Inc.*, 596 F.2d 896, 897 (9th Cir. 1979)); *and see, Sengoku Works Ltd. v. RMC Int'l, Ltd.*, 96 F.3d 1217, 1219 (9th Cir. 1996) ("It is axiomatic in trademark law that the standard test of ownership is priority of use."). A subsequent assignment conferring ownership, even if purported to be retroactive, cannot cure a defect in standing. *Gaia Techs., supra,* 93 F.3d at 780 (*citing Proctor & Gamble Co. v. Paragon Trade Brands, Inc.*, 917 F.Supp. 305, 310 (D. Del. 1995)).

The evidence establishes that Plaintiff never registered the HBDGAS phrase for any Class of goods. [UF No. 8] There is no dispute that the only phrase appearing in Defendants' greeting cards that sold in commerce is the HBDGAS phrase. [UF Nos. 20,



Sedgwick LLP

47] Based on the evidence amassed, Plaintiff never used the HBDGAS phrase on greeting cards. [UF No. 25, 35] When Plaintiff began selling greeting cards, he did so after Defendants, and after Defendants' first use of the HBDGAS phrase. [UF Nos. 16, 26, 37]

Consequently, Plaintiff lacks standing to purse his affirmative claims for trademark infringement. Similarly, Plaintiff cannot prevail on Count One of the Counterclaim, which requests a declaration of non-infringement. [Document 46, Count One] Since Plaintiff lacks standing to pursue a claim for trademark infringement, Plaintiff cannot prevail on Count One of the Counterclaim.

### B. The First Amendment Precludes Lanham Act and Related Claims

#### 1. Defendants' Greeting Cards are Expressive Works Entitled to First Amendment Protection

Defendants' greeting cards communicate and convey sentiments about occasions. The activity at issue is speech, to which trademark law does not apply. *See, Rogers v. Grimaldi*, 875 F.2d 994 (2d Cir. 1989), determining that First Amendment precludes Lanham Act and other claims related to the use of the purported mark; *and see, Mattel, Inc. v. MCA Records, Inc.* , 296 F.3d 894 (9th Cir. 2002)*,* for the proposition that a trademark owner may not control public discourse whenever the public "imbues his mark with a meaning beyond its source-identifying function." *Mattel,* 296 F.3d at 900.

Greeting cards are speech entitled to First Amendment safeguards: "Hallmark's [greeting] card qualifies as speech and falls comfortably within the universe of types of communication that California courts have considered 'conduct in furtherance of' the exercise of free speech rights…" *Hilton v. Hallmark Cards*, 599 F.3d 894, 904 (2010). "[Greeting] card[s] certainly evince '[a]n intent to convey a particularized message..., and in the surrounding circumstances … the message would be understood by those who viewed it.'" *Id.*(*citing Spence v. Washington*, 418 U.S. 405, 410-11 (1974)) (stating requirement for conduct to qualify as "speech" for purposes of the First Amendment). Similarly, Defendants' greeting cards qualify as speech in furtherance of

the exercise of free speech rights. The First Amendment Protects Defendants' Use of the HBDGAS Phrase

Trademark law is concerned with protecting the symbols, elements and devices used to identify a particular product in the marketplace, and to prevent confusion as to its source. *New Kids on the Block v. News America Publishing, Inc.*, 971 F.2d 302, 305 (9th Cir.1992); *Whitehead v. CBS/Viacom, Inc.*, 315 F. Supp. 2d 1, 13 (D.D.C. 2004). Trademark law offers mark owners a means to prevent others from duping consumers into buying a product they mistakenly believe is sponsored by or affiliated with the trademark owner. Trademark rights do not entitle the owner to quash an unauthorized use of the mark by another who is communicating ideas or expressing points of view. *Mattel,* 296 F.3d at 900.

To determine whether the First Amendment precludes Lanham Act and related claims, the Ninth Circuit has adopted the test developed by the Second Circuit in *Rogers*, 875 F.2d 994. As *Rogers* declared, "in general, the [Lanham] Act should be construed to apply to artistic works only where the public interest in avoiding consumer confusion outweighs the public interest in free expression." *Rogers*, 875 F.2d at 999.

Under the Ninth Circuit's two-pronged analysis based on *Rogers*, an artistic work's use of a trademark that would otherwise violate the Lanham Act not actionable unless (1) the use of the mark has "no artistic relevance to the underlying work whatsoever," or (2) it has some artistic relevance, but "explicitly misleads as to the source or the content of the work." *E.S.S. Entm't 2000, Inc. d/b/a Playpen v. Rock Star Videos, Inc., et al*, 547 F.3d 1095, 1099 (9th Cir. 2008).

