**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES -- GENERAL**

| | |
|---|---|
| Case No.   **CV 15-4905-JFW (PLAx)** | Date:  October 19, 2016 |

Title:     Christopher Gordon -*v*- Drape Creative, Inc., et al.

---

**PRESENT:**
   **HONORABLE JOHN F. WALTER, UNITED STATES DISTRICT JUDGE**

| Shannon Reilly | None Present |
|---|---|
| **Courtroom Deputy** | **Court Reporter** |

| **ATTORNEYS PRESENT FOR PLAINTIFFS:** | **ATTORNEYS PRESENT FOR DEFENDANTS:** |
|---|---|
| None | None |

**PROCEEDINGS (IN CHAMBERS):**     **ORDER GRANTING MOTION OF DEFENDANTS DRAPE CREATIVE, INC. AND PAPYRUS-RECYCLED GREETINGS, INC. FOR SUMMARY JUDGMENT OR IN THE ALTERNATIVE PARTIAL SUMMARY JUDGMENT PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 56 [filed 9/19/16; Docket No. 54]**

   On September 19, 2016, Defendants Drape Creative, Inc. ("Drape") and Papyrus-Recycled Greetings, Inc. ("Papyrus") (collectively, "Defendants") filed a Motion for Summary Judgment or in the Alternative Partial Summary Judgment Pursuant to Federal Rule of Civil Procedure 56 ("Motion").  On September 26, 2016, Plaintiff Christopher Gordon ("Plaintiff") filed his Opposition.  On October 3, 2016, Defendants filed a Reply.  Pursuant to Rule 78 of the Federal Rules of Civil Procedure and Local Rule 7-15, the Court found the matter appropriate for submission on the papers without oral argument.  The matter was, therefore, removed from the Court's October 17, 2016 hearing calendar and the parties were given advance notice.  After considering the moving, opposing, and reply papers, and the arguments therein, the Court rules as follows:

**I.    Factual and Procedural Background**[1]

   **A.    Plaintiff's Video and Trademark**

   Plaintiff is a comedian, narrator, writer, and actor, and is commonly known by his alias,

---

   [1] The facts in this case are largely undisputed.  To the extent that the Court has relied on evidence to which the parties have objected, the Court has considered and overruled those objections.  As to the remaining objections, the Court finds that it is unnecessary to rule on those objections because the disputed evidence was not relied on by the Court.

"Randall." On January 18, 2011, Plaintiff published a video on YouTube, entitled "The Crazy Nastyass Honey Badger (original narration by Randall)," which consists of video of a honey badger copied from National Geographic along with Plaintiff's original narration describing the traits of a honey badger. The video went "viral" and, to date, has generated more than 79 million views on YouTube. In the video, Plaintiff repeatedly uses the expressions "Honey Badger Don't Care" and "Honey Badger Don't Give a Shit." On June 15, 2011, Plaintiff copyrighted his narration of National Geographic's video.

In addition, Plaintiff obtained four trademark registrations for the phrase "Honey Badger Don't Care" from the United States Patent and Trademark Office ("PTO") for various classes of goods, including t-shirts, Christmas ornaments, talking dolls, mugs, audio books, and video games. Plaintiff filed his first trademark application on October 14, 2011, and received his first registration on January 29, 2013. It is undisputed that Plaintiff does not have a registered trademark for the phrase at issue in this case: "Honey Badger Don't Give a Shit."

### B. Plaintiff's Sale of Trademarked Goods and Licensing of His Trademarks

In 2011, Plaintiff sold honey badger-related goods on www.iheartthisplace.com, a website owned by Plaintiff's wife and mother-in-law. In February 2011, Plaintiff first sold a t-shirt containing the phrase "Honey Badger Don't Care." During the remainder of 2011, Plaintiff sold t-shirts, tank tops, coffee mugs, and bumper stickers that contained the phrase "Honey Badger Don't Give a Shit" along with Christmas ornaments and baby clothes that contained the phrase "Honey Badger Don't Care." In addition, in 2011, Plaintiff sold two versions of a talking honey badger stuffed animal that had eight sayings from his video – one version included the phrase "Honey Badger Don't Care" and the other (adult) version included the phrase "Honey Badger Don't Give a Shit." There was a "TM" symbol next to the "Honey Badger Don't Care" mark, which was prominently displayed on the front of the box. Plaintiff sold his honey badger-related products in all 50 states and internationally.