**a. Artistic Relevance**

*Mattel* and its Ninth Circuit progeny provide, "only the use of a trademark with 'no artistic relevance to the underlying work whatsoever' would not merit First Amendment protection. In other words, the level of relevance merely must be above zero." *E.S.S. Entm't*, 547 F.3d at 1100.

Defendants' greeting cards express a sarcastic, apathetic tone about the card recipients' occasion, alongside an image of an animal[1] delivering the message. [UF No. 17] Use of the HBDGAS phrase in the greeting cards therefore bears artistic relevance to the creators' goal of offering consumers expressive content.

**b. Explicitly Misleading**

"Explicitly misleading" use of a mark requires that the defendant make an affirmative and overt statement that indicates a relationship with or endorsement by the plaintiff. *Rogers*, 875 F.2d at 999 (offering the phrases "an authorized biography" and "Jane Fonda's Workout Book" as examples). An instance where the sole indication that the plaintiff might be affiliated with the defendant's work is the use of the mark itself does not "explicitly mislead." *Mattel*, 296 F.3d at 902; *see also Brown v. Electronic Arts, Inc.,*724 F.3d 1235, 1245-46 (9th Cir. 2013) (mere use of the player's likeness was insufficient to meet this standard).

Defendants' greeting cards are clear as to origin. [UF No. 21] On the back cover of Defendants' greeting cards, above the price, are the names "Recycled Paper Greetings," www.prgreetings.com and "DCIStudios.com." [UF Nos. 21, 47] Plaintiff's name does not appear. [UF Nos. 21, 47] Further, since Defendants offered their greeting cards before Plaintiff first sold greeting cards, and since Plaintiff did not register the HBDGAS phrase used within Defendants' greeting cards, there is no evidence of an "explicitly misleading use of a mark." [UF Nos. 16, 26, 37, 47] Consequently, the First Amendment precludes Plaintiff's Lanham Act and related claims because Defendants' expressive use of the HBDGAS phrase.

[1] During deposition, Plaintiff advised that he does not claim ownership over the "honey badger" theme. [UF No. 43]

Sedgwick LLP

**C. Plaintiff Cannot Prevail on the Trademark Infringement and Related Unfair Competition Claims**

Defendants' use of the HBDGAS phrase conveys a sentiment to greeting card recipients; the use serves no source-identifying function. *See*, Section III.B, *supra*. As a result, there is no basis for application of trademark and unfair competition laws. *Mattel,* 296 F.3d at 900-901 (*citing Anti-Monopoly, Inc. v. Gen. Mills Fun Group*, 611 F.2d 296, 301 (9th Cir. 1979))("It is source-denoting function which trademark laws protect and nothing more.")

Even if there was trademark use, Plaintiff could not prevail.

**1. Plaintiff cannot establish ownership of a protectable mark**

In order to establish liability, Plaintiff must prove (1) ownership of a protectable mark, and (2) the alleged infringer's imitating mark is similar enough to "cause confusion, or to cause mistake, or to deceive." *Network Automation, Inc. v. Advanced Sys. Concepts*, 638 F.3d 1137,1144 (9th Cir. 2011) (*citing Dep't of Parks & Recreation v. Bazaar Del Mundo Inc.*, 448 F.3d 1118, 1124 (9th Cir. 2006)). This standard applies not only for a claim of infringement of a federally registered mark under 15 U.S.C. § 1114, but also to a claim of federal unfair competition under 15 U.S.C. § 1125(a), *see Brookfield Commc'ns, Inc. v. W. Coast Entm't Corp.*, 174 F.3d 1036, 1046-1047 (9th Cir. 1999), and trademark infringement and related unfair competition claims under California state law. *See Mallard Creek Indus., Inc. v. Morgan*, 56 Cal. App. 4th 426, 434, 435, 438 (Cal Ct. App. 1997); *see also Pac. Sunwear of California, Inc. v. Olaes Enters., Inc.,* 167 Cal. App. 4th 466, 471 (Cal. Ct. App. 2008) (*citing* Ninth Circuit standard of infringement on state law claim).

**a. Plaintiff cannot establish priority of use**

Plaintiff cannot meet the first element of the *prima facie* case because a protectable ownership interest in a mark is demonstrated through priority of use. *See Wood*, 375 F. Supp. 2d at 948 (*citing Am. Petrofina v. Petrofina of Cal., Inc.*, 596 F.2d 896, 897 (9th Cir. 1979)); *Sengoku Works,*96 F.3d 1219 ("It is axiomatic in trademark



Sedgwick LLP

law that the standard test of ownership is priority of use."); *see also, Jackson v. Universal Int'l Pictures, Inc.*, 36 Cal. 2d 116, 123 (1950) ("[I]t is the priority of user alone that controls..."). "The first to use a mark is deemed the 'senior' user and has the right to enjoin 'junior' users from using confusingly similar marks in the same industry and market or within the senior user's natural zone of expansion." *Brookfield Commc'ns,* 174 F.3d at 1047.