In 2011, Plaintiff's total gross sales of honey badger-related merchandise was between $250,000-$300,000. In order to increase the profitability of his trademark rights and grow his business, Plaintiff selectively licensed his intellectual property rights to third parties. Specifically, Plaintiff entered into licensing agreements with Zazzle, Inc. ("Zazzle"), The Duck Company, Inc. ("Duck"), and JEM Sportswear ("JEM"), as well as a publishing agreement with Andrews McMeel Publishing, LLC ("Andrews McMeel").

#### 1. Plaintiff's Licensing Agreement with Zazzle

Under Plaintiff's licensing agreement with Zazzle, beginning on May 12, 2012, Zazzle was permitted to manufacture and sell various products, including greeting cards and t-shirts. From May 12, 2012 to May 12, 2015, Zazzle sold in excess of $400,000 in licensed products. Although the licensing agreement with Zazzle contained a termination date of May 2015, Zazzle continued to sell licensed products after that date pursuant to the terms of the licensing agreement. Zazzle first sold greeting cards pursuant to its licensing agreement with Plaintiff in December 2012, and, to

date, Zazzle has sold in excess of 1,600 greeting cards.[2]  Some of the greeting cards sold by Zazzle included the phrase "Honey Badger Don't Give a Shit."

### 2. Plaintiff's Licensing Agreement with Duck

Under Plaintiff's licensing agreement with Duck, beginning on October 1, 2012, Duck was allowed to sell licensed products, including t-shirts, hoodies, caps, and accessories, which included greeting cards and which used the phrases "Honey Badger Don't Care" or "Honey Badger Don't Give a Shit."  Generally, Duck sells goods wholesale primarily to the resort industry, and to the general public over the internet.  Under the licensing agreement, Duck has sold in excess of $300,000 in honey badger-related products.  Duck has sold and continues to sell honey badger-related products in all 50 states and internationally.  Duck still offers for a sale a greeting card containing the phrase "Honey Badger Don't Care."

### 3. Plaintiff's Licensing Agreement with JEM

On February 12, 2012, Plaintiff entered into a licensing agreement with JEM to manufacture and distribute t-shirts that contained the phrases "Honey Badger Don't Care" and "Honey Badger Don't Give a Shit" to mass retailers, such as Target and Wal-Mart.  In 2012, JEM's sales of honey badger-related t-shirts exceeded $350,000, and JEM also manufactured and distributed the t-shirts in 2013.

### 4. Plaintiff's Publishing Agreement with Andrews McMeel

In December 2011, Plaintiff entered into an agreement with Andrews McMeel to publish a book, entitled *Honey Badger Don't Care: Randall's Guide to Crazy Nastyass Animals*, which was based on his video and parodied a children's nature book.  In addition, Plaintiff authorized Andrews McMeel to sell a wall calendar based on his video.  Plaintiff's book and calendar were distributed to mass market retailers, including Target, which is still selling the book.  There is a trademark "TM" symbol next to "Honey Badger Don't Care" on the book cover, and, the cover of Plaintiff's calendar also included the phrase "Honey Badger Don't Care" with a "TM" symbol next to it.  The first paragraph of the first page of the book includes the phrase "Honey Badger Don't Give a Shit."

### C. Defendants' Greeting Cards

Drape is an independent greeting card design studio that works exclusively with American Greetings and certain of its subsidiaries, including Papyrus.  Drape regularly uses animals in its greeting card designs.  Papyrus is a greeting card manufacturer and distributor.  Pursuant to contract, third-party retailers sell the greeting cards manufactured and distributed by Papyrus.