PRG introduced the first greeting card bearing the HBDGAS phrase to retail in June 2012 and continued selling the greeting cards through March 2016. [UF No. 19] According to TISELLE, its greeting card using the HBDGAS phrase also sold for the first time during June 2012 and is still publicly available. [UF No. 30]

When Defendants first offered their greeting cards to retail, Plaintiff had no actual sales of any greeting cards. [UF Nos. 16, 26, 27, 37] In fact, neither Zazzle nor Duck (the companies that created and sold greeting cards pursuant to a license agreement with Plaintiff) first sold greeting cards before October 2012. [UF Nos. 26, 37] Moreover, Plaintiff never used the HBDGAS phrase on greeting cards; rather, he used various phrases containing the words "honey badger." [UF Nos. 25, 35] Further, before Defendants' first sale, Plaintiff had never registered the HBDGAS phrase, or any other phrase, for greeting cards. [UF Nos. 16, 26, 37]

Since Plaintiff cannot establish senior use, Plaintiff cannot establish a protectable ownership interest in the HBDGAS phrase. Accordingly, he cannot prevail on any of his claims.

**b. Plaintiff cannot establish registration**

The Lanham Act, 15 U.S.C. § 1057(b) and 15 U.S.C. § 1115(a), presumes the holder of a federal registration owns the mark for the Classes identified within the registration. Plaintiff's trademark registrations are for the HBDC phrase, only, and do not include greeting cards. [UF No. 8] Similarly, Plaintiff never registered the HBDGAS phrase for any Class of goods. [UF No. 8] As a result, Plaintiff cannot

establish presumptive ownership of the HBDGAS phrase for any use, including greeting cards. Absent ownership of a protectable mark, Plaintiff cannot prevail.

2. Plaintiff cannot establish likelihood of confusion as a matter of law

Common law claims of unfair competition and trademark infringement under state and federal law are substantially congruent requiring determination of whether the public is likely to be deceived or confused by the similarity of the marks. *Century 21 Real Estate Corp. v. Sandlin*, 846 F.2d 1175, 1178 (9th Cir. 1998); *Cleary v. News Corp.*, 30 F.3d 1255, 1262–63 (9th Cir.1994). To determine whether there is a likelihood of confusion between the parties' allegedly related goods and services, courts consider the *Sleekcraft* factors: (1) strength of the mark; (2) proximity of the goods; (3) similarity of the marks; (4) evidence of actual confusion; (5) marketing channels used; (6) type of goods and the degree of care likely to be exercised by the purchaser; (7) defendant's intent in selecting the mark; and (8) likelihood of expansion of the product lines. *See AMF Inc. v. Sleekcraft Boats*, 599 F.2d 341, 348–49 (9th Cir.1979). The *Sleekcraft* factors are not exhaustive or exclusive, but "are intended to guide the court in assessing the basic question of likelihood of confusion." *E. & J. Gallo Winery v. Gallo Cattle Co.*, 967 F.2d 1280, 1290 (9th Cir. 1992). In essence, "[t]he test for likelihood of confusion is whether a 'reasonably prudent consumer' in the marketplace is likely to be confused as to the origin of the good or service bearing one of the marks." *Dreamwerks Prod. Group, Inc. v. SKG Studio*, 142 F.3d 1127, 1129 (9th Cir. 1998).

In Plaintiff's response to Interrogatory No. 4, which asks that he "[s]tate all facts relating to [his] contention [] that consumers believe [he is] the source of greeting cards bearing the HBDC and HBDGAS phrases," Plaintiff:

- Did not identify any fact showing his use of the HBDGAS phrase as a source-identifier for greeting cards, or any goods or services;
- Did not identify any fact showing his attempts to advertise greeting cards that



Sedgwick LLP

use the HBDC and HBDGAS phrases;

- Did not identify any fact showing his attempts to expand his business to compete with Defendants in their capacities as greeting card designers, manufacturers and distributors;
- Did not cite any fact showing exclusive use of the HBDC and HBDGAS phrases in the greeting card industry;
- Did not cite any fact showing consumer association between the HBDC and HBDGAS phrases with Plaintiff's greeting cards. [UF No. 4]

Notably, Plaintiff did verify that consumers associate the HBDC and HBDGAS phrases with the YouTube video, not goods or services. [UF No. 43] Plaintiff's rebuttal expert witness concurred, concluding that greeting card consumers do not connect the phrases used within the YouTube video to any particular good or service. [UF No. 54] Applying the *Sleekcraft* factors and relevant law to the evidence collected, Plaintiff cannot survive summary judgment.