---

[2] Zazzle's website also allowed consumers to create their own products, including greeting cards, and according to the Declaration of Jeanne Kim (Exhibit 123), a Licensing Account Manager at Zazzle, consumers created approximately 165 unique designs that included the phrases at issue in this case and some of those consumer-created greeting cards may have been sold prior to December 2012.

Consistent with their custom and practice, in response to correspondence from Papyrus referred to as "art targets," Drape designs greeting cards. In response to an art target, Drape designed a birthday-themed card which incorporated a hand-drawn image of a honey badger on the front and contained the phrase "Honey Badger Don't Give a Shit," and then submitted that card's design to Papyrus. This birthday-themed card was first introduced to the retail market in June 2012. In response to subsequent art targets, Drape created a Halloween-themed greeting card, additional birthday-themed cards, and an election-themed greeting card, each of which utilized the phrase "Honey Badger Don't Give a Shit." Greeting cards manufactured and distributed by Papyrus containing the phrase "Honey Badger Don't Give a Shit" were available to consumers between June 2012 and March 2016. Papyrus's greeting cards containing the phrase "Honey Badger Don't Give a Shit" prominently displayed on the back cover of the cards the following name and websites: "Recycled Paper Greetings," www.prgreetings.com, and "DCIStudios.com."

On July 18, 2014, Plaintiff sent a cease and desist letter to Drape, advising Drape that Plaintiff owned the federally registered "Honey Badger Don't Care" trademarks and that Drape's greeting cards using the phrase "Honey Badger Don't Give a Shit" were infringing on his marks.

### D.    Procedural History

On June 30, 2015, Plaintiff filed his Complaint against Defendants in this Court. On December 22, 2015, Plaintiff filed a First Amended Complaint, alleging claims for relief for: (1) federal trademark infringement, 15 U.S.C. §§ 1114, *et seq.*; (2) California common law trademark infringement; (3) federal unfair competition and false designation of origin, 15 U.S.C. § 1125(a); and (4) unfair competition, California Business and Professions Code, §§ 17200, *et seq.*

On February 25, 2016, Defendants filed an Answer to Plaintiff's First Amended Complaint and a Counterclaim. The Counterclaim seeks a determination of non-infringement and an order cancelling Plaintiff's registered trademarks.

## II.    Legal Standard

Summary judgment is proper where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party has the burden of demonstrating the absence of a genuine issue of fact for trial. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986). Once the moving party meets its burden, a party opposing a properly made and supported motion for summary judgment may not rest upon mere denials but must set out specific facts showing a genuine issue for trial. *Id.* at 250; Fed. R. Civ. P. 56(c), (e); *see also Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989) ("A summary judgment motion cannot be defeated by relying solely on conclusory allegations unsupported by factual data."). In particular, when the non-moving party bears the burden of proving an element essential to its case, that party must make a showing sufficient to establish a genuine issue of material fact with respect to the existence of that element or be subject to summary judgment. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). "An issue of fact is not enough to defeat summary judgment; there must be a genuine issue of material fact, a dispute capable of affecting the outcome of the case." *American International Group, Inc. v. American International Bank*, 926 F.2d 829, 833 (9th Cir. 1991) (Kozinski, dissenting).

An issue is genuine if evidence is produced that would allow a rational trier of fact to reach a verdict in favor of the non-moving party. *Anderson*, 477 U.S. at 248. "This requires evidence, not speculation." *Meade v. Cedarapids, Inc.*, 164 F.3d 1218, 1225 (9th Cir. 1999). The Court must assume the truth of direct evidence set forth by the opposing party. *See Hanon v. Dataproducts Corp.*, 976 F.2d 497, 507 (9th Cir. 1992). However, where circumstantial evidence is presented, the Court may consider the plausibility and reasonableness of inferences arising therefrom. *See Anderson*, 477 U.S. at 249-50; *TW Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n*, 809 F.2d 626, 631-32 (9th Cir. 1987). Although the party opposing summary judgment is entitled to the benefit of all reasonable inferences, "inferences cannot be drawn from thin air; they must be based on evidence which, if believed, would be sufficient to support a judgment for the nonmoving party." *American International Group*, 926 F.2d at 836-37. In that regard, "a mere 'scintilla' of evidence will not be sufficient to defeat a properly supported motion for summary judgment; rather, the nonmoving party must introduce some 'significant probative evidence tending to support the complaint.'" *Summers v. Teichert & Son, Inc.*, 127 F.3d 1150, 1152 (9th Cir. 1997).