**a. The HBDC Mark is Not Strong**

"The stronger a mark—meaning the more likely it is to be remembered and associated in the public mind with the mark's owner—the greater the protection it is accorded by the trademark laws." *Brookfield*, 174 F.3d at 1058. A mark's strength is undermined by third-party use. *See, e.g.*, *Matrix Motor Co. v. Toyota Jidosha Kabushiki Kaisha*, 290 F. Supp. 2d 1083, 1091 (C.D. Cal. 2003) (finding mark "exceedingly weak" where defendant identified multiple other users of same name within plaintiff's relevant class of goods); *Glow Indus., Inc. v. Lopez*, 252 F. Supp. 2d 962, 990-92 (C.D. Cal. 2002) (same).

Plaintiff's HBDC mark is not strong. In his interrogatory responses, Plaintiff failed to identify how he used either phrase as a source identifier. [UF No. 4] In fact, during deposition, Plaintiff affirmed that the HBDC and HBDGAS phrases identify the YouTube video, not a good or service like greeting cards. [UF No. 43] In addition, Plaintiff acknowledged that before filing suit against these Defendants, he was aware of

Sedgwick LLP

others who sell greeting cards using the HBDGAS phrase. [UF No. 45] According to Plaintiff, referring to TISELLE and someecards.com, although he did not authorize sales by others, Plaintiff took no legal action to stop third-party sales. [UF Nos. 45, 46]

Testimony provided by Plaintiff's licensees further undermines the purported strength of Plaintiff's mark. Within the July 14, 2016 Declaration of Jeanne Kim presented on Zazzle's behalf, the witness affirms that between December 2012 and May 12, 2015 Plaintiff only sold 4 greeting cards. [UF Nos. 24, 26] According to Ms. Kim, those greeting cards used multiple phrases, none of which include the HBDGAS phrase. [UF No. 25] Since Zazzle's license agreement with Plaintiff expired in 2015, no cards are currently available, further negating Plaintiff's purported mark strength. [UF No. 24]

According to Duck, Plaintiff's greeting cards are only available 3 months each year, between October and December. [UF No. 36] During deposition, Duck's witness could neither identify the number nor location of greeting card sales made on Plaintiff's behalf. [UF No. 38] This evidence does not suggest the existence of a strong mark.

Further undermining Plaintiff's position is the information provided by Plaintiff's rebuttal expert. Specifically, David Stewart opined that it is "unlikely that greeting card consumers will have been exposed to [Plaintiff's YouTube] video and Plaintiff's products frequently enough to create a strong memory for [Plaintiff's] brand." [UF No. 54] In addition, Mr. Stewart concluded that Plaintiff lacks fame; and, greeting card consumers do not connect the phrases used within the YouTube video to any particular good or service. [UF No. 54] Ultimately, this factor favors Defendants.

**b. The HBDC Mark Is Not Closely Related to Defendants' Greeting Cards**

In his responses to interrogatories, Plaintiff contends that since both parties sell greeting cards Plaintiff's use of the HBDC phrase on greeting cards is related to Defendants' use of the HBDGAS phrase. [UF No.4] Plaintiff's position is contrary to law, which requires much more than two parties selling similar goods. *See, e.g., Echo*



Sedgwick LLP

*Drain v. Newsted*, 307 F. Supp.2d 1116, 1125 (C.D. Cal. 2003) (finding relatedness of goods factor weighed in favor of defendant where both plaintiff and defendant were musical bands but played different genres of music).

Defendants' use of the HBDGAS phrase conveys a sentiment about the card recipient's occasion; it does not serve a source-identifying function. *See*, Section III.B, *supra*. According to Plaintiff, he uses the HBDC phrase in a source-identifying manner. [UF No. 43] In addition, Plaintiff contends his notoriety for the HBDC phrase stems from its placement on multiple goods, none of which Defendants offer. [UF No. 4] Since the parties' uses of the phrases are different and because Defendants do not use the HBDGAS phrase in a trademark manner, this factor weighs in Defendants' favor.