### III. Discussion

In their Motion, Defendants seek summary judgment on Plaintiff's First Amended Complaint and their counterclaim for non-infringement on a number of theories. First, Defendants argue that Plaintiff lacks standing to pursue trademark infringement claims against Defendants because Plaintiff does not own a registered trademark for the phrase "Honey Badger Don't Give a Shit" and none of Plaintiff's four registered trademarks for the phrase "Honey Badger Don't Care" cover greeting cards. Second, Defendants argue that the First Amendment precludes all of Plaintiff's claim. Third, Defendants argue that Plaintiff cannot prevail on any of his claims because he cannot establish ownership of a protectable mark, priority of use, registration, or a likelihood of confusion.

As to Defendants' first argument, they have misconstrued Plaintiff's theory of the case. It is undisputed that Plaintiff does not own a registered trademark for the phrase "Honey Badger Don't Give a Shit" and that Plaintiff's four registered trademarks do not cover greeting cards. Instead, Plaintiff claims that because the phrases "Honey Badger Don't Care" and "Honey Badger Don't Give a Shit" have the same meaning and because Plaintiff uses both phrases in his video and on his trademarked merchandise that Defendants' use of the phrase "Honey Badger Don't Give a Shit" on greeting cards infringes his "Honey Badger Don't Care" marks. The Court agrees with Plaintiff and concludes that Plaintiff alleges a viable infringement theory and has standing to prosecute his claim. *See Applied Information Sciences Corp. v. eBAY, Inc.*, 511 F.3d 966, 970-71 (9th Cir. 2007) ("Although the validity of a registered mark extends only to the listed goods or services, an owner's remedies against confusion with its valid mark are not so circumscribed. The language of the infringement statute, 15 U.S.C. § 1114, does not limit remedies for allegedly infringing uses to those goods within the ambit of registration . . . Thus a trademark owner may seek redress if another's use of the mark on different goods or services is likely to cause confusion with the owner's use of the mark in connection with its registered goods").

### A. Defendants' Greeting Cards Are Expressive Works Entitled to First Amendment Protection.

Plaintiff argues that Defendants' greeting cards are not entitled to First Amendment protection and this Court should not apply the test set forth in *Rogers v. Grimaldi*, 875 F.2d 994

(2nd Cir. 1989). The Court agrees with Plaintiff that the First Amendment does not automatically insulate all expressive works from liability under the Lanham Act. Instead, in the trademark cases where the First Amendment is applied, courts attempt to fashion a balance between allowing a trademark owner to enforce his intellectual property rights and protecting the defendant's expressive interest at issue. However, Plaintiff makes several unpersuasive arguments as to why the *Rogers* test does not apply in this case. *See* Opposition, pp. 13-14 [Docket No. 67]. First, Plaintiff relies on this Court's holding in *Novalogic, Inc. v Activision Blizzard*, 41 F.Supp. 3d 885 (C.D. Cal. 2013), in support of his argument that because honey badger greeting cards do not communicate ideas or social messages through familiar literary devices such as characters, dialogue, plot, and music, they do not qualify for First Amendment protection. The Court disagrees and concludes that Defendants' honey badger greeting cards contained expressive speech that is on par with other mediums of expression.