**c. Plaintiff's Use of the HBDC Mark Is Not Similar to Defendants' Use of HBDGAS Phrase**

The presence of a common word is not enough to render two marks "similar" in the trademark sense. *See, e.g.*, *Official Airline Guides v. Goss*, 6 F.3d 1385, 1392 (9th Cir. 1993) (finding no confusion between "OAG Travel Planner" and "The Travel Planner USA"); *Glow Indus*., 252 F. Supp. 2d at 996 (two products' marks visually distinct, though both contained the word "Glow"). Each mark must be considered in its entirety as it would be found in the market place. *Id*. at 994.

As indicated throughout the Motion, Defendants use the HBDGAS phrase to convey a sentiment, not as a source-identifier. *See*, Section III.B., *supra*. In contrast, Plaintiff believes he uses the HBDC phrase as a source-identifier, explaining that his use identifies the YouTube video. [UF No. 43] Visually, on the cover of Plaintiff's cards that use the HBDC phrase, the lettering is large, bold and the phrase appears on the cover. [UF Nos. 17, 20, 21] Defendants' greeting cards do not contain a similar style or typeface; more importantly, Defendants' cards do not use the HBDGAS phrase on the cover with large, bold lettering. [UF Nos. 17, 20] In short, aside from their respective references to a honey badger, Defendants' use of the HBDGAS phrase is dissimilar to Plaintiff's use of the HBDC phrase. This factor favors Defendants.

**d. Plaintiff's Evidence of Supposed Confusion is Legally Insufficient**

Plaintiff proffers no survey to support his claim of confusion but instead relies on a handful of comments from people claiming to be confused. [UF No. 53] Plaintiff's failure to provide survey evidence suggests that there is no likelihood of confusion. *Cairns v. Franklin Mint Co.*, 24 F. Supp. 2d 1013, 1041 (C.D. Cal. 1998) (survey evidence is often the most persuasive evidence of confusion and "a plaintiff's failure to conduct a consumer survey . . . may lead to an inference that the results of such a survey would have been unfavorable"); *see also Surfvivor Media, Inc., et al, v. Survivor Prods.*, 406 F.3d 625 (9th Cir. 2005) (affirming grant of summary judgment where defendant offered survey evidence showing no likelihood of confusion and plaintiff offered no survey evidence of confusion and instead pointed to a couple of instances of actual confusion).

In contrast, Defendants retained a survey expert to conduct a survey. Hal Poret conducted a survey and concluded that the use of the HBDGAS phrase in Defendants' greeting cards does not cause a likelihood of confusion. [UF No. 49] Poret's survey yielded a confusion rate of 1% -- far below the threshold level required by courts to support a finding of a likelihood of confusion. [UF No. 49] *Cairns*, 24 F. Supp. 2d at 1140 (survey evidence showing confusion level much below 10% clearly favors defendant).

Notably, Plaintiff's rebuttal expert appears to agree. In his Declaration, Mr. Stewart affirmed that prospective consumers of greeting cards are not within the demographic of Plaintiff's YouTube viewership. [UF No. 54] In addition, he concluded that it is "unlikely that the population of greeting card purchasers will have been exposed to [Plaintiff's] YouTube video and products frequently enough to create a strong memory for the brand." [UF No. 54]

Evidence of actual consumer confusion may constitute strong proof of the fact of a likelihood of confusion, but to carry its burden of showing that a significant portion of



Sedgwick LLP

the population is likely to be confused, a plaintiff must do more than point to a few anecdotal stories:

> [j]ust as one tree does not constitute a forest, an isolated instance of confusion does not prove probable confusion. To the contrary, the law has long demanded a showing that the allegedly infringing conduct carries with it a likelihood of confounding an appreciable number of reasonably prudent purchasers exercising ordinary care.

*Cairns*, 24 F. Supp. 2d at 1042 (*citing* 4 McCarthy on Trademarks and Unfair Competition § 23:14 (4th ed.)). Consistent with this approach, courts in the Ninth Circuit and elsewhere have consistently held that plaintiffs in trademark cases cannot survive summary judgment on the issue of likelihood of confusion by pointing to a few isolated, unsubstantiated instances of alleged confusion. *See, e.g., Surfvivor,* 406 F.3d 625 (affirming summary judgment of no infringement where plaintiff pointed to only a few instances of actual confusion); *Echo Drain*, 307 F. Supp. 2d at 1126 (granting summary judgment of no trademark infringement, holding that plaintiff's lack of survey along with his proffer of four letters and a few emails and website postings was not sufficient evidence of actual confusion); *Dan Tana v. Dantana's*, 611 F.3d 767, 779 (11th Cir. 2010)(affirming summary judgment of no infringement despite plaintiff's customer affidavit and defendant's admission that two of its customers had asked about an affiliation with plaintiff).