In fact, in light of the Ninth Circuit's holding in *Hilton v. Hallmark*, 599 F.3d 894 (9th Cir. 2009), it is clear that greeting cards, such as those sold by Defendants, contain core speech that is entitled to the full protection of the First Amendment. In *Hilton*, the Ninth Circuit held that greeting cards qualified as speech under the First Amendment because a greeting card "certainly evinces '[a]n intent to convey a particularized message . . . , and in the surrounding circumstances the likelihood was great that the message would be understood by those who viewed it." *Id.* at 904 (*quoting Spence v. Washington*, 418 U.S. 405, 410-11 (1974)). In addition, "greeting cards are traditionally designed not only to convey a message from producer to purchaser, but also from the purchaser to the recipient." E. Skold, *Title Match: Jesse Ventura and the Right of Publicity vs. the Public and the First Amendment*, 1 Minn. Intell. Prop. Rev. 117, 139-140 (2000); *see also Roth Greeting Cards v. United Card Co.*, 429 F.2d 1106, 1110 (9th Cir. 1970) (*superseded on other grounds as recognized by Cosmetic Ideas, Inc. v. IAC/Interactivecorp.*, 606 F.3d 612, 616 (9th Cir. 2010) (holding that greeting cards "are the embodiment of humor, praise, regret or some other message in a pictorial and literary arrangement"); *Roulo v. Russ Berrie & Co., Inc.*, 886 F.2d 931, 940 (2d Cir. 1989) (holding that greeting cards are a tangible expression of an idea).

Plaintiff also argues that *Rogers* is not applicable because there is no evidence that the phrase "Honey Badger Don't Give a Shit" has acquired a cultural significance in the public's everyday vernacular, relying on *Rebelution, LLC v. Perez*, 732 F.Supp. 2d 883 (N.D. Cal. 2016) and *Dita, Inc. v. Mendez*, 2010 WL 5140855 (C.D. Cal. Dec. 14, 2010). However, the Court disagrees in light of numerous cases that have disapproved of the need for a cultural significance inquiry in applying the *Rogers* test. *See, e.g., E.S.S. Entertainment 2000, Inc. v. Rock Star Videos, Inc.*, 547 F.3d 1095 (9th Cir. 2008); *Mil-Spec Monkey, Inc. v. Activision Blizzard, Inc.*, 74 F.Supp. 3d 1134 (N.D. Cal. 2014); *Stewart Surfboards, Inc. v. Disney Book Group, LLC*, 2011 WL 12877019 (C.D. Cal. May 11, 2011).

Accordingly, the Court concludes that in the Ninth Circuit, the sole threshold for applying the *Rogers* test, is whether the allegedly infringing use is contained in an expressive work. *Brown v. Electronic Arts, Inc.*, 724 F.3d 1235 (9th Cir. 2013) (holding that "*Rogers* test is reserved for expressive works"). Because the Court concludes that Defendants' greeting cards constitute expressive works, they are entitled to First Amendment protection if they satisfy the *Rogers* test.

**B.    Plaintiff's Claims Against Defendants Are Barred by the First Amendment.**

Although the Court concludes that a greeting card is an expressive work entitled to full First Amendment protection, that conclusion does not resolve the more difficult issue presented by this Motion which is whether the First Amendment allows Defendants to potentially violate Plaintiff's registered trademarks for "Honey Badger Don't Care" by using the phrase "Honey Badger Don't Give a Shit" on their greeting cards.[3]

In commenting on the doctrine at the intersection of trademark law and the First Amendment as an unsatisfying splintering of analytic methodologies, McCarthy attempts to summarize the somewhat chaotic state of the law:

> There is a problem that faces one who is accused of infringing a trademark and who claims that she is merely using another's trademark in a non-infringing manner to convey some social, artistic, entertainment or political expression protected by the First Amendment as free speech. The problem is that there is no easily articulated, clearly defined legal principle that can quickly resolve the conflict. There is no statutory or judge-created safe harbor or affirmative defense that easily resolved such conflicts. Rather, there is a buffet of various legal approaches to choose from. Different courts will choose different approaches and some courts will use more than one.

6 *McCarthy on Trademarks and Unfair Competition*, § 31:139 (4th ed.).

However, the law is clear in the Ninth Circuit. To reconcile a defendant's First Amendment interests with a plaintiff's Lanham Act claim, the Ninth Circuit has explicitly adopted the influential *Rogers* test, developed by the Second Circuit.