During deposition, Plaintiff testified that he inquired of his internet social media followers about confusion they experienced while shopping for greeting cards. [UF No. 48] At the end of the discovery phase, Plaintiff supplemented his Rule 26 Disclosures 5 times, each time identifying a new "confused" potential greeting card consumer. [UF No. 48] Plaintiff's manufactured evidence comprised of biased "confused" potential consumers is insufficient to defeat summary judgment. This is particularly so considering that the declarations Plaintiff obtained from these individuals lack



Sedgwick LLP

foundation. In addition, Plaintiff put forth no survey evidence to bolster his claim of confusion, which raises a presumption that if Plaintiff had done a survey, the results would have been unfavorable. *Cairns*, 24 F. Supp. 2d at 1041 ("a plaintiff's failure to conduct a consumer survey . . . may lead to an inference that the results of such a survey would be unfavorable"); *see also Surfvivor*, 406 F.3d at 633 (affirming grant of summary judgment where evidence similar to that here). Accordingly, this factor favors Defendants.

**e. The Parties' Marketing Channels are Distinct**

In evaluating this factor, courts examine the proximity of the specific marketing channels, whether direct competition exists, and whether the products are marketed side-by-side. *Sleekcraft*, 599 F.2d at 353. Courts also consider the similarity of advertising. *Nutri/System, Inc. v. Con-Stan Indus., Inc.*, 809 F.2d 601, 606 (9th Cir. 1987)(*citing Pizzeria Uno Corp. v. Temple*, 747 F.2d 1522, 1535 (4th Cir. 1984)).

Plaintiff offers no evidence of converging marketing channels. Notably, within his rebuttal expert's Declaration, Mr. Stewart acknowledges that Plaintiff's greeting cards are not available where Defendants' greeting cards are sold. [UF No. 54] Indeed, Plaintiff's greeting cards are available through his licensees, both of whom are internet-based retailers; however, Duck offers limited products at resort locations. [UF No. 36] In contrast, Defendants offer their greeting cards in brick and mortar stores, only, and throughout the United States. [UF No. 22] Also missing from Plaintiff's evidentiary production is an indication that the parties advertised their respective greeting cards in a similar manner. [UF No. 4] Accordingly, there is no divergence of marketing channels. This factor favors Defendants.

**f. Degree of Consumer Care**

To date, Plaintiff has offered no evidence about the degree of consumer care taken when purchasing greeting cards. According to Plaintiff's rebuttal expert, greeting cards are more likely to be purchased by women than men, but the YouTube video's demographic is young and male. [UF No. 54] Plaintiff's rebuttal expert further opined

that it is "unlikely that greeting card consumers will have been exposed to [Plaintiff's YouTube] video and Plaintiff's products frequently enough to create a strong memory for [Plaintiff's] brand." [UF No. 54] Since Plaintiff offered no evidence to show the degree of consumer care taken by greeting card consumers, but did offer evidence that his consumers would not tend to purchase greeting cards, this factor favors Defendants.

**g. Defendants Proceeded In Good Faith at All Times**

Plaintiff alleges that Defendants used the HBDGAS phrase with the intent of benefiting from his notoriety. The undisputed facts show that the greeting cards' designer, Tom Drape of DCI, neither knew of Plaintiff nor had he ever seen the YouTube video at the time he created the cards. [UF No. 55]

Even if Defendants knew of the HBDC mark before they offered their greeting cards for sale, Defendants' use of the HBDGAS phrase does not serve a source-identifying function. *See*, Section III.B., *supra*. The fact that an alleged infringer knew of the plaintiff's mark before selecting its own is not sufficient to tip this factor in favor of the plaintiff where, as here, the undisputed evidence shows that the Defendants preceded in good faith. *M2 Software, Inc. v. Madacy Entm't,* 421 F.3d 1073, 1085 (9th Cir. 2005), 421 F.3d at 1085 (finding "intent" factor favored defendant even though defendant knew of plaintiff's mark from search report when selecting its own mark and affirming summary judgment of no infringement.).

This factor weighs in Defendants' favor.

**h. Plaintiff Has No Evidence of Its Supposed Plans to Expand**

To resolve the final likelihood of confusion factor, likelihood of expansion, courts consider whether there is a strong likelihood that either party may expand [its] business to compete with the other." *Official Airline*, 6 F.3d at 1394 (holding that the expansion factor favored defendant where plaintiff could not show a strong likelihood that it would compete with the defendant in the same market with the same product).

Plaintiff has offered no evidence to show that he will expand his business by designing, manufacturing or distributing greeting cards. Further, there is no evidence that Plaintiff intends or can sell greeting cards where Defendants' cards are available. *See, e.g., Surfvivor*, 406 F.3d at 634 (likelihood of expansion factor favored defendant where plaintiff only expressed interest in expanding, noting "mere speculation is not evidence"); *Matrix Motor*, 290 F. Supp. 2d at 1096 ("Speculative or unrealistic plans cannot be considered.").