In *Rogers*, the Second Circuit was faced with a Lanham Act false endorsement claim brought by Ginger Rogers against a film maker, contending that the titled of his movie, "Ginger & Fred," which told the story of two fictional Italian cabaret performers who imitate Ginger Rogers and Fred Astaire in their cabaret act, created the false impression that Rogers was associated with the film or that the film was about her.

In resolving the Lanham Act claim against Rogers, the Second Circuit concluded "in general the [Lanham] Act should be construed to apply to artistic works only where the public interest in avoiding consumer confusion outweighs the public interest in free expression." Thus, the Second Circuit developed a test under which the title of an expressive work will be protected by the First Amendment if it has at least some artistic relevance to the work and is not explicitly misleading as to the content of the work.

The Ninth Circuit agreed with the Second Circuit's analysis and adopted the *Rogers* test as its own "for deciding whether the First Amendment protects expressive works against Lanham Act

---

[3] Because the Court concludes Plaintiff's claims are barred by the First Amendment, the Court need not decide whether or not Defendants' use of the phrase "Honey Badger Don't Give a Shit" on its greeting cards violates Plaintiff's federally registered trademarks in the phrase "Honey Badger Don't Care."

claims." *Mattel, Inc. v. MCA Records, Inc.*, 296 F.3d 894 (9th Cir. 2002).  In *Mattel*, the Ninth Circuit found against the "Barbie" trademark holder in its Lanham Act claim against the music companies responsible for a song entitled "Barbie Girl," which was an expressive work that made fun of the values represented by Barbie.

In *E.S.S.*, 547 F.3d 1095, the Ninth Circuit extended the Rogers test beyond mere titles of artistic works to cover the use of trademarks in the body of the work.  In that case, E.S.S. operated a strip club featuring females dancing nude under the name of "Play Pen Gentlemen's Club" and complained that the use of "Pig Pen" in the "Grand Theft Auto" video games violated E.S.S.'s trademark rights.  *Id.*  In applying the *Rogers* test, the Ninth Circuit held that the depiction of the "Play Pen," an L.A. Strip Club, in the video game "Grand Theft Auto: San Andreas" as "Pig Pen" did not violate the strip club owner's trademark and trade dress protection under the Lanham Act; and concluded that the game's creator's use of the term "Pig Pen" was protected by the First Amendment.  *Id.; see also ETW Corp. v. Jireh Pub., Inc.,* 332 F.3d 915 (6th Cir. 2003) (a claim involving a photograph featuring three likeness of Tiger Woods, and holding that the *Rogers* test is generally applicable to all Lanham Act cases involving artistic works where the defendant has articulated a colorable claim that the work is protected by the First Amendment).

Under the two prong *Rogers* test for Lanham Act claims adopted by the Ninth Circuit "an artistic work's use of a trademark that would otherwise violate the Lanham Act is not actionable" unless (1) the use of the mark has "no artistic relevance to the underlying work whatsoever" or (2) it has some artistic relevance, but "explicitly misleads as to the source or the content of the work." *E.S.S.*, 547 F.3d at 1100.

### 1. The Phrase "Honey Badger Don't Give a Shit" Has Clear and Direct Artistic Relevance to Defendants' Greeting Cards.

The *Rogers* test is relatively straightforward to apply, and is very protective of speech.  As to the first prong, "under *MCA Records* and the cases that followed it, only the use of a trademark with 'no artistic relevance to the underlying work whatsoever' would not merit First Amendment protection.  In other words, the level of relevance merely must be above zero."[4]  *E.S.S.,* 547 F.3d at 1100.

In this case, Plaintiff has failed to offer any evidence demonstrating that Defendants' use of the phrase "Honey Badger Don't Give a Shit" has no artistic relevance to their greeting cards.  In the absence of such evidence and after evaluating the greeting cards as a whole, the Court

---

[4] In fact, as long as some artistic relevance exists, even a defendant's intent to use the trademark for promotional purposes does not forfeit First Amendment protection or trump artistic relevance.  For example, in *Mattel*, the court dismissed the plaintiff's claim on First Amendment grounds, even though the defendant clearly used the "Barbie" trademark to "create[ ] and s[ell] to consumers in the marketplace commercial products . . . that bear the Barbie mark."  296 F.3d at 903; *see also Winchester Mystery House, LLC v. Global Asylum, Inc.*, 210 Cal. App. 4th 579, 591 (2012) (holding that there was no "triable issue of material fact," even though the use of the defendant's trademark may well have been "merely a crass marketing tool," not an artistic decision based upon the [product's] subject matter").