DCI is a greeting card designer with an exclusive agreement to create and sell content to PRG, a greeting card manufacturer and distributor. [UF No. 10] According to Duck, pursuant to a license agreement, the company designed and offers only one style of greeting card – a Christmas card. [UF No. 35] There are no plans to design additional cards nor are there plans to offer the card during other seasons. [UF No. 35] According to Zazzle, the license agreement through which greeting cards were designed and sold expired in May 2015. [UF No. 24] According to Plaintiff, he never designed a greeting card; nor did he offer evidence of being a greeting card distributor. [UF No. 51] To date, he has produced no facts to show that he will expand into Defendants' lines of business. As a result, this factor favors Defendants.

***

On balance, the *Sleekcraft* factors favor Defendants. As such Defendants are entitled to summary judgment on each of Plaintiff's claims and on Defendants' own declaratory relief claim for non-infringement. *See, e.g., M2 Software*, 421 F.3d 1073 (affirming summary judgment of no infringement even though some *Sleekcraft* factors favored plaintiff); *Surfvivor*, 406 F.3d at 634-35 (same); *Dan Tana*, 611 F. 3d at 782.

**D. <u>Plaintiff's Claim of "Passing Off" Fails</u>**

There are two bases for liability under section 43(a): "(1) false representations concerning the origin, association, or endorsement of goods or services through the wrongful use of another's distinctive mark, name, trade dress, or other device ('false association'), and (2) false representations in advertising concerning the qualities of



Sedgwick LLP

goods or services ('false advertising')." *See, e.g., 2 J. McCarthy, Trademarks and Unfair Competition* §§ 27:2-27:4, at 344-68 (2d ed. 1984)(discussing two prongs of section 43(a); *U-Haul Int'l, Inc. v. Jartran, Inc.*, 681 F.2d 1159, 1160 (9th Cir. 1982)).

At present, consumers can only purchase Plaintiff's Christmas greeting cards, which use the HBDC phrase. [UF No. 24, 36] Even when Zazzle's greeting cards were available, none used the HBDGAS phrase. [UF No. 25]

In contrast, none of Defendants' greeting cards contain the HBDC phrase. [UF Nos. 20, 21, 47] Moreover, as is standard for Defendants' greeting cards, prominently featured on the back cover of the cards, above the price are the names, "Recycled Paper Greetings," www.prgreetings.com, and "DCIStudios.com." Plaintiff's name does not appear. [UF Nos. 21, 47] Moreover, Defendants' greeting cards contain no statement expressly referring to or identifying the Plaintiff's YouTube video. [UF No. 20, 21, 47]

*Dastar Corp. v. Twentieth Century Fox Film Corp.*, 539 U.S. 23 (2003), established when a plaintiff can maintain a Lanham Act false designation of origin claim under Section 43(a), 15 U.S.C. § 1125(a). This occurs when the underlying goods that the defendant is alleged to have falsely identified are—or were—protected by patent or copyright. In such cases, a Section 43(a) claim can survive only if it is based on allegations that the defendant took the plaintiff's physical goods and then repackaged those unaltered goods and put its own name on it. No such fact exists. As a result, Plaintiff cannot prevail on his claims for unfair competition.

Sedgwick LLP

### E. Plaintiff's Claims Fail Because He Did Not Exercise Adequate Control Over the Purported Trademark[2]

Abandonment of a trademark, or "naked licensing", occurs when a trademark owner fails to exercise adequate quality control over a licensee's use of a licensed trademark. *3 McCarthy on Trademarks and Unfair Competition § 18:48 (4th ed.)* (September 2016 Update); *Barcamerica Intern. USA v. Tyfield Importers, Inc.*, 289 F.3d 589, 598 (9th Cir. 2002)((naked licensing is "inherently deceptive and constitutes abandonment of any rights to the trademark"); *See also*, *FreecycleSunnyvale v. Freecycle Network*, 626 F.3d 509 (9th Cir. 2010) (Summary judgment of abandonment for lack of quality control was affirmed). When entering a license, a trademark owner must maintain reasonable control over the quality of the goods or services sold by its licensee. *Barcamerica*, 289 F.3d at 595-96. When the licensor fails to do so, "naked licensing" occurs. *Id.* at 596.