concludes that the use of the phrase "Honey Badger Don't Give a Shit" easily meets the artistic relevance requirement under *Rogers* because its use is not wholly unrelated to the content of the work. The use of the phrase "Honey Badger Don't Give a Shit" on Defendants' greeting cards relates directly to the drawing or picture of a honey badger appearing on the cover of the greeting cards and allows those purchasing the greeting cards to convey to the recipient a sarcastic, apathetic tone about the subject of the card – such as the recipient's birthday, Halloween, or the election – by contrasting a milestone that is generally celebrated (for example, wishing the recipient a happy birthday) and a drawing or picture of a small, furry animal with a phrase that is dismissive of the occasion and the recipient. Such interplay between the greeting card's assumed intent (*e.g.,* "happy birthday!"), the artwork, and the written words offers consumers expressive content and, thus, readily demonstrates artistic relevance.

### 2. Defendants' Use of the Phrase "Honey Badger Don't Give a Shit" Does Not Explicitly Mislead as to Source or Content.

Plaintiff also fails to meet the second prong of the *Rogers* test. "To be 'explicitly misleading,' a defendant's work must make some affirmative statement of the plaintiff's sponsorship or endorsement, beyond the mere use of the plaintiff's name or other characteristic." *Dillinger, LLC v. Electronic Arts Inc.*, 2011 WL 2457678, *6 (S.D. Ind. June 16, 2011) (citing *Rogers*, 875 F.2d at 1001). Without such an affirmative statement, the second prong of the *Rogers* test is not satisfied because the "mere use [of a mark], without more, is insufficient to make the use explicitly misleading." *Roxbury Entertainment v. Penthouse Media Group*, 669 F. Supp. 2d 1170, 1176 (C.D. Cal. 2009); *see also E.S.S.*, 547 F.3d at 1100 (holding that "mere use of a trademark alone cannot suffice to make such use explicitly misleading"); *Dillinger*, 2011 WL 2457678, at *8 ("Plaintiff points to no explicit misrepresentation – that fact alone is dispositive of this issue").

In this case, it is undisputed that Defendants do not explicitly misrepresent or in any manner affirmatively state or imply to the public that Plaintiff is associated with, sponsored, endorsed, or otherwise is the source of Defendants' greeting cards. Specifically, there is nothing anywhere on the greeting cards that could even arguably be considered explicitly misleading as to any sponsorship or endorsement by Plaintiff. The greeting cards do not claim or suggest in any way that they were made with the participation or endorsement of Plaintiff. *See Rogers*, 875 F.2d at 999 (giving as examples of "explicit" endorsement the phrases "an authorized biography" or "Jane Fonda's Workout"); *see also Brown v, Electronic Arts, Inc.*, 2009 WL 8763151, *5 (C.D. Cal. Sept. 23, 2009) ("The character, and Brown's name, are not depicted on the games' packaging or in their advertising").

In addition, Defendants have made every effort to affirmatively negate any possible confusion regarding the source of their greeting cards. Specifically, Defendants' greeting cards are very clear as to their origin and source. On the back of Defendants' greeting cards, above the price, the name "Recycled Paper Greetings" and the websites www.prgreetings.com and "DCIStudios.com" clearly appear. *See, e.g., Winchester Mystery House*, 210 Cal. App. 4th at 592 (holding that title and cover of the DVD for the film at issue did not explicitly mislead where back cover of film displayed defendant's name and identified the film as a "MARK ATKINS" film)*; see, e.g., Cliffs Notes Inc. v. Bantam Doubleday Dell Publishing Grp., Inc.*, 886 F.2d 490, 492 (2d Cir. 1989) (holding that the defendant's book was not explicitly misleading because of "important differences" between the covers of the plaintiff's book and the defendant's book).