The Ninth Circuit has found abandonment through naked licensing in precisely the circumstances here. In *Barcamerica*, for example, the Ninth Circuit affirmed summary judgment for the defendant based on abandonment where the plaintiff had licensed its mark for use on wine without a quality control provision in the license and had played "no meaningful role in holding the wine to a standard of quality -- good, bad, or otherwise." *Id.* at 598. Similarly, in *FreecycleSunnyvale*, the Ninth Circuit affirmed summary judgment of abandonment where the trademark holder had licensed its mark but (1) did not retain express contractual control over the licensee's quality control measures, (2) did not have actual control over the licensee's quality control

---

[2] "The defendant has no independent burden to negate the likelihood of any confusion in raising [an] affirmative defense." *See e.g., KP Permanent Make-Up, Inc. v. Lasting Impression I, Inc.*, 543 U.S. 111, 124 (2004). (Analyzing whether a party raising the statutory affirmative defense of fair use to a claim of trademark infringement, 15 U.S.C. § 1115(b) (4), has a burden to negate any likelihood that the practice complained of will confuse consumers about the origin of the goods or services affected.)

measures, and (3) was unreasonable in relying on the licensee's own quality control measures. *FreecycleSunnyvale*, 626 F.3d at 516.

Just like *Barcamerica* and *FreecycleSunnyvale*, when Zazzle and Plaintiff sold product pursuant to a license agreement, a division within Zazzle's company offered an option that allowed consumers to create their own products affixing any phrase Plaintiff reportedly owned. [UF No. 52] By permitting an unregulated class of consumers to create and sell product in this manner, Plaintiff engaged in naked licensing. This conduct constitutes abandonment. Similarly, as of September 2016, internet based company someecards.com continued to offer HBDGAS greeting cards, without Plaintiff's authorization. [UF No. 46]

Notably, Plaintiff sued only DCI and PRG in connection with their use of the HBDGAS phrase on greeting cards. However, during deposition, Plaintiff acknowledged that for years, he has been aware of TISELLE and its sales of HBDGAS. [UF Nos. 45, 46] Despite this knowledge, Plaintiff did not initiate action until after suing Defendants and after Defendants deposed TISELLE. [UF No. 33] Between TISELLE's first sale and the time of deposition, TISELLE reportedly generated more than 20,000 sales for more than $50,000.00 in revenue. [UF Nos. 30] This unregulated use further exhibits an abandonment of purported mark ownership. Accordingly, Plaintiff cannot prevail on his claims.

### F. <u>Plaintiff Cannot Recover Damages Because He Cannot Establish Actual Notice of a Registered Trademark</u>

A defendant must have actual notice of a registered trademark before profits and damages can be recovered. 15 U.S.C. § 1111; *Coach, Inc. v. Asia Pac. Trading Co.*, 676 F. Supp. 2d 914, 925 (C.D. Cal. 2009) ("[Section] 1111 simply states that no profits and damages shall be recovered under the provisions of this Act unless statutory or actual notice was given."). A registrant "may give notice that his mark is registered by displaying with the mark the words 'Registered in U.S. Patent and Trademark



Sedgwick LLP

Office' or "Reg. U.S. Pat & Tm. Off." or the letter R enclosed within a circle." 15 U.S.C. § 1111.

Plaintiff has no registered trademark for the HBDGAS phrase. [UF No. 8] Similarly, Plaintiff has no trademark registration for any phrase that includes greeting cards. [UF No. 8] Moreover, when Defendants first offered their greeting cards to retail, Plaintiff had no actual sales of any greeting cards. [UF No. 16, 26, 37] Further, to date, Plaintiff has produced no evidence that he gave actual notice of a registered trademark. Accordingly, Plaintiff cannot recover any damages in this action. Since damages are an essential element of each of his claims, Plaintiff cannot prevail on any claim, as a matter of law.

## IV. CONCLUSION

Based on the grounds cited above and as a matter of uncontroverted fact, Christopher Gordon lacks the evidence necessary to support his claims against these Defendants. Therefore, Defendants, Drape Creative, Inc. and Papyrus-Recycled Greetings respectfully request that the Court grant the instant Motion for Summary Judgment, or alternatively, Motion for Partial Summary Judgment.

In addition, since Defendants' use of the HBDGAS phrase was not a trademark use, because Christopher Gordon cannot establish the existence of a federally protected mark and because Plaintiff cannot establish the existence of a common law mark in the HBDGAS phrase for use in greeting cards, Defendants respectfully request judgment on their Counterclaim, as a matter of law.

Dated: September 19, 2016

SEDGWICK LLP

By: */s/ Kanika D. Corley*

James J.S. Holmes
Kanika D. Corley
Jason N. Argos
Attorneys for Defendants and Counterclaimants Drape Creative, Inc. and Papyrus Recycled Greetings, Inc.