Moreover, even if, as Plaintiff argues, some consumers have been confused as to the origin of Defendants' greeting cards as a result of the use of the phrase "Honey Badger Don't Give a Shit," that mistaken belief on the part of those consumers would still not satisfy the second prong of the *Rogers* test. *See Rogers*, 875 F.2d at 1001 ("To the extent that there is a risk that the title will mislead consumers as to what the work is about, that risk is outweighed by the danger that suppressing an artistically relevant though ambiguous title will unduly restrict expression"); *see also Louis Vuitton Mallatier S.A. v. Warner Bros. Entertainment Inc.*, 868 F. Supp. 2d 172, 184 (S.D.N.Y. 2012) ("Even assuming, *arguendo,* that Louis Vuitton could state a cognizable claim of confusion, Warner Bros.' use of the Diophy bag is protected under *Rogers* because it has some artistic relevance to the Film and is not explicitly misleading").

Accordingly, the Court concludes that Plaintiff has failed to present any evidence that raises a genuine issue of material fact that Defendants explicitly mislead as to the source of their greeting cards.[5]

### C. Defendants Are Entitled to Summary Judgment on All of Plaintiff's Claims

Because there is no genuine dispute as to any material fact that Defendants' use of the phrase "Honey Badger Don't Give a Shit" has artistic relevance and does not explicitly mislead as to source, Defendants are entitled to judgement as a matter of law on Plaintiff's federal claims with respect to Defendants' use of the phrase "Honey Badger Don't Give a Shit." Accordingly, Defendants' Motion is **GRANTED** on Plaintiff's first claim for relief for trademark infringement (15 U.S.C. § 1114 *et seq.*) and third claim for relief for federal unfair competition and false designation of origin (15 U.S.C. §1125(a)).

In addition, because Plaintiff's second claim for relief for California common law trademark infringement, fourth claim for relief for California unfair competition, and Defendants' counterclaim for non-infringement are premised on the same evidence and arguments as Plaintiff's federal claims, Defendants are entitled to summary judgment on Plaintiff's state law claims alleged in the second and fourth claims for relief and their counterclaim for non-infringement. *See, e.g, Glow Industries, Inc. v. Lopez*, 252 F.Supp. 2d 962, 975 n. 90 (C.D. Cal. 2002) (noting that "[t]he standard for Lanham Act unfair competition is the same as that for Lanham Act trademark infringement" and "the elements of state claims for trademark infringement and unfair competition are substantially similar to those of the comparable federal claims"). Accordingly, Defendants' Motion is **GRANTED** on Plaintiff's second claim for relief for California common law trademark infringement, fourth claim for relief for California unfair competition, and their counterclaim for non-infringement.

---

[5] Although the parties have provided evidence on the issue of likelihood of confusion in the form of expert testimony (Hal Poret and David Stewart) and consumer testimony, the Court concludes in light of *Brown*'s holding that the likelihood of confusion test does not afford sufficient weight to the public interest in freedom of expression, such evidence is not applicable to the second prong of the *Rogers* test. *Brown*, 724 F.3d 1242 ("We have previously rejected the 'likelihood of confusion' test as 'fail[ing] to account for the full weight of the public's interest in free expression'" when expressive works are involved'").

## IV.     Conclusion

For all the foregoing reasons, Defendants' Motion is **GRANTED** as to each of Plaintiff's claims for relief in the First Amended Complaint and Defendants' counterclaim for non-infringement.[6]

IT IS SO ORDERED.

---

[6] The parties dispute whether Exhibits 1, 13, and 56 should be filed under seal.  *See* Plaintiff's September 28, 2016 Application to File Supplemental Declaration of Daniel Reback Re: Documents Subject to the Court's Order [Dkt. No. 69] in Support of Opposition to Motion for Summary Judgment, or in the Alternative, Partial Summary Judgment ("Application") [Docket No. 84].  The Court concludes that a sufficient showing has been made for the sealing of these documents.  Accordingly, the Court will allow Exhibits 1, 13, and 56 to be filed under seal